IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| POTTER COUNTY REPUBLICAN PARTY, DANIEL ROGERS, individually, and on behalf of all others similarly effected Plaintiffs,<br><br>v.<br><br>CHRISTY BENGE, in her official capacity as the POTTER COUNTY ELECTIONS ADMINISTRATOR and as proposed representative of a defendant class of similarly situated Texas county election officials,<br><br>Defendants. | Civil Action No. 2:26-cv-00215<br><br>CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

TO THE HONORABLE COURT:

Plaintiffs Potter County Republican Party, Daniel Rogers, individually, and on behalf of all others similarly affected file this Complaint for declaratory and injunctive relief against Christy Benge, in her official capacity as the Potter County Elections Administrator and as the proposed representative of a defendant class of similarly situated Texas county election officials. Plaintiffs allege as follows:

## I.

## NATURE OF THE ACTION

1. Election security is national security. Electronic voting systems have one

job-to accurately count the votes on ballots.

2. President Trump has prioritized election security, directing Secretary of Homeland Security, Markwayne Mullin, to focus on election security. States must trust but verify the results produced by the voting machines. According to the Department of Homeland Security ("DHS") and CISA, this should include post-election manual counts of paper ballots to ensure that any errors or manipulation in the total vote count is detected and to confirm the accuracy of the vote count by the election machines.

3. A 2024 ODNI Annual Threat Assessment concluded that, "China remains the most active and persistent cyber threat to U.S. Government, private-sector, and critical infrastructure networks. Beijing's cyber espionage pursuits and its industry's export of surveillance, information, and communications technologies increase the threats of aggressive cyber operations against the United Sates and the suppression of the free flow of information in cyberspace."[1]

4. "[S]ome U.S. adversaries-at a minimum China, Iran, and Russia…have the technical capability to access some U.S. election-relate networks and systems"[2] including electronic machines used by the United States to conduct federal elections. The recent declassification of records, including a 2024 ODNI Annual Threat

[1] https://www.dni.gov/files/ODNI/documents/assessments/ATA-2024-Unclassified-Report.pdf.
[2] https://www.dni.gov/files/ODNI/documents/assessments/NICM-Declassified-Foreign-Threats-to-US-Elections-After-Voting-Ends-in-2024.pdf.

Assessment and a National Intelligence Council Memorandum from October 2024, supports the need for strong mitigation strategies, particularly considering the known weaknesses in the election infrastructure supply chain.

5. Voting machines with components manufactured by foreign adversaries introduce significant security risks.[3] These vulnerabilities mean that malicious actors could potentially compromise election infrastructure at any stage of the supply chain, even before the machines are assembled or deployed.[4] If a component is tampered with during manufacturing, it could serve as a point-of-entry for unlawful and malfeasance hackers, allowing for the possibility of synchronized attacks across multiple election machines and jurisdictions.[5]

6. When testifying before Members of Congress, representatives from many of the voting system vendors acknowledged that their voting machines have parts made in China and detailed universal reliance on foreign made parts.[6]

7. This action concerns whether Texas officials may complete the official canvass and certification process for statewide federal elections, as tabulated by electronic voting systems that encode voter selections in barcodes or QR codes, without first conducting a statewide meaningful manual comparison of the election

---

[3] Letter from Secretary of Homeland Security, Markwayne Mullin to White House Transparency Task Force, August 24, 2026.
[4] Id.
[5] Id.
[6] *2020 Election Security – Perspectives from Voting System Vendors and Experts: Hearing Before the Comm. on H. Admin.*, 116th Cong. (2020), https://nsarchive.gwu.edu/document/24853-document-75-house-committee-house-administration-2020-election-security-perspectives.

machines' electronic tabulation against voter-verifiable, human-readable paper records or ballots.

8. Plaintiffs do not seek to prevent voting, postpone Election Day, invalidate lawfully cast ballots, or require wholesale replacement of voting equipment before the November 3, 2026, general federal election. Plaintiffs do not seek to challenge and do not seek to invalidate any provision of the Texas election code. Plaintiffs do seek prospective relief directed to the post-election verification and certification process to confirm the accuracy of the Vote tabulation final counts by the election machines utilized by most jurisdictions in the State of Texas.

9. In July 2026, the United States Department of Homeland Security ("DHS") and the Federal Emergency Management Agency announced election-security conditions associated with Fiscal Year 2026 Homeland Security Grant Program funding. These conditions include a transition away from voting systems that use barcodes or QR codes to count votes and proof of a post-election manual audit of at least 5% of paper ballots for all federal elections.

10. Texas law independently requires a post-election hand-count audit of paper records or ballots when an electronic voting system is used. *See* Tex. Elec. Code § 127.201. That audit is intended to evaluate the accuracy of the election machines' electronic tabulation and final vote count, but its statutory sampling requirements do not require 5% of all ballots statewide or a full manual tabulation of paper records

or ballots in federal elections.

11. When a voting system records or tabulates the legally operative vote of a citizen voter from a barcode or QR code that the voter cannot personally read, a post-election comparison against the voter-verifiable human-readable paper record or ballot is an essential safeguard against software, configuration, scanning, tabulation error or other voting malfeasance by unlawful rogue actors utilizing the election machines utilized by most jurisdictions in State of Texas. Recent reports of the ability of rogue artificial intelligence (AI) programs to hack into virtually any voting system, while covering their tracks to avoid detection and even self-destructing to hide their activity, demonstrate an imminent risk of undetectable tampering with election machines to alter the final election results by rogue actors. Wrongdoers, foreign or domestic, can use AI to interfere with the upcoming federal election by altering the final vote for candidates from the candidate selection of legal citizens, in the absence of a full verification of the results based on a post-election count of paper records or ballots to confirm the accuracy of the election machines' final vote tabulation.

12. Plaintiffs therefore seek an order requiring, before final certification of the upcoming statewide federal election in Texas, an audit consisting of a manual count of all voting paper records or ballots cast by citizen voters, for comparison with the machine-based reported election results, and then to correct the machine-based

reported election results based on the actual votes cast by legal Texas citizen voters tallied from a hand count of all paper voting records or ballots cast by legal Texas citizens, if different than the electronic results from the electronic election machines.

## II.

## PARTIES

13. Plaintiff Potter County Republican Party ("PCRP") is the county organization of the Republican Party serving Potter County, Texas. PCRP has members who are registered voters and candidates, volunteers, poll workers, and election participants in Potter County, and PCRP expends very considerable organizational time, efforts and human resources on election administration, observation, voter education, and protection of its members' voting rights. PCRP brings this suit on behalf of its members and in its own legal right. The members of PCRP will suffer irreparable and specific injury and irreparable disenfranchisement if the relief requested herein is not granted by the court. PCRP expends significant human resources to require a manual hand count of paper records or ballots prior to certification of the election results from the electronic election machines. PCRP expends considerable time, resources and manpower in bringing the issue of the undeniable and known serious problems with electronic election machines and reliance only on the tabulation results of electronic election machines to the attention of election officials and the voting population. PCRP has expended considerable

time, resources and manpower in prior elections to raise the questions concerning the reliability of the tabulation from the electronic voting machines without verification from a manual paper record or ballot count. The prospective irreparable injuries of PCRP as described in detail in this Complaint are fairly traceable to Defendant and the defendant class and the requirement that defendant and the defendant class conduct a manual hand count of the voting records or ballots before certification of the election results because it is the responsibility of defendant and the defendant class to verify accurate election results as actually cast by their respective legal Texas citizens. Defendant and the defendant class have a responsibility to comply with

federal law when acting in their capacities under color of law to certify accurate election results in federal elections.

14. Plaintiff Daniel Rogers ("Rogers") is a registered voter in Potter County, Texas. He has voted in prior federal elections and intends to vote in the upcoming November 3, 2026 general federal election, including casting a vote for statewide federal office, and his ballot will be tabulated through the voting system used by Potter County. Plaintiff Rogers is a member and Chairman of PCRP. Rogers will suffer irreparable injury and disenfranchisement if the relief requested herein is not granted by the court. Plaintiff Rogers has expended considerable personal and business financial resources and personal human capital and personal time in prior elections to raise the questions

concerning the reliability of the tabulation from the electronic voting machines without verification from a manual paper record or ballot count. The prospective irreparable injuries of Rogers as described in detail in this Complaint are fairly traceable to Defendant and the defendant class and the requirement that defendant and the defendant class conduct a manual hand count of the voting records or ballots before certification of the election results because it is the responsibility of defendant and the defendant class to verify accurate election results as actually cast by their respective legal Texas citizens in their jurisdictions. Defendant and the defendant class have a responsibility to comply with federal law when acting in their capacities under color of law to certify accurate election results in federal elections.

15. Defendant Christy Benge is the Potter County Elections Administrator and proposed representative of a defendant class of similarly situated Texas county election officials. The Potter County Elections Administrator supervises elections in Potter County and performs election-related duties assigned by Texas law and by local transfer of duties. To the extent duties otherwise assigned to the county clerk have been transferred to the Elections Administrator under Tex. Elec. Code § 31.043 or other applicable authority, Defendant Benge performs those transferred duties. Defendant Benge is sued here in only her official capacity and in her capacity as a class representative for the defendant class. No damages are being sought against

Defendant Benge. The actions of Defendant Benge described herein are taken under the law.

16. Plaintiffs seek certification of a defendant class under Federal Rule of Civil Procedure 23 consisting of Texas county election administrators with Defendant Benge named as the class representative.

## III.

## JURISDICTION AND VENUE

17. This action arises under the Constitution and laws of the United States. Plaintiffs invoke 42 U.S.C. § 1983 and the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and jurisdiction over civil-rights claims under 28 U.S.C. § 1343(a)(3) and (4).

18. The Court may grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and prospective injunctive relief against state and local officials acting under color of state law.

19. Venue is proper in the Amarillo Division of the Northern District of Texas under 28 U.S.C. § 1391(b) because Defendant Benge performs official duties in Potter County, Plaintiffs reside or operate in Potter County, and a substantial part of the events or omissions giving rise to the claims is expected to occur in Potter County, Texas.

## IV.

## FACTUAL BACKGROUND

20. Texas uses a decentralized election-administration structure in which local authorities conduct the local canvass, and county officials prepare county election returns for statewide federal elections. See Tex. Elec. Code §§ 67.002, 67.007. For statewide federal elections, county returns are then canvassed at the state level. *See, e.g.*, Tex. Elec. Code § 67.010.

21. For elections using electronic voting systems, Texas requires the general custodian of election records to conduct a post-election hand-count audit. *See* Tex. Elec. Code § 127.201. The audit includes randomly selected election-day and early-voting locations and selected mail-ballot precincts, with statutory minimums based on 1% or 3 locations/precincts, whichever is greater. But in light of the new threat posed by clever AI programs of potentially illegal (and especially foreign) hacking electronic systems to change the final election results, a limited audit of a tiny fraction of the citizen cast ballots is an insufficient Constitutional safeguard of the integrity and accuracy of the electronic voting systems protected by the United States Constitution when election machines are used without confirmation by paper ballots cast by legal Texas citizens.

22. The Texas Secretary of State describes the hand-count audit as a procedure "to ensure the accuracy of the tabulation of the electronic voting system results." The audit applies to ballots electronically tabulated by optical or digital scanners and

includes election-day, early voting, and applicable mail ballots. If this is truly the purpose, then only a full paper ballot count to confirm the accuracy of the election results by the election machines is necessary "to ensure the accuracy of the tabulation of the electronic voting system results" in Texas.

23. Potter County publishes the limited and Constitutionally insufficient post-election hand-count audit materials among its official election records. More is needed given the recent cautions by the DHS and CISA regarding concerns of foreign interference in the United States federal elections.

24. On March 20, 2026, the United States government issued a document entitled "National Security Determination on the Threat Posed by Routers Produced by Foreign Countries" (the "Security Determination"). The Security Determination reported that "[t]he President's 2025 National Security Strategy (NSS) says, 'the United States must never be dependent on any outside powerful core components -- from raw materials to parks to finished products -- necessary to the nation's defense or economy.'" The Security Determination reported that "[o]ne of these core components that is necessary to both our nation's defense and economy is routers. Routers are the key networking device that enable American ... critical infrastructure providers, and emergency services to connect to the Internet every day." "Routers are critical networking devices that manage the flow of data and information between connected devices."

25. The Security Determination reported that "[c]omprised routers can enable in-depth network surveillance, data exfiltration, botnet attacks, and unauthorized access to U.S. government or American businesses' networks" and [a]llowing routers produced abroad to dominate the U.S. market creates unacceptable economic, national security, and cybersecurity risks." The Security Determination reported that "routers produced abroad were directly implicated in the Volt, Flax, and Salt Typhoon cyberattacks which targeted critical American communications, energy, transportation, and water infrastructure." Security Determination reported that [a]ccording to a 2024 National Institute of Standards and Technology Publication, 'A compromised router opens the door to a host of potential exploited vulnerabilities and impacts, ranging from unauthorized access and sensitive information dissemination to the possibility of malicious attacks on connected devices.'" Security Determination reported that '[u]nsecure and foreign-produced routers are prime targets for attackers and have been used in multiple recent cyber-attacks to enable hackers to gain access to networks and use them as launching pads to compromise critical infrastructure." Security Determination reported that "routers produced in a foreign country, regardless of the nationality of the producer, pose an *unacceptable risk* to the national security of the United States and to the safety and security of U.S. persons" (Emphasis added).

26. The President of the United States has determined that election systems are part of

the national critical infrastructure, and, upon information and belief, foreign routers are used in the Texas election system.

27. On August 24, 2026, United States Department of Homeland Security by and through Markwayne Mullin, Secretary of Homeland Security, sent a letter to the White House Transparency Task Force highlighting the problems with the current election system in the United States and significant issues concerning election machines used to conduct and tabulate United States elections. Secretary Mullin noted that based on "recently declassified records, including a 2020 ODNI Annual Threat Assessment" report "that 'China remains the most active and persistent cyber threat to U.S. Government private-sector, and critical infrastructure networks.'" Secretary Mullin also noted that "[a] National Intelligence Council Memorandum from October 2024 stated, 'we assess that some U.S. adversaries -- at a minimum China, Iran, and Russia . . . *have the technical capability to access some U. S. Election -related networks and systems*.'" (emphasis added).

28. Secretary Mullin also noted on August 24, 2026 "the need for strong mitigation strategies, particularly considering the *known weakness in the election infrastructure supply chain."* (emphasis added). "The voting machines with components manufactured by foreign adversaries introduce *significant security risks*. (Emphasis added). These vulnerabilities mean that malicious actors could potentially compromise election infrastructure at any stage of the supply chain, even before the

machines are assembled or deployed. If a component is tampered with during manufacturing, it can serve as a point-of-entry for hackers, allowing for the possibility of synchronized attacks across multiple [election] machines and [election] jurisdictions." Secretary Mullin also noted that "the voting-system industry, ... Is impacted by the fact that some necessary components cannot be sourced from domestic manufacturers, so vendors are dependent on foreign suppliers. Nine voting system vendors are used in our U.S. elections. Three of those vendors, ES&S, Hart InterCivic, and Dominion, make up more than 80% of the market share. Representatives from each of those vendors and acknowledge that the voting machines have parts made in China. Secretary Mullin concluded that "[t]here is no question that election security is national security." ES&S and Hart InterCivic election machines and components are utilized by the majority of the jurisdictions in the State of Texas which are operated by defendant and the defendant class.

29. On September 2, 2026, Secretary Mullin sent a letter to United States Attorney General Todd Blanche raising additional concerns concerning federal elections and the security of federal elections. Secretary Mullin said that the Help Americans Vote Act ("HAVA") requires "that any voting system used in a federal election must produce a voter-verifiable paper record with the manual audit capacity. (52 U.S.C. §21081 (a)(2)(B). Because barcodes and QR codes are machine-readable encodings created to eliminate the need for human-readable text, they may not be suitable for

voter verification or manual audits." Secretary Mullin also referenced President's Trump Executive Order (EO) 14248 which "instructed [federal] agencies to ensure that elections are being held in compliance with the federal laws that protect Americans' voting rights and guarding against vote dilution by the illegal voting, discrimination, and other forms of malfeasance and error. EO 14248 also raised the issue of the security of voting systems that rely on barcodes and QR codes" and whether those systems comply with HAVA.

30. The undeniable use of components in election equipment that are manufactured -- and in many instances assembled in China and other foreign adversaries -- raises the perfect storm for the upcoming federal elections. This storm is accentuated by the increasing development of AI and its ability to infiltrate, manipulate, and change election results reported by electronic election equipment without detection. Only by verification of the election equipment tabulation of election results by paper record or ballot verification can Americans, and Texans, be sure of the accuracy of the election results. This lawsuit seeks to remedy an undeniable problem with relying solely on the tabulation results of the election equipment to determine the winners of federal elections in Texas.

31. On or about July 10, 2026, DHS/FEMA announced additional election-security conditions for certain FY2026 Homeland Security Grant Program funding. The published conditions include a transition plan for jurisdictions using electronic

systems that count votes from barcodes or QR codes and proof of compliance with a post-election 5% manual audit under federal guidance.

32. The federal conditions do not, alone, establish with certainty that any particular Texas voting machine has miscounted votes in the past, nor do Plaintiffs allege that any past Potter County election results were altered, or inaccurately reported. Rather, Plaintiffs allege that the federal government's decision to require paper-based transition planning and a larger manual audit reflects a United States government executive branch recognized security need to check independently the machine tabulations against human-readable paper records for all ballots and in all jurisdictions. In addition, the real likelihood of a clever and undetected hack by recently developed AI programs, which conceal their activity to avoid detection, reinforces the need for a full verification based on a hand-counting of all paper records or ballots in all Texas precincts, prior to certification of the federal results.

33. A voter can visually inspect human-readable candidate names or selections printed on a paper record but cannot independently decode a barcode or QR code and determine whether the encoded data corresponds to the voter's intended candidate selections without relying on software that is vulnerable to tampering.

34. Where the electronic tabulator counts encoded data rather than the human-readable text, the paper record or ballot provides an independent verification mechanism only if election officials actually compare a complete hand-count of all of the paper

records or ballots in all precincts against the electronic totals reported from the electronic voting machines.

35. Absent judicial relief, Defendants will follow the ordinary Texas post-election procedures and will not voluntarily conduct the additional Texas statewide manual hand-counting of all of the paper records or ballots cast in all Texas precincts for the statewide federal office, as requested here.

## V.

## PLAINTIFFS' INJURY AND NEED FOR PROSPECTIVE RELIEF

36. The right to vote includes the right to have ballots counted accurately and without dilution of votes by all election officials. An election process that makes an unreadable machine-encoded representation dispositive without a meaningful paper verification of all ballots cast by citizen voters exposes voters, including Plaintiffs, to irreparable harm resulting from tabulation errors that remain undetected before certification.

37. The threatened injury is prospective and tied to the upcoming federal election. Plaintiffs seek relief before certification because once the statutory canvass and certification process is complete, meaningful pre-certification relief is no longer available.

38. A pre-certification verification of results is less disruptive than post-certification litigation because it uses records already generated in the election, occurs during the ordinary post-election period, and can be designed to preserve statutory deadlines.

39. Plaintiffs have concrete, particularized, actual or imminent injury under Article III of the U.S. Constitution, rather than merely a generalized interest. Plaintiffs will establish standing through evidence concerning the voting system that will tabulate Plaintiff Rogers' ballot and through concrete organizational expenditures and burdens inflicted on PCRP. Rogers asserts standing both in his individual capacity and as a member of PCRP.

40. In light of the public interest of this lawsuit, Plaintiffs request that the court not require the posting of a bond or require the posting of only a de minimis bond. Plaintiffs, however, are willing to post a bond, if necessary.

## VI.

## ALLEGATIONS OF THE DEFENDANT CLASS

41. Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) against a defendant class ("Defendant Class") consisting of all persons who hold the office of county elections administrator in the State of Texas under Chapter 31, Subchapter B of the Texas Election Code and who, in that capacity, are responsible for administering or implementing the election practices described and challenged in this action. Membership in the Defendant Class is determined objectively by whether a person holds the statutory office of county elections administrator and has the responsibility specified above. No individualized inquiry into a proposed class member's motives, discretionary decisions, or particular factual circumstances is necessary to determine class membership.

42. Texas law establishes the office of county elections administrator and prescribes the duties of persons holding that office. *See* Tex. Elec. Code §§ 31.031–31.050. Among other responsibilities, a county elections administrator performs the duties and functions of the voter registrar, and the duties and functions assigned to the county clerk by the Texas Election Code, as well as election-related duties assigned to the county clerk by other statutes, subject to the provisions of the Election Code. *See id.* § 31.043. The Defendant Class therefore consists of identifiable public officials whose relevant authority and responsibilities arise from a common body of Texas statutory law.

43. The Defendant Class is sufficiently numerous that joinder of all its members is impracticable, encompassing the corresponding offices in all the counties in Texas. Requiring Plaintiffs separately to name, serve, and litigate substantially identical claims against each such official would result in unnecessary duplication of proceedings, impose substantial burdens upon the parties and the courts, and create a substantial risk of inconsistent adjudications concerning the same federal legal requirements and the administration of the same Texas election laws.

44. There are questions of law and fact common to the Defendant Class, including the use of paper records or ballots to verify a machine election tally that is vulnerable to tampering by, *inter alia*, AI hacking, especially by foreign malfeasance actors. These issues include whether a failure to confirm a machine result violates the Fourteenth

Amendment, as alleged herein; whether members of the Defendant Class may lawfully administer elections by ignoring paper records or ballots; whether the challenged practice of ignoring paper records or ballots infringes on Plaintiffs' federal rights guaranteed under the United States Constitution; and whether Defendant Class members must be enjoined from ignoring paper records and ballots. Resolution of these common questions will generate answers applicable to the Defendant Class as a whole rather than answers dependent upon the identity of any particular county elections administrator.

45. The defenses of the named class representative Defendant Benge are typical of the defenses of all of the Defendant Class members. The named class representative Defendant Benge holds the same statutory office as the absent Defendant Class members, exercises the relevant authority pursuant to the same provisions of Texas law, and is subject to the same federal constitutional and statutory limitations upon the exercise of that authority. The principal defenses available to the class representative Defendant Benge concerning the legality of the challenged practices described herein therefore are the same defenses available to the Defendant Class members generally.

46. The named class representative Defendant Benge will fairly and adequately protect the interests of the Defendant Class members. The class representative Defendant Benge shares with the absent Defendant Class members the same official interest in

defending the legality of the challenged election practice and the authority and obligations of county elections administrators under Texas law. No material conflict exists between the class representative Defendant Benge and absent class members concerning the common legal questions presented for class-wide adjudication. Class representative Defendant Benge is situated to present fully the defenses available to Texas county elections administrators concerning those questions.

47. Certification is appropriate under Rule 23(b)(2) because the Defendant Class members have acted, refused to act, or are obligated to act on grounds that apply generally to the Defendant Class members with respect to the failure to conduct a full hand count of paper records or ballots before certifying election results. Plaintiffs challenge this failure by Texas county elections administrators pursuant to their statutory offices and duties, rather than seeking adjudication of isolated or idiosyncratic acts by individual county officials. Accordingly, final injunctive relief and corresponding declaratory relief are appropriate respecting the Defendant Class as a whole.

48. The declaratory and injunctive relief sought is indivisible with respect to the Defendant Class. Plaintiffs seek a declaration establishing that all paper records or ballots in all precincts in Texas must be counted before certifying election results, together with an injunction requiring each Defendant Class member, in his or her official capacity as county elections administrator, to comply with that injunction

order in administering elections. Such relief can operate uniformly against every member of the Defendant Class without individualized determinations of damages, liability, intent, or remedy. The relief sought is only declaratory and injunctive and would operate generally with respect to the class rather than require individualized damages determinations.

49. Certification of the Defendant Class will promote the efficient and consistent resolution of this controversy. A single adjudication can determine the federal legal requirements governing the challenged conduct of Texas county elections administrators and can provide uniform prospective relief, thereby avoiding duplicative litigation and the possibility that substantially identical conduct by county elections administrators will be subject to conflicting judicial determinations.

50. Plaintiffs therefore request that the Court certify the Defendant Class pursuant to Rules 23(a) and 23(b)(2), appoint Defendant Benge as representative of the Defendant Class, and enter such orders concerning notice and representation as the Court determines necessary or appropriate to protect the interests of absent Defendant Class members.

## VII. CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983 —
### Fourteenth Amendment Due Process / Equal Protection.

51. Plaintiffs incorporate all paragraphs as if fully set forth herein.

52. Defendant Benge, as representative of the Defendant Class, acts under color of Texas law when administering elections, conducting or supervising post-election procedures, maintaining election records, and performing any transferred duties concerning county election returns.

53. The Fourteenth Amendment protects qualified voters against arbitrary or fundamentally unfair state action that materially burdens the right to vote or the counting of lawfully cast votes by lawful citizens and. A violation of the Fourteenth Amendment occurs where, as here, there is a combination of (a) machine-readable encoded vote data that voters cannot independently verify, (b) vulnerability of that electronic data to hacking by AI programs or otherwise, (c) reliance on that data for tabulation, and

(d) inadequate independent paper verification before official certification.

54. Completing certification without a meaningful manual comparison of the electronic totals to voter-verifiable paper records or ballots creates an unjustified and avoidable risk of undetected tabulation error, or wrongful manipulation by hacking, in federal elections by unknown or hostile foreign malfeasance actors.

55. A full pre-certification manual verification by hand-counting of all paper ballots cast in all precincts in Texas for the statewide federal office is a practicable and necessary safeguard (1) for election integrity, (2) to ensure the accuracy of the final count, and

(3) to confirm and verify the final count reported by the election machines utilized by defendant and the defendant class members.

56. Plaintiffs therefore seek prospective declaratory and injunctive relief under § 1983.

## COUNT II
## Declaratory Judgment —
## 28 U.S.C. §§ 2201–2202.

57. Plaintiffs incorporate all paragraphs as if fully set forth herein.

58. An actual controversy exists concerning whether the Defendant and the Defendant Class members may complete the challenged post-election duties for statewide federal elections without the manual verification requested by Plaintiffs by manually counting all voting records or ballots in all precincts in Texas before certification by Defendant and the Defendant class members.

59. Plaintiffs seek a declaration that they have a constitutional right under the Fourteenth Amendment of the U.S. Constitution to pre-certification verification, based on paper records or ballots, of all electronically tabulated votes in the upcoming election for statewide federal office.

## IRREPARABLE HARM AND PUBLIC INTEREST

60. The deprivation or material burden of United States Constitutional voting rights constitutes irreparable harm to Plaintiffs for which damages would not provide an adequate remedy.

61. Plaintiffs seek relief before certification and request that any injunction be tailored

to prohibit certification of the election result totals by the election machines before Defendant and the Defendant class members conduct a manual count of the actual paper ballots cast by Texas citizens in the upcoming federal election. I.

62. The public interest favors accurate, transparent, timely, and verifiable election results. Plaintiffs recognize the public interest in orderly election administration and request procedures that can be implemented within existing post-election processes.

63. No administrative exhaustion requirement applies to this claim under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter preliminary injunction and final judgment in their favor against Defendant Benge and the Defendant Class as follows:

A. Certify the requested Defendant Class under Federal Rule of Civil Procedure 23(a) and 23(b)(2);

B. Declare that Plaintiffs have a constitutional right to pre-certification verification, based on a hand count of paper records or ballots, of electronically tabulated votes in federal elections;

C. Enjoin, preliminarily and permanently, Defendant and Defendant Class from completing the challenged certification or return-transmission duties for the upcoming statewide federal election in Texas until the required manual paper-verification procedure has been fully completed by hand counting all paper election records or ballots in all precincts in Texas;

D. Require a manual hand count of all voter-verifiable, human-readable paper records or ballots in all precincts in Texas before final certification of the election for statewide federal office;

E. Require prompt public reporting of the hand-counting methodology and results, consistent with ballot secrecy and applicable law;

F. Confirm the election results for all federal elections held on November 3, 2026 in Texas for all federal races in Texas based on the hand count of all paper ballots from all lawful Texas citizens, if different from the election results reported by the election machines;

G. Award Plaintiffs reasonable attorney's fees and costs to the extent authorized by 42 U.S.C. § 1988 and other applicable law; and

H. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**Woodfill Law Firm, PC**
5850 San Felipe, 5th Floor
Houston, TX 77057
Phone: (832) 255-3751

/s/Jared R. Woodfill
Jared R. Woodfill
State Bar No. 00788715
Adam M. Helleck
State Bar No. 24038953
Woodfillservice@gmail.com

**Decker Jones, PC**
801 Cherry Street, Suite 2000,
Unit 46
Fort Worth, TX 76102
Phone: (817) 336-2400

/s/Daniel Bates
Daniel Bates
State Bar No. 01899900
dbates@deckerjones.com

**Dick Law Firm**
3701 Brookwoods Drive
Houston, TX 77092
Phone: (832) 529-9377

/s/Eric Dick
**Eric Dick**
State Bar No. 24064316
Eric@ericdicklawfirm.com