**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| POTTER COUNTY REPUBLICAN PARTY, and DANIEL ROGERS,<br><br>Plaintiffs,<br>v.<br><br>CHRISTY BENGE, in her official capacity as the POTTER COUNTY ELECTIONS ADMINISTRATOR,<br><br>Defendant. | CIVIL ACTION<br><br>Case No. 2:26-cv-00215-Z<br><br>Hon. Matthew J. Kacsmaryk |

**DSCC AND DCCC'S BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE**

## TABLE OF CONTENTS


BACKGROUND ..... 2

I. Texas administers its elections securely. ..... 2

II. Plaintiffs filed suit seeking to upset "ordinary Texas post-election procedures." ..... 4

III. DSCC and DCCC represent the interests of Democratic candidates and voters. ..... 5

LEGAL STANDARD ..... 5

ARGUMENT ..... 7

I. Proposed Intervenor-Defendants are entitled to intervene as of right under Rule 24(a). ..... 7

A. This motion is timely. ..... 7

B. Plaintiffs' suit threatens to impair Proposed Intervenor-Defendants' interests in the timely certification of election results according to settled rules. ..... 7

C. No other party adequately represents Proposed Intervenors' interests. ..... 9

II. Alternatively, Proposed Intervenor-Defendants should be granted permissive intervention under Rule 24(b). ..... 10

CONCLUSION ..... 11

CERTIFICATE OF COMPLIANCE ..... 12

CERTIFICATE OF SERVICE ..... 12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*,
No. 2:22-CV223-Z, 2023 WL 11840559 (N.D. Tex. Feb. 6, 2023) .... 6

*Bellitto v. Snipes*,
No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016) .... 10

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022) .... 9

*Bost v. Ill. State Bd. of Elections*,
607 U.S. 71 (2026) .... 8

*Craig v. Simon*,
493 F. Supp. 3d 773 (D. Minn. 2020) .... 9

*Driftless Area Land Conservancy v. Huebsch*,
969 F.3d 742 (7th Cir. 2020) .... 10

*Eubanks v. Nelson*,
No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024) .... 1

*Fund Tex. Choice v. Deski*,
738 F. Supp. 3d 835 (W.D. Tex. 2024) .... 4

*Jerusalem v. Dep't of State La.*,
No. 23-30521, 2024 WL 194174 (5th Cir. Jan. 18, 2024) .... 1

*La Union del Pueblo Entero v. Abbott*,
29 F.4th 299 (5th Cir. 2022) .... 2, 6, 8, 9, 10

*Lutostanski v. Brown*,
88 F.4th 582 (5th Cir. 2023) .... 1

*Miller v. Vilsack*,
No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022) .... 6

*Missouri v. U.S. Food & Drug Admin.*,
No. 2:22-CV-223-Z, 2025 WL 1223581 (N.D. Tex. Apr. 28, 2025) .... 10, 11

*Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*,
831 F.2d 59 (5th Cir. 1987) .... 7

*Newby v. Enron Corp.*,
443 F.3d 416 (5th Cir. 2006) .......... 6

*Raskin v. Jenkins*,
No. 23-10960, 2024 WL 3508051 (5th Cir. July 23, 2024) .......... 1

*Ross v. Marshall*,
426 F.3d 745 (5th Cir. 2005) .......... 10

*Rotstain v. Mendez*,
986 F.3d 931 (5th Cir. 2021) .......... 7

*Sierra Club v. Espy*,
18 F.2d 1202 (5th Cir. 1994) .......... 6

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) .......... 7

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) .......... 9

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
834 F.3d 562 (5th Cir. 2016) .......... 7, 10

**STATUTES**

Tex. Elec. Code § 31.031 .......... 3

Tex. Elec. Code § 31.043 .......... 3

Tex. Elec. Code § 66.001 .......... 3

Tex. Elec. Code § 67.003 .......... 3

Tex. Elec. Code § 67.007 .......... 3

Tex. Elec. Code § 67.012 .......... 3

Tex. Elec. Code § 127.201 .......... 3, 4

**FEDERAL RULES**

Fed. R. Civ. P. 23 .......... 4

Fed. R. Civ. P. 24 .......... *passim*

**OTHER AUTHORITIES**

7C Wright & Miller's Federal Practice & Procedure § 1909 (3d ed. 2024) .................................. 9

*County Voter Registration Officials*, Tex. Sec'y of State, https://www.sos.state.tx.us/elections/voter/votregduties.shtml (last visited Oct. 29, 2026) .......................................................................................................... 3

Plaintiffs waited until one week before Election Day to seek extraordinary relief from this Court: a judicial order requiring all Texas counties to perform a hand count of every ballot cast in the State's federal elections—a state with over 19 million voters, with recent voter participation projecting that as many as ten million voters may cast ballots in this election. Plaintiffs' requested relief would rewrite state law, inject chaos on the eve of the election, and threaten the timely certification of election results. There is no legal authority to support Plaintiffs' claim—it is found nowhere in state law, and Plaintiffs' proposed Fourteenth Amendment standard is invented, asserted without any citation in support, and untethered to any theory of constitutional interpretation. *See* Compl. ¶ 53.

Plaintiffs' Complaint also suffers from numerous procedural defects, including that they seek to certify a defendant class only of certain county "election administrators," which would *not* provide statewide uniformity because many Texas counties use clerks, *not* election administrators, to carry out election-related duties. Plaintiffs also ignore the multitude of decisions from last election cycle rejecting similar claims for lack of standing. *See, e.g.*, *Lutostanski v. Brown*, 88 F.4th 582, 585 (5th Cir. 2023); *Raskin v. Jenkins*, No. 23-10960, 2024 WL 3508051, at *1 (5th Cir. July 23, 2024); *Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449, at *1 (5th Cir. Apr. 3, 2024) (per curiam), *cert. denied sub nom. Gremont v. Nelson*, 145 S. Ct. 441 (2024); *Jerusalem v. Dep't of State La.*, No. 23-30521, 2024 WL 194174, at *1 (5th Cir. Jan. 18, 2024), *cert. denied sub nom. Jerusalem v. La. Dep't of State*, 144 S. Ct. 2524 (2024).

Proposed Defendant-Intervenors DSCC and DCCC are entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) to defend against this meritless attempt to impede the certification of Texas's elections for federal office. Indeed, the Fifth Circuit recently reversed a district court's denial of intervention where Republican Party committees had a cognizable

interest in litigation over Texas election rules that affected the deployment of their own resources. *La Union del Pueblo Entero v. Abbott* ("*LUPE*"), 29 F.4th 299, 300–06 (5th Cir. 2022). Here, DSCC is the Democratic Party's national senatorial campaign committee, with a direct interest in supporting the election of James Talarico to the U.S. Senate. DCCC is the Democratic Party's national congressional campaign committee, with a parallel interest in supporting the election of Democratic candidates in all 38 of Texas's elections for the U.S. House of Representatives. These interests, which require timely certification of election results based on Texas's duly enacted ballot-canvassing procedures, will be directly impaired if Plaintiffs succeed in enjoining all certification and "return-transmission duties" for the upcoming federal elections until officials "hand count[] all paper election records or ballots in all precincts in Texas." Compl., Prayer for Relief. The named parties do not adequately represent Proposed Intervenor-Defendants' interests. Plaintiffs are affiliated with a rival political party and are explicitly hostile to Proposed Intervenor-Defendants' interests. And Defendant Benge, the Potter County Elections Administrator, lacks Proposed Intervenor-Defendants' direct stake in whether election winners are timely certified and can timely assume office with their legislative class in Washington, D.C. In the alternative, Proposed Intervenor-Defendants meet all the requirements for permissive intervention under Rule 24(b).

Proposed Intervenor-Defendants respectfully request that the Court grant this Motion.

## BACKGROUND

### I. Texas administers its elections securely.

"Texas uses a decentralized election-administration structure." Compl. ¶ 20. Elections are administered through counties, and different counties assign election-related tasks to different officials. Texas counties with a population of 3.5 million or less may create a "county elections administrator," while other counties assign responsibility for election administration to clerks or

tax assessor-collectors. Tex. Elec. Code § 31.031(a).[1] Among other responsibilities, county election administrators "shall perform" the "duties and functions of the voter registrar," along with other election-related duties belonging to "county clerk[s]." *Id.* § 31.043. For statewide elections, these officials are charged with "prepar[ing] county election returns." *Id.* § 67.007(a). They also "certify the county returns" and "deliver" them to the Texas Secretary of State. *Id.* § 67.007(c)–(d). Certified returns must be delivered to the Texas Secretary of State within 24 hours of the county canvass, which convenes no later than 14 days after election day—or November 17, 2026. *Id.* §§ 67.003(c), .007(c)–(d). The Governor of Texas must conduct the state canvass "not earlier than the 18th or later than the 33rd day after election day." *Id.* § 67.012(a)(2).

Texas law provides for secure auditing of election results. "To ensure the accuracy of the tabulation of electronic voting system results" where electronic voting systems are used, the county election administrator (or other official) must "conduct a manual count of all the races in at least one percent of the election day polling locations and one percent of the early voting locations or in three election day polling locations and three early voting locations, whichever is greater." *Id.* § 127.201(a); *see also id.* § 66.001(1) (designating "general custodian of election records"). Polling locations and precincts subject to audit are picked "at random," audits must begin within three days after polls close, and they "shall be completed not later than the 21st day after election day." *Id.* § 127.201(a).

During the audit, the county clerk or election administrator designates members of the "early voting ballot board" to "perform the manual count." *Id.* § 127.201(b-1). That count is public. *See id.* § 127.201(c) (providing "the general custodian of election records shall post in the

[1] *See County Voter Registration Officials*, Tex. Sec'y of State, https://www.sos.state.tx.us/elections/voter/votregduties.shtml (last visited Oct. 29, 2026) (identifying the relevant official for each county).

custodian's office a notice of the date, hour, and place of the count"). Political parties and candidates, along with the individuals (or "watchers") they select, are "entitled to be present" during the audit. *Id.* §§ 127.201(d), 33.001–.003. After the audit, the county clerk or administrator must deliver a written report of the audit's results to the Texas Secretary of State and post the results on the county's website. *Id.* § 127.201(e). Nowhere does Texas law require the extraordinary relief Plaintiffs seek here: a manual count of all ballots prior to election certification.

## II. Plaintiffs filed suit seeking to upset "ordinary Texas post-election procedures."

Plaintiffs filed this suit on October 27, 2026. They propose Defendant Benge, the Potter County Elections Administrator, as the representative of a Rule 23(b)(2) defendant class "consisting of all persons who hold the office of county elections administrator." Compl. ¶ 41. *But see Fund Tex. Choice v. Deski*, 738 F. Supp. 3d 835, 844 (W.D. Tex. 2024) ("[M]ost circuit courts have found that 23(b)(2) is inappropriate in the context of defendant class actions.").

The Complaint catalogues a list of risks allegedly associated with "[e]lectronic voting systems," Compl. ¶ 1, and in particular, voting machines "with components manufactured by foreign adversaries," *id.* ¶ 5. Plaintiffs tack on fears of "compromised router[s]," *id.* ¶ 25, and "rogue artificial intelligence (AI) programs" that can "hack into virtually any voting system," *id.* ¶ 11. At the same time, Plaintiffs freely admit that they cannot "establish with certainty that any particular Texas voting machine has miscounted votes in the past," or "that any past Potter County election results were altered, or inaccurately reported." *Id.* ¶ 32.

Plaintiffs nevertheless maintain that the "limited audit" already required by state law is "an insufficient Constitutional safeguard of the integrity and accuracy of the electronic voting systems protected by the United States Constitution." *Id.* ¶ 21. Plaintiffs fear that Texas officials are planning to "follow the ordinary Texas post-election procedures" by not hand counting of "all of the paper records or ballots in all Texas precincts" before certification. *Id.* ¶ 35.

Plaintiffs request a declaration that they "have a constitutional right to pre-certification" based on hand counts of paper ballots for "electronically tabulated votes," and a sweeping mandatory injunction requiring "manual hand count[s] of all voter-verifiable, human-readable paper records or ballots in all precincts in Texas before final certification of the election for statewide federal office." *Id.*, Prayer for Relief. Plaintiffs also ask the Court to "[c]onfirm the election results for *all federal elections* held on November 3, 2026 in Texas *for all federal races* in Texas based on the hand count of all paper ballots," if they are "different from the election results reported by the election machines." *Id.* (emphasis added).

## III. DSCC and DCCC represent the interests of Democratic candidates and voters.

DSCC is the Democratic Party's national senatorial campaign committee, which is charged with supporting the election of Democratic candidates, including its current nominee, to the U.S. Senate. It accomplishes that mission by, among other things, working with Democratic senatorial campaigns, assisting state parties, mobilizing their supporters, protecting access to the franchise for Democratic voters, and defending the victories of Democratic candidates.

DCCC is the Democratic Party's national congressional committee, which is charged with supporting the election of Democratic candidates, including in Texas, to the U.S. House of Representatives. It accomplishes its mission by, among other things, working with Democratic congressional campaigns, assisting state parties, mobilizing their supporters, protecting access to the franchise for Democratic voters, and defending the victories of Democratic candidates.

## LEGAL STANDARD

Rule 24(a)(2) gives a party the right to intervene if: (1) the application for intervention is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest is

inadequately represented by the existing parties to the suit. *LUPE*, 29 F.4th at 305 (citing *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)); *see* Fed. R. Civ. P. 24(a)(2). The Fifth Circuit has adopted a "broad policy favoring intervention," *LUPE*, 29 F.4th at 305 (quoting *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *4 (5th Cir. Mar. 22, 2022)), under which "Rule 24 is to be liberally construed," *id.* (quoting *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)); *see Sierra Club v. Espy*, 18 F.2d 1202, 1205 (5th Cir. 1994) ("Federal courts should allow intervention where no one would be hurt and the greater justice could be attained" (internal quotation marks and citation omitted)); *Miller*, 2022 WL 851782, at *4 (reversing denial of intervention and noting Fifth Circuit's "broad policy favoring intervention" and the intervenors' "minimal" burden). "[T]here is no Article III requirement that intervenors have standing in a pending case." *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) (emphasis omitted).

Alternatively, "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 2:22-CV223-Z, 2023 WL 11840559, at *1 (N.D. Tex. Feb. 6, 2023) (quoting Fed. R. Civ. P. 24(b)(1)(B)) (granting permissive intervention). In exercising its discretion to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).[2]

[2] Proposed Intervenor-Defendants submit a Proposed Answer with this Motion as required by Rule 24, *see* Proposed Answer, but reserve the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of Civil Procedure.

## ARGUMENT

### I. Proposed Intervenor-Defendants are entitled to intervene as of right under Rule 24(a).

#### A. This motion is timely.

To determine whether a motion to intervene is timely, courts consider "the length of time the movant waited to file, the prejudice to the existing parties from any delay, the prejudice to the movant if intervention is denied, and any unusual circumstances." *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021). Plaintiffs filed their Complaint on October 27, 2026; this motion follows two days later and before any other significant developments have occurred. Given that these proceedings have just commenced, and because there is no possible risk of prejudice to the other parties, Proposed Intervenor-Defendants easily satisfy the timeliness requirement. *See Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565–66 (5th Cir. 2016) (reversing denial of intervention and deeming motion to intervene timely even when filed after discovery had commenced).

#### B. Plaintiffs' suit threatens to impair Proposed Intervenor-Defendants' interests in the timely certification of election results according to settled rules.

Proposed Intervenor-Defendants also satisfy the second and third requirements for intervention because they have significant protectable interests in this lawsuit, and the action threatens to impair their ability to protect those interests. Under Rule 24(a)(2), "an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas*, 805 F.3d at 659. This interest need not be a "pecuniary or property interest," *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir. 1987) (per curiam); it is sufficient that a prospective intervenor "has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas*, 805 F.3d at 657. Furthermore, in cases

such as this that "involv[e] 'a public interest question' that is 'brought by a public interest group,' the 'interest requirement may be judged by a more lenient standard.'" *LUPE*, 29 F.4th at 305–06 (quoting *Brumfield*, 749 F.3d at 344).

Proposed Intervenor-Defendants easily satisfy these requirements. In *LUPE*, the Fifth Circuit reversed the district court's denial of intervention to Republican Party committees (a group that included Proposed Intervenor-Defendants' direct counterparts, the National Republican Senatorial Committee and the National Republican Congressional Committee) because the committees had a cognizable interest in litigation over Texas election rules that affected the deployment of their own resources. *Id.* Similarly here, any success that Plaintiffs achieve would require Proposed Intervenor-Defendants to incur enormous expense monitoring hand counts across the State for fairness and accuracy. *Cf. Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 75 (2026) (recognizing standing of candidate who alleged litigation could affect "resources allocated to the post-election certification process").

The interests at stake in this litigation go well beyond the resource-preservation interests that *LUPE* deemed sufficient. Proposed Intervenor-Defendants are each supporting candidates for federal office whose certification is likely to be delayed or may be denied altogether if Plaintiffs succeed on their claims. It is *not possible* to accurately hand count *millions* of ballots under Texas's post-election timelines. And because Plaintiffs seek to upset longstanding ballot-canvassing rules mere days before the election, they threaten the chaos and confusion inherent in any ad hoc, compressed, 254-county recount. Except it is even worse: Because Plaintiffs have sued only county election administrators, their proposed class would not cover election officials in every Texas county; thus, the proposed injunction would result in inconsistent tabulation procedures statewide, jeopardizing Proposed Intervenor-Defendants' interests in consistent, fair procedures.

**C. No other party adequately represents Proposed Intervenors' interests.**

Proposed Intervenor-Defendants cannot rely on the existing parties to adequately represent their interests. Demonstrating inadequate representation generally "present[s] proposed intervenors with only a minimal challenge." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195–96 (2022). Proposed Intervenor-Defendants "'need not show that the representation by existing parties will be, for certain, inadequate,' but instead that it *may* be inadequate." *LUPE*, 29 F.4th at 307–08 (quoting *Texas*, 805 F.3d at 661); *see Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (describing this burden as a "minimal" one). Courts are "liberal in finding" this requirement satisfied; "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. 2024).

Plaintiffs, comprising a "county organization of the Republican Party" and its chairman, naturally do not represent Proposed Intervenor-Defendants' interests. *See* Compl. ¶¶ 13–14. Nor can Proposed Intervenor-Defendants count on adequate representation by Defendant Benge or any other county election administrators. Although there is a "presumption" of adequate representation when the existing party "is a governmental body or officer charged by law with representing the interests" of the intervenor, that presumption is "overcome by showing that the intervenor's 'interest is in fact different from that of the' governmental party 'and that the interest will not be represented by' the existing governmental party." *LUPE*, 29 F.4th at 308 (quoting *Texas*, 805 F.3d at 661–62). That is the case here, where Proposed Intervenor-Defendants have interests in conserving party resources, electing Democratic candidates, and ensuring that Democratic Member-elects and Senator-elects are seated promptly with the 120th United States Congress. None of those interests are shared by the Defendant. *See Craig v. Simon*, 493 F. Supp. 3d 773, 781 (D. Minn. 2020) (holding that because the proposed intervenor was "a candidate for [Congress],"

the candidate's "interests are not adequately represented by the existing [governmental] defendant"); *see also, e.g.*, *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (concluding adequate representation was not guaranteed where existing defendant was "an elected official" whose interpretation of legal requirements might not be aligned with intervenors' interests). As such, "there are reasons to believe [Proposed Intervenor-Defendants'] interests are less broad than those of the governmental defendants, which may lead to divergent results." *LUPE*, 29 F.4th at 308 (emphasis omitted).[3]

## II. Alternatively, Proposed Intervenor-Defendants should be granted permissive intervention under Rule 24(b).

Proposed Intervenor-Defendants also satisfy the requirements for permissive intervention. Rule 24(b) provides for permissive intervention when "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Missouri v. U.S. Food & Drug Admin.*, No. 2:22-CV-223-Z, 2025 WL 1223581, at *4 (N.D. Tex. Apr. 28, 2025) (quoting *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 934 (N.D. Tex. 2019)). As with intervention as of right, the rule on permissive intervention "is to be liberally construed." *Wal-Mart Stores*, 834 F.3d at 565 (quoting *Texas*, 805 F.3d at 656). "Intervention should generally be allowed where no one would be hurt and greater justice could be attained." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (citation modified).

Each relevant consideration weighs in favor of granting permissive intervention here. Proposed Intervenor-Defendants' defenses in this case concern questions of law common to those

[3] The fact that Proposed Intervenor-Defendants might seek the same ultimate outcome as Defendant is not the controlling question. "[A] prospective intervenor must intervene on one side of the 'v.' or the other and will have the same general goal as the party on that side. If that's all it takes to defeat intervention, then intervention as of right will almost always fail." *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 748 (7th Cir. 2020).

presented by the Complaint. *See generally* Proposed Answer. Their timely motion to intervene will result in no conceivable prejudice to any existing party, nor will it cause delay, because Proposed Intervenor-Defendants agree to be bound by any case schedule set by the Court. *See Missouri*, 2025 WL 1223581, at *6 (granting permissive intervention where it would "change nothing in the existing case schedule").

Proposed Intervenor-Defendants have especially stark interests at stake in this litigation. DSCC and DCCC's principal mission is to help Democrats win, and preventing timely and orderly certification of the election results under the "ordinary Texas post-election procedures" that Plaintiffs seek to disturb, Compl. ¶ 35, would directly frustrate their missions. These are precisely the sort of significant interests that warrant intervention.

## CONCLUSION

For these reasons, Proposed Intervenor-Defendants respectfully request that the Court grant the motion to intervene.

October 29, 2026

Respectfully submitted,

/s/ Thad Spalding________
Thad Spalding
Texas Bar No. 00791708
Shelby J. White
Texas Bar No. 24084086
**Durham Pittard Spalding**
**Kaufman & Hollingsworth, LLP**
P.O. Box 224626
Dallas, Texas 75222
Telephone: (888) 998-6688
tspalding@dpskh.com
swhite@dpskh.com

Aria C. Branch*
D.C. Bar No. 1014541
Jacob D. Shelly*
D.C. Bar No. 90010127
James J. Pinchak*
D.C. Bar No. 90034756

Derek A. Zeigler*
D.C. Bar No. 90031274
**ELIAS LAW GROUP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 948-1135
abranch@elias.law
jshelly@elias.law
jpinchak@elias.law
dzeigler@elias.law

**Pro hac vice* applications forthcoming

*Counsel for Proposed Intervenor-Defendants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with all typeface, font, pagination, and other enumerated requirements set forth in Local Rules 7.1 and 7.2

I hereby certify that no part of this filing was prepared using generative artificial intelligence, pursuant to Local Rule 7.2(f).

October 29, 2026

Respectfully submitted,

/s/ Thad Spalding________
Thad Spalding
*Counsel for Proposed Intervenor-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on **October 29, 2026**, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing ("ECF") system of the Court. All counsel of record were served via electronic service through the ECF system.

*/s/ Thad Spalding*____________
**Thad Spalding**