**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

POTTER COUNTY REPUBLICAN PARTY,
DANIEL ROGERS,

*Plaintiffs*,

v.

CHRISTY BENGE, in her official capacity as the POTTER COUNTY ELECTIONS ADMINISTRATOR, and as proposed representative of a defendant class of similarly situated Texas county election officials,

*Defendants,*

Civil Action No. 2:26-cv-00215-Z

**RULE 24(C) RESPONSIVE PLEADING OF PROPOSED INTERVENOR-DEFENDANTS NAACP TEXAS STATE CONFERENCE, LEAGUE OF WOMEN VOTERS OF TEXAS, MOVE TEXAS CIVIC FUND, AND COMMON CAUSE**

**RULE 12(B) MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS


INTRODUCTION ..... 1
BACKGROUND ..... 2
I. Texas Law Governing the Counting of Ballots. ..... 2
II. Texas Law Governing the Timeline for the Canvass and Certification of Federal Elections. ..... 5
III. Plaintiffs' Lawsuit ..... 7
LEGAL STANDARD ..... 7
ARGUMENT ..... 8
I. Plaintiffs Lack Standing under Rule 12(b)(1). ..... 8
A. Plaintiffs' Injury is Speculative. ..... 8
B. Plaintiffs' Injury is Not Particularized. ..... 9
C. Plaintiffs' Injury is Not Fairly Traceable to or Redressable by Defendants. ..... 12
II. Plaintiffs' Relief is Barred Under the *Purcell* Doctrine ..... 15
III. Plaintiffs' Suit is Barred by Laches. ..... 18
IV. The Complaint Fails to State a Claim Under Rule 12(b)(6). ..... 20
V. Plaintiffs' Requested Relief Would Violate State Law. ..... 21
A. Plaintiffs Request a Mandatory Injunction That Would Upend Countless Provisions of Texas Law. ..... 21
B. Plaintiffs' Requested Relief Would Gravely Imperil Timely Certification as Required Under State Law ..... 22
CONCLUSION ..... 23

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze,*
460 U.S. 780 (1983) .......... 20

*Armco, Inc. v. Armco Burglar Alarm Co. Inc.*,
693 F.2d 1155 (5th Cir. 1982) .......... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8

*Barber v. Bryant*,
860 F.3d 345 (5th Cir. 2017) .......... 9

*Barilla v. City of Houston, Texas*,
13 F.4th 427 (5th Cir. 2021) .......... 8

*Bay Area Unitarian Universalist Church v. Ogg*,
185 F.4th 523 (5th Cir. 2026) .......... 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S 544 (2007) .......... 8

*Burdick v. Takushi,*
504 U.S. 428 (1992) .......... 20

*Bush v. Gore*,
531 U.S. 98 (2000) .......... 21

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) .......... 9, 12

*Democratic National Committee v. Wisconsin State Legislature*,
141 S. Ct. 28 (2020) .......... 18

*Denning v. Bond Pharmacy, Inc.*,
50 F.4th 445 (5th Cir. 2022) .......... 7

*Elvis Presley Enterprises, Inc. v. Capece*,
141 F.3d 188 (5th Cir. 1988) .......... 18

*Food and Drug Administration v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) .......... 12

*Fourts v. Harris*,
88 F. Supp. 2d 1351 (S.D. Fla. 1999) .......... 19

*Funk v. Stryker Corp.*,
631 F.3d 777 (5th Cir. 2011) ........ 8

*Griffin v. North Carolina State Board of Elections*,
781 F. Supp. 3d 411 (E.D.N.C. 2025)........ 15

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)........ 12

*Hotze v. Hollins*,
No. 4:20-CV-03709, 2020 WL 6437668 (S.D. Tex. Nov. 2, 2020) ........ 17

*Hotze v. Hudspeth*,
16 F.4th 1121 (5th Cir. 2021) ........ 10

*Howery v. Allstate Insurance Co.*,
243 F.3d 912 (5th Cir. 2001) ........ 7

*Hunt v. Washington State Apple Advertising Commission*,
432 U.S. 333 (1977)........ 11

*In re Katrina Canal Breaches Litigation*,
495 F.3d 191 (5th Cir. 2007) ........ 8

*Kitty Hawk Aircargo, Inc. v. Chao*,
418 F.3d 453 (5th Cir. 2005) ........ 8

*La Union del Pueblo Entero v. Abbott*,
119 F.4th 404 (5th Cir. 2024) ........ 15, 16, 17

*La Union del Pueblo Entero v. Abbott*,
167 F.4th 743 (5th Cir. 2026) ........ 21

*La Union Pueblo Entero v. Abbott*,
187 F.4th 690 (5th Cir. 2026) ........ 13

*Lance v. Coffman*,
549 U.S. 437 (2007)........ 10, 11

*Lopez v. Hale County*,
797 F. Supp. 547 (N.D. Tex. 1992) ........ 19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........ 9

*Maryland Citizens for a Representative General Assembly v. Governor of Maryland*,
429 F.2d 606 (4th Cir. 1970) ........ 19

*McClure v. Jefferson Cnty. Commission*,
2025 WL 2977740 (11th Cir. Oct. 16, 2025)........................................................... 15

*Merrill v. Milligan*,
142 S. Ct. 879 (2022)........................................................................ 15, 16, 17, 18

*Northeast Ohio Coalition for Homeless v. Husted*,
696 F.3d 580 (6th Cir. 2012) ................................................................................ 20

*Parr v. Cougle*,
127 F.4th 967 (5th Cir. 2025) .................................................................................. 9

*Pierce v. North Carolina State Board of Elections*,
97 F.4th 194 (4th Cir. 2024) .................................................................................. 18

*Purcell v. Gonzalez*,
549 U.S. 1 (2006)........................................................................................... 15, 16

*R2 Investments LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) .................................................................................... 8

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) .................................................................................... 7

*Retractable Technologies, Inc. v. Becton Dickinson & Co.*,
842 F.3d 883 (5th Cir. 2016) .................................................................................. 18

*Robinson v. Ardoin*,
86 F.4th 574 (5th Cir. 2023) .................................................................................. 15

*Rush v. National Board of Medical Examiners*,
268 F. Supp. 2d 673 (N.D. Tex. 2003) .................................................................. 22

*Sanders v. Dooly County, Georgia*,
245 F.3d 1289 (11th Cir. 2001) .............................................................................. 19

*Seamon v. Upham*,
536 F. Supp. 1030 (E.D. Tex. 1982)....................................................................... 18

*Simkins v. Gressette*,
631 F.2d 287 (4th Cir.1980) ................................................................................... 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)............................................................................................ 8, 13

*Texas League of United Latin American Citizens v. Hughs*,
978 F.3d 136 (5th Cir. 2020) ............................................................................ 15, 21

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ........ 14

*Universal Amusement Co., Inc. v. Vance*,
587 F.2d 159 (5th Cir. 1978) ........ 21

*Veasey v. Perry*,
769 F.3d 890 (5th Cir. 2014) ........ 16

*Voting for America, Inc. v. Steen*,
732 F.3d 382 (5th Cir. 2013) ........ 20

*White v. Daniel*,
909 F.2d 99 (4th Cir. 1990) ........ 18

*Wood v. Raffensperger*,
501 F. Supp. 3d 1310 (N.D. Ga. 2020) ........ 15

**Statutes**

Tex. Elec. Code § 1 ........ 6

Tex. Elec. Code § 11 ........ 4

Tex. Elec. Code § 31 ........ 14, 22

Tex. Elec. Code § 32–54 ........ 4

Tex. Elec. Code § 67 ........ passim

Tex. Elec. Code § 87 ........ 4

Tex. Elec. Code § 127 ........ 2, 3, 4, 21

Tex. Elec. Code § 129 ........ 3

**Other Authorities**

*2024 Texas Election Security Update*, Texas Secretary of State ........ 2

*Central Counting Station Handbook*, Texas Secretary of State ........ 2

*Elections Duties*, Texas Secretary of State ........ 14

Grace Marocco & Steven Dial, *Texas early voting turnout surges past 2022 totals on final day*, Fox 4 News (Oct. 30, 2026) ........ 1

*Hart and Barcodes: Doing the Right Thing*, Hart InterCivic (Apr. 10, 2025) ........ 3

*Important Election Dates*, Texas Secretary of State .......... 7

Kaley Green, *Potter County to keep voting centers, machines*, Myhighplains.com (Nov. 14, 2023) .......... 16, 19

Natalia Contreras, *Gillespie County Republicans scale back hand-count amid staffing shortage*, Texas Tribune (Feb. 18, 2026) .......... 5

Natalia Contreras, *Some Texas counties replace touchscreen voting machines after Trump order*, Texas Tribune (Sept. 2, 2025) .......... 2

*November 3, 2026 Election Law Calendar*, Texas Secretary of State .......... 4

*Post-Election Hand Count Audit Guide 10*, Texas Secretary of State (Nov. 4, 2025) .......... 4

Potter County Texas, Public Notice of Logic and Accuracy Test of Electronic Pollbook Equipment .......... 3

Potter County Texas, Public Notice of Test of Automatic Tabulating Equipment Potter County, Texas .......... 2, 3

Ryan Jimenez, Erik Buntin, & David Velez-Perez, Logic and Accuracy Testing, Texas Secretary of State (Aug. 24, 2023) .......... 3

Tex. S.B. 827, 89th Leg., Reg. Sess. (Tex. 2025) .......... 3

*Voting Systems by County 2026*, Texas Secretary of State (Sept. 1, 2026) .......... 2

Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) .......... 17

## INTRODUCTION

Days away from the November 3, 2026, election, and after early voting had already begun, Plaintiffs filed a lawsuit that would rewrite large swaths of the Texas Election Code and disrupt a statewide federal election based on discredited speculation. As of early on the date of this filing, approximately 6 million voters have cast ballots in person during the first 11 days of early voting, *i.e.*, 41.3% of the 19 million registered Texas voters and 900,000 more than who voted during the 2022 entre early votive period.[1] Plaintiffs ask this Court to order a statewide hand count. Yet they cannot identify a single ballot cast in Texas that was or will be improperly tabulated by electronic tabulation, and their requested relief would not apply uniformly across the State, because some counties do not use the systems they attack.

Plaintiffs' complaint should be dismissed for multiple, independently sufficient reasons. Plaintiffs fail to establish any of the three elements required for Article III standing—because their imagined injury is both completely speculative and not particularized, and because they cannot establish traceability or redressability as to the subset of county officials they chose to sue. Their suit is also barred by laches and the *Purcell* principle. Those doctrines foreclose eleventh-hour federal-court changes to longstanding election laws and bar litigants from unreasonable delay in challenging voting rules. On the merits, Plaintiffs plead a right-to-vote claim without alleging a single improper tabulation, in this election or any prior Texas contest. And finally, the requested relief would violate state law twice over. It would displace the Texas Election Code's tabulation procedures and the statewide hand count it requests would jeopardize the Code's certification deadlines.

---

[1] Grace Marocco & Steven Dial, *Texas early voting turnout surges past 2022 totals on final day*, Fox 4 News (Oct. 30, 2026), https://perma.cc/YZ7Z-84ZF.

Proposed Intervenor Defendants respectfully request that this Court dismiss this reckless, eleventh-hour attempt to disrupt the lawful administration of the upcoming federal election.

## BACKGROUND

### I. Texas Law Governing the Counting of Ballots.

The Texas Election Code prescribes an extensive, detailed process for counties, like Potter County (the named Defendant county in this lawsuit), that employ automatic ballot tabulating equipment. *See* Tex. Elec. Code §§ 127.001–127.351; Potter County Texas, Public Notice of Test of Automatic Tabulating Equipment Potter County, Texas, https://perma.cc/Z2RW-4E7H. These procedures include safeguards against tampering with tabulation software, Tex. Elec. Code §§ 127.123, 127.1231, verifying accurate tabulation, *id.* § 127.125, maintaining chain of custody for ballots, *id.* § 127.127, and responding to equipment malfunction, *id.* § 127.129.[2] In Potter County, this process is carried out in a central counting station, which is established by the county commissioners court as the relevant canvassing authority for this election. Tex. Elec. Code § 127.001(b)(1); Potter County Texas, Public Notice of Test of Automatic Tabulating Equipment Potter County, Texas, https://perma.cc/Z2RW-4E7H.[3]

Some counties use ES&S equipment, which prints QR codes or barcodes on ballots to speed tabulation.[4] Potter County does not. It uses Hart machines instead, which do not use barcodes. *Voting Systems by County 2026*, Tex. Sec'y of State (Sept. 1, 2026),

---

[2] This is consistent with the Texas Secretary of State's Office's extensive work on cybersecurity, including related to election equipment. *2024 Texas Election Security Update*, Tex. Sec'y of State, https://perma.cc/C4Y9-4JA6.

[3] *See also Central Counting Station Handbook* 2, Tex. Sec'y of State, https://perma.cc/P8QT-8SU2.

[4] Natalia Contreras, *Some Texas counties replace touchscreen voting machines after Trump order*, Tex. Tribune (Sept. 2, 2025), https://perma.cc/XPV6-MKAD.

https://perma.cc/BVJ3-5QCL; *see also Hart and Barcodes: Doing the Right Thing*, Hart InterCivic (Apr. 10, 2025), https://perma.cc/GC9M-BH7M.

The Code also provides several methods to verify that ballots submitted using electronic voting systems are accurately counted. Tabulation equipment must be tested at least 48 days before election day, immediately before the counting of ballots, and immediately after counting ends. Tex. Elec. Code §§ 127.093, 129.023; *see also id.* §§ 127.091–127.100. The Code also requires pre-election testing, including use of a "hashing" algorithm "to confirm that a voting system and its source code have not been altered." *Id.* §§ 129.021, 129.023(c-1); Ryan Jimenez, Erik Buntin, & David Velez-Perez, Logic and Accuracy Testing, Tex. Sec'y of State (Aug. 24, 2023), https://perma.cc/TVV7-GTP6. This testing applies to "each type of automatic tabulating equipment, ballot marking device, and direct recording electronic voting device used in the election." Tex. Elec. Code § 129.023(c)(10). Potter County has already conducted pre-election testing of both its electronic pollbook equipment and its automatic tabulating equipment. *See* Potter County Texas, Public Notice of Logic and Accuracy Test of Electronic Pollbook Equipment, https://perma.cc/T2VJ-VN3K; Potter County Texas, Public Notice of Test of Automatic Tabulating Equipment Potter County, Texas, https://perma.cc/Z2RW-4E7H.

The Election Code also includes a requirement for counties to conduct a post-election hand count audit "in at least one percent of the election day polling locations and one percent of the early voting locations or in three election day polling locations and three early voting locations, whichever is greater," to "ensure the accuracy of the tabulation of electronic voting system results." Tex. Elec. Code. § 127.201(a). The Texas Legislature updated these requirements as recently as 2025. Tex. S.B. 827, 89th Leg., Reg. Sess. (Tex. 2025).

Where there are statewide races on the ballots, as in November 2026, the Election Code requires an additional risk-limiting audit. *See* Tex. Elec. Code § 127.302. This year, the Secretary of State has prescribed that the risk limiting audit will occur on November 19, 2026. Tex. Elec. Code § 127.302(a); *November 3, 2026 Election Law Calendar*, Tex. Sec'y of State, https://perma.cc/G4W2-9QFA. Accordingly, counties will begin the post-election hand count audit by November 23, 2026. Tex. Elec. Code. § 127.201(b-2) (manual count shall begin by the first business day after completion of the risk-limiting audit). "[T]he count must be completed not later than the 30th day after election day or by the deadline designated by the secretary of state for completion of the count, whichever is later." *Id.* § 127.201(b-2). The Secretary of State intends to announce the official deadline for the risk-limiting audit after election day. *See November 3, 2026 Election Law Calendar*, Tex. Sec'y of State https://perma.cc/G4W2-9QFA. A report of the hand count results must be delivered to the Texas Secretary of State and posted online by the third day after the count is completed. Tex. Elec. Code. § 127.201(e).

Post-election hand-count audits may only be conducted by members of each county's early voting ballot board. *Id.* § 127.201(b-1). "If additional personnel are needed to assist the Early Voting Ballot Board in the performance of the Post Election Hand Count Audit, they may be appointed to the Ballot Board." *Post-Election Hand Count Audit Guide 10*, Tex. Sec'y of State (Nov. 4, 2025), https://perma.cc/J6N5-PD4K. To be appointed, a person must be a "qualified voter"—meaning eligible and registered to vote—in the county, Tex. Elec. Code § 87.003; *id.* § 11.002, and cannot be a candidate in a contested race or their employee, *id.* §§ 32.053–54.5.

---

[5] They also cannot be related within the second degree by consanguinity or affinity (blood or marriage) to an opposed candidate, be a campaign manager or treasurer, hold elective public office, or have been convicted of an election offense. Tex. Elec. Code § 32.052; *id.* §§ 32.054–056.

On the few recent times when smaller Texas counties have elected to hand count ballots instead of using machines, the results were delays, shortage of resources including staff, and inaccuracies. For example, in the 2024 primary it took the Gillespie County Republican Party 24 hours to hand count 8,000 ballots, at 5 times the cost of machine tabulation in prior years, and Party officials later found tallying errors in 12 of the county's 13 precincts.[6] Gillespie County dropped plans for a hand count in the 2026 primary because they were unable to recruit enough poll workers: "only about 60 people had signed up for a job that requires closer to 200."[7]

## II. Texas Law Governing the Timeline for the Canvass and Certification of Federal Elections.

The complaint addresses the ongoing "statewide federal election in Texas," Compl. ¶ 12, which is the U.S. Senate race. Texas determines the results of U.S. Senate elections through county and state canvasses. First, the county commissioners court, acting as the local canvassing authority, canvasses the precinct election returns and prepares the county tabulation. The last day for the local canvass is Tuesday, November 17, 2026. Tex. Elec. Code § 67.003(b)–(c).[8] The local canvass consists of examining and tabulating the precinct election returns. The Election Code requires the canvassing authority to prepare a tabulation showing, for each candidate and measure, precinct-level and aggregate vote totals. Tex. Elec. Code § 67.004(b). The tabulation "must" also contain the voter-total information required by Section 67.004(b-1), including any polling-location information applicable. Tex. Elec. Code § 67.004(b)–(b-1).

---

[6] Natalia Contreras, *Gillespie County Republicans scale back hand-count amid staffing shortage*, Tex. Trib. (Feb. 18, 2026), https://perma.cc/Z9EU-26GM.

[7] *Id.*

[8] For U.S. Senate elections, which are "held on the date of the general election for state and county officers," § 67.003(c) applies, dictating that the last day of the local canvass "may be set not later than the 14th day after election day" rather than the typical 11 days permitted under 67.003(b).

The canvassing authority "may compare the precinct returns" against "corresponding tally lists," and have the precinct presiding judge correct any discrepancy in the returns. *Id.* § 67.004(d). It then delivers the tabulation to the local election-register custodian and records the canvass's completion. *Id.* §§ 67.004(e), (g).

After the local canvass is completed, the county clerk must prepare and certify county election returns and deliver them to the Secretary of State "not later than 24 hours after completion of the local canvass." Tex. Elec. Code §§ 67.007(a)–(d); 1.005(4). For a county completing its canvass on November 17, that deadline falls on November 18.

The Secretary of State compiles the county returns into a statewide tabulation showing each candidate's county-level and statewide vote totals and delivers the county returns to the Governor. Tex. Elec. Code § 67.013(a)–(b). If any of Texas's 254 counties are unable to conduct a complete and accurate hand count within the prescribed time period, the Secretary of State will be unable to complete a timely statewide tabulation to be sent to the Governor. *See id.* §§ 67.007(d) (certified county returns shall be delivered to Secretary of State); 67.010 (Secretary of State shall deliver county returns to Governor to conduct the state canvass).

The Governor conducts a state canvass at the time set by the Secretary of State, which must be no later than Monday, December 7, 2026. Tex. Elec. Code §§ 1.006(a); 67.012(a)(2). Upon receipt of the Secretary of State's tabulations, the Governor "shall certify the tabulations." Tex. Elec. Code § 67.013(d). The official result of a U.S. Senate election is determined from the Governor's canvass of the county returns. Tex. Elec. Code §§ 67.010(a), 67.014. The Governor must then prepare a certificate of election for the successful U.S. Senate candidate and "promptly deliver" it to that candidate. Tex. Elec. Code §§ 67.016(b)-(e).

**III. Plaintiffs' Lawsuit**

Plaintiffs sued on October 27, 2026—exactly one week before Election Day and eight days after early voting began, *Important Election Dates*, Tex. Sec'y of State, https://perma.cc/ZQ9L-QDKJ. They assert a single claim: that their constitutional right to vote will be violated if Texas election officials canvass and certify results for federal elections based on vote tabulations produced by machines Texas counties, and countless other jurisdictions across the country, have used without fault for years. Compl. ¶ 53. And they request sweeping relief that would upend countless provisions of Texas's election code—an order from this court mandating a hand count of paper ballots across all Texas counties, the results of which the court itself must confirm, before certification of the U.S. Senate race can proceed. *Id.* ¶¶ B–F. As of this date, Plaintiffs have not sought any emergency or preliminary relief.

**LEGAL STANDARD**

When adjudicating a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a court "presume[s] that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Because the motion is jurisdictional, it should be considered "before addressing . . . the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). The Court accepts well-pleaded factual allegations as true, but Plaintiffs must allege facts establishing each element of standing. *Denning v. Bond Pharm., Inc.*, 50 F.4th 445, 450 (5th Cir. 2022).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face,'" *In re Katrina Canal Breaches Litig.*, 495 F.3d

191, 205 (5th Cir. 2007) (citation omitted), and to raise a right to relief "above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 555, 570 (2007). Although the Court must accept well-pleaded factual allegations as true, it need not accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (cleaned up). Dismissal is proper when there is no "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In adjudicating a motion to dismiss, courts may take judicial notice of facts generally known, including information contained in government websites. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of approval posted on government agency's website).

## ARGUMENT

### I. Plaintiffs Lack Standing under Rule 12(b)(1).

Plaintiffs "bear[] the burden of establishing [their] standing." *Barilla v. City of Hous., Texas*, 13 F.4th 427, 431 (5th Cir. 2021) (cleaned up). To establish Article III standing, a plaintiff must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Plaintiffs fail to satisfy standing on at least three grounds. *First*, Plaintiffs' injury is speculative and conjectural, not actual, concrete, or imminent. *Second*, Plaintiffs have failed to plead a particularized, rather than generalized, injury. And *third*, Plaintiffs have not established traceability and redressability as to the officials they sued.

#### A. Plaintiffs' Injury is Speculative.

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural

or hypothetical." *Id.* at 339 (internal quotation marks omitted). In order "to ensure that the alleged injury is not too speculative for Article III purposes," courts must determine "that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted). The Supreme Court has "repeatedly reiterated" that "allegations of *possible* future injury are not sufficient." *Id.* (cleaned up).

Plaintiffs allege a speculative theory of injury, predicated on the unsupported premise that Texas's electronic tabulation procedures might produce inaccurate results in the upcoming November 3, 2026, election. Plaintiffs identify no instance in which the alleged vulnerabilities caused a Texas ballot to be miscounted. They even concede the point, noting they cannot allege that "any particular Texas voting machine has miscounted votes in the past" or that any county election results "were altered [] or inaccurately reported." Compl. ¶ 32. A past miscount may not be needed to show a future one. But Plaintiffs must at least allege facts connecting their general concerns about electronic voting to an impending miscount of their own ballots. They allege none.

Plaintiffs instead invoke "reports of the ability of rogue artificial intelligence (AI) programs," *id.* ¶ 11, and claim that voting machines are "in many instances [being] assembled in China," *id.* ¶ 30. They refer to the "possibility" that purported issues with Texas' election system "could" be exploited. *See, e.g.*, *id.* ¶¶ 5, 25, 28. This is precisely the sort of conjecture that courts reject for Article III purposes. *See Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017) ("An injury that is based on a 'speculative chain of possibilities' does not confer Article III standing.") (quoting *Clapper*, 568 U.S. at 410).

**B. Plaintiffs' Injury is Not Particularized.**

Plaintiffs also fail to allege a particularized injury. An "injury must affect the plaintiff in a personal and individual way." *Parr v. Cougle*, 127 F.4th 967, 972 (5th Cir. 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). A plaintiff asserting "only harm to his and

every citizen's interest in proper application of the Constitution and laws" lacks standing. *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam). Plaintiffs allege exactly that sort of generalized grievance: dissatisfaction with how election results are verified, untethered to facts establishing an injury to their own voting rights.

Neither Rogers nor any PCRP member alleges a particularized voting injury. Rogers broadly alleges that he "intends to vote in the upcoming" election and that "his ballot will be tabulated . . . by Potter County." Compl. ¶ 14. PCRP alleges that its members are "registered voters and candidates, volunteers, poll workers, and election participants in Potter County." *Id.* ¶ 13. Neither allegation explains how the challenged procedures personally injure Rogers or any PCRP member. Instead, Plaintiffs assert that certification without the verification they demand "creates an unjustified . . . risk of undetected tabulation error, or wrongful manipulation by hacking." *Id.* ¶ 54. That is a concern about election administration generally, not a particularized injury.

*Hotze v. Hudspeth* is instructive. There, a voter and three candidates challenged Harris County's use of drive-through voting on the theory that it "hurt the 'integrity' of the election process." 16 F.4th 1121, 1124 (5th Cir. 2021). The Fifth Circuit held that theory was "far too generalized to warrant standing," *id.*, because "[j]ust challenging the 'integrity' of the voting process is too general to suffice." *Id.* at 1124 n.2. So too here: Plaintiffs' preference for a different verification method does not show how the existing method harms them personally.

The Complaint does not allege that Rogers or any PCRP member has been denied the ability to vote or will have a ballot rejected or miscounted. Indeed, Plaintiffs concede they do not "allege that any past Potter County election results were altered, or inaccurately reported." Compl. ¶ 32. Their claim that Rogers "will suffer irreparable injury and disenfranchisement if the relief

requested [] is not granted," *id.* ¶ 14, and that PCRP's members will suffer "irreparable and specific injury," *id.* ¶ 13, just label the supposed injury without alleging facts to support it.

Nor does Plaintiffs' asserted Fourteenth Amendment right to verification of "all electronically tabulated votes" cure the defect. Compl. ¶ 59. In *Lance*, the Supreme Court rejected standing where "[t]he only injury plaintiffs allege[d]" was that the Elections Clause had "not been followed." 549 U.S. at 442. That was "the kind of undifferentiated, generalized grievance about the conduct of government" that cannot support standing. *Id.* Here, too, the problem is not just that many voters could share Plaintiffs' concerns, but that Plaintiffs identify no personal impairment of their voting rights beyond objecting to how officials will administer the election.

PCRP's associational claim fails for the same reason. An association has standing only if "its members would otherwise have standing to sue in their own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Rogers is expressly identified as PCRP's "member and [c]hairman," Compl. ¶ 14, but his allegations establish no particularized injury, and PCRP pleads no additional facts establishing one for other members. PCRP thus fails the first requirement for associational standing. And PCRP's passing reference to members who are "candidates," Compl. ¶ 13, does not establish otherwise. It identifies no member running in an election governed by the challenged procedures and thus alleges no basis for candidate standing.

Plaintiffs' advocacy expenditures do not establish an independent injury, either. PCRP alleges spending "significant human resources to require a manual hand count" and "considerable time, resources and manpower" to publicizing its concerns about electronic voting machines. Compl. ¶ 13. But that is advocacy for the very policy change PCRP seeks here. An organization without an independently cognizable injury cannot "spend its way into standing" through expenditures gathering information and opposing government action. *FDA v. All. for Hippocratic*

*Med.* (“*AHM*”), 602 U.S. 367, 394 (2024). Unlike in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), where the challenged conduct “directly affected and interfered with [plaintiff’s] core business activities,” PCRP alleges no interference with its election observation, voter education, or other activities other than spending to criticize electronic tabulation and demand a hand count. *AHM*, 602 U.S. at 395.

Rogers’s expenditure allegations fare no better. He alleges devoting “personal and business financial resources” and “time in prior elections” to questioning the reliability of electronic tabulation. Compl. ¶ 14. But a plaintiff cannot “manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending.” *Clapper*, 568 U.S. at 401–02. His spending advances the same generalized objections and supplies no independent injury.

**C. Plaintiffs’ Injury is Not Fairly Traceable to or Redressable by Defendants.**

Even if Plaintiffs alleged a non-speculative, particularized injury (they do not), they must also connect that injury and the requested relief to the duties of the officials they sued. They have not done so.

Begin with traceability. “For standing analysis, traceability means that a plaintiff must connect the defendants’ conduct to claimed constitutional violations.” *Bay Area Unitarian Universalist Church v. Ogg*, 185 F.4th 523, 532 (5th Cir. 2026).

Read generously, the Complaint’s gravamen is that voting machines that use QR codes and barcodes are particularly vulnerable to manipulation. Compl. ¶ 7 (noting the action concerns “electronic voting systems that encode voter selections in barcodes or QR codes”); *id.* ¶¶ 9, 29, 31. However, Plaintiffs allege no connection between Defendants and the use of machines that employ barcodes or QR codes. Nor could they. As established above, *see supra* Background I, publicly

available information indicates that Potter County does not use voting systems that employ barcodes or QR codes.

Plaintiffs' complaints about current state law procedures to canvass votes are also not traceable to the Potter County Election Administrator—or any election administrator. Plaintiffs' challenge includes the procedures by which officials "complete the official canvass." Compl. ¶ 7; *see also* Tex. Elec. Code § 67.004(b). But the Texas officials Plaintiffs name as a Defendant Class—county elections administrators, Compl. ¶ 41—do not conduct the formal canvass. Texas law assigns the local canvass to each county's commissioners court. Tex. Elec. Code § 67.002(a)(1). The Governor conducts the subsequent statewide canvass for the U.S. Senate race using tabulations prepared by the Secretary of State. *Id.* §§ 67.010, 67.012(a). Plaintiffs have sued neither Potter County's Commissioners Court nor that of any other county, nor have they sued the Secretary of State or the Governor. To the extent Plaintiffs challenge those officials' performance of their canvassing duties, they have not connected that conduct to the proposed defendant class. *See La Union Pueblo Entero v. Abbott*, 187 F.4th 690, 698 (5th Cir. 2026) (finding no traceability where Texas law charged local prosecutors—not the local election officials sued—with enforcing the challenged provisions).

Plaintiffs' claims are also not redressable by the Defendants and proposed class. Plaintiffs' choice of defendants also limits the statewide relief they seek. *See Spokeo, Inc.*, 578 U.S. at 338 (injury must be "likely to be redressed by a favorable judicial decision"). As redress for their injuries, Plaintiffs insist on sprawling, statewide relief: a manual hand count of all "ballots in all precincts in Texas," and an order "[c]onfirm[ing] the election results for all federal elections" statewide based on that count. Compl. ¶¶ D, F. This Court, however, cannot provide such relief because Plaintiffs' proposed Defendant Class includes only county elections administrators, *id.*

¶ 41, an office that does not exist in every Texas county. Plaintiffs ignore that many counties continue to have a county clerk or a county tax-assessor collector that carries out elections duties, not an elections administrator. *See* Tex. Elec. Code §§ 31.031(a), 31.043(3), 31.071(a); *Elections Duties*, Tex. Sec'y of State, https://perma.cc/B97V-XMJT (listing county officials charged with elections duties). So while Plaintiffs insist on statewide relief, even if the Court were to grant Plaintiffs' request for a Defendant Class, the Court would still not have every county before it. *Cf. Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025) (noting "courts generally may administer complete relief *between the parties*" (internal quotation marks and citation omitted)).

Even if the Court were to order the requested relief against the counties Plaintiffs include in the proposed Defendant Class, Plaintiffs would still be missing another key piece of the redressability puzzle. As Plaintiffs repeatedly make clear, their injury is tied not just to the canvass, but also to the certification of statewide federal election results in Texas. *See* Compl. ¶ 7 (describing the conduct at issue as whether Texas officials may complete the "certification process for statewide federal elections" without a hand count); *id.* ¶ 61 (requesting an injunction prohibiting the certification of the upcoming statewide federal election in Texas). Final certification of election results for statewide federal office lies with the Governor, Tex. Elec. Code § 67.013. Indeed, Plaintiffs' request that this Court "confirm the election results for all federal elections held on November 3, 2026 in Texas," Compl. ¶ F, directly implicates the Governor's certification authorities. But once again, Plaintiffs have failed to name this critical party as a Defendant in this lawsuit. Plaintiffs' failure to sue the correct Defendants, therefore, preclude a favorable judicial decision that can redress their harms.

## II. Plaintiffs' Relief is Barred Under the *Purcell* Doctrine.

Plaintiffs' lawsuit is also barred by *Purcell v. Gonzalez*, 549 U.S. 1 (2006), because it seeks to change the rules of an election already underway. "[T]he so-called *Purcell* principle" states "that a federal court should avoid altering state election rules close to an election," *Tex. League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 142 (5th Cir. 2020), particularly when such changes "threaten voter confusion and chaos so near an election," *Robinson v. Ardoin*, 86 F.4th 574, 599 (5th Cir. 2023). While "the Supreme Court has never specified precisely when an injunction's proximity to an election violates the *Purcell* principle," *McClure v. Jefferson Cnty. Comm'n*, 2025 WL 2977740, at *1 (11th Cir. Oct. 16, 2025) (citation modified), if the principle means *anything*, it surely covers an injunction requested for an election where voting has already begun and Election Day is less than a week away. Several courts—including the Supreme Court—have reasoned as much.[9]

To overcome *Purcell*, Plaintiffs must satisfy four requirements: '"(i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship.'" *La Union del Pueblo Entero v. Abbott*, 119 F.4th 404, 409 (5th Cir. 2024) (citing

---

[9] *See, e.g.*, *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 80 (2026) (noting "democratic consequences" of court-ordered changes close to an election "can be even more dire if courts intervene only after votes have been counted"); *Griffin v. N.C. State Bd. of Elections*, 781 F. Supp. 3d 411, 453 (E.D.N.C. 2025) ("If *Purcell* counsels against 'judicial tinkering' when 'an election is close at hand,' *Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring), it surely forbids retroactive tinkering"); *Wood v. Raffensperger*, 501 F. Supp. 3d 1310, 1324–25 (N.D. Ga. 2020) ("Underscoring the exceptional nature of his requested relief, Wood's claims go much further; rather than changing the rules on the eve of an election, he wants the rules for the already concluded election declared unconstitutional"), *aff'd*, 981 F.3d 1307 (11th Cir. 2020).

*Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring))). Plaintiffs don't come even close to this showing.

On the merits, Plaintiffs purport to seek relief on a single claim: that the First and Fourteenth Amendments entitles Plaintiffs to vote tabulation of their choosing, contrary to State law. For the reasons discussed *infra*, Plaintiffs cannot satisfy this burden. Failing the first condition alone is enough to deny relief. *La Union del Pueblo Entero*, 119 F.4th at 409 ("Plaintiffs here fail at the very first step—the merits of their constitutional challenge . . . is far from 'entirely clearcut.'" (citing *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring))).

Nor can Plaintiffs satisfy the second and third conditions. As to undue delay, at no point does the Complaint allege that the tabulation equipment it vaguely claims may be defective has been recently introduced in Texas. Instead, Plaintiffs point to baseless, but publicly available allegations from months ago. *E.g.*, Compl. ¶ 31 (citing publicly available documents from July 2026). And of course, Plaintiffs have been extremely familiar with election practices in Potter County for years. *See* Kaley Green, *Potter County to keep voting centers, machines*, Myhighplains.com (Nov. 14, 2023), https://perma.cc/QA6V-R6JJ. Despite that, Plaintiffs waited until *one week* before the general election, after millions of Texans had cast ballots, before "bringing the complaint to court." *See La Union del Pueblo Entero*, 119 F.4th at 409. The timing for the relief sought is in direct conflict with *Purcell*, where the Supreme Court enjoined an election law change twenty-nine days before Election Day, 549 U.S. at 4–5, and election administration cases before the Fifth Circuit. *See, e.g.*, *Veasey v. Perry*, 769 F.3d 890, 891–92 (5th Cir. 2014) (finding "the extremely fast-approaching election date," requires "maintaining the status quo on the eve of an election."); *Tex. All. for Retired Ams.*, 978 F.3d at 565 (same). Plaintiffs' undue and extreme delay, especially in the context of an election, undercuts any claim of irreparable harm.

*See, e.g. Hotze v. Hollins*, No. 4:20-CV-03709, 2020 WL 6437668, at *3 (S.D. Tex. Nov. 2, 2020), *aff'd in part, vacated in part sub nom. Hotze v. Hudspeth*, 16 F.4th 1121 (5th Cir. 2021) (denying emergency relief where plaintiffs waited until eve of election and could have moved sooner); Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) ("A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction."). Nothing prevented Plaintiffs from suing sooner.

Plaintiffs also cannot show that their requested remedy is feasible without "significant cost, confusion, or hardship" on voters, candidates, and election administrators. *La Union del Pueblo Entero*, 119 F.4th at 409 (quoting *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring)). "Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others." *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). That is exactly the risk here. Plaintiffs' requested relief would leave election officials no time to design procedures for hand counting every ballot in a statewide Senate race. Officials would have to recruit and train temporary staff almost overnight. That would invite chaos and confusion that would undermine voter confidence in the election and make timely certification unlikely. *Merrill*, 142 S. Ct. at 881.

Proposed Intervenors would bear these costs too. They would need to expend considerable time and resources on outreach to encourage their members and other county residents to agree to work with the county to carry out the hand count and to carry out trainings for these new temporary-workers. App. 7–8, 18–19, 23–24, 28. These organizations reasonably fear that it will be nearly impossible for such a hand count to be carried out by the statutory deadlines set for certification. *Id.* at 7, 12, 17, 22, 28. It is last-minute tinkering like this that is precisely what the

Supreme Court has cautioned lower courts against taking, for the "chaos" that could unfold. *Merrill*, 142 S. Ct. at 880–81.

Plaintiffs' attempt to change the fundamental rules for an election that has been ongoing for two weeks will easily result in "voter confusion concerning both issues and candidates" and "in diminished voter participation." *Seamon v. Upham*, 536 F. Supp. 1030, 1034 (E.D. Tex. 1982). The Supreme Court's "precedents recognize a basic tenet of election law: When an election is close at hand, the rules of the road should be clear and settled. That is . . . because running a statewide election is a complicated endeavor." *Democratic Nat'l Comm. v. Wis. State Legis.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring). With the November 2026 election well underway and millions of votes already cast, "candidates and voters alike are now entitled to the stability and sense of repose that engender trust and confidence in our elections." *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 229 (4th Cir. 2024).

**III. Plaintiffs' Suit is Barred by Laches.**

For similar reasons, Plaintiffs' suit is also barred by laches. "Laches is an affirmative defense barring suit when a plaintiff's inexcusable delay in bringing a cause of action has prejudiced the defendant." *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 899–90 (5th Cir. 2016). "To prevail, the defendant must demonstrate: (1) a delay asserting a right or claim; (2) that the delay was inexcusable; and (3) that undue prejudice resulted from the delay." *Id.* (cleaned up).

Plaintiffs waited until the eve of Texas's election to challenge State laws for counting ballots. "The period for laches begins when the plaintiff knew or should have known of the infringement." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1988); *see also White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990) (stating that an inexcusable delay occurs when

a party "discovers or with reasonable diligence could have discovered the facts giving rise to his cause of action"). Plaintiffs have been intimately involved in Potter County elections for years, with knowledge of Texas's methods for counting ballots the entire time.[10] Even for this cycle, Plaintiffs could have brought this suit months or even years ago, not just a week before Election Day after votes have already been cast. The Fifth Circuit and other Circuits have uniformly approved of laches defenses in election cases filed far earlier than this one in relation to the election date. *See, e.g.*, *Armco, Inc. v. Armco Burglar Alarm Co. Inc.*, 693 F.2d 1155, 1161–62 (5th Cir. 1982); *Simkins v. Gressette*, 631 F.2d 287, 289 (4th Cir.1980) (suit filed eight months before the general election); *Md. Citizens for a Representative Gen. Assembly v. Governor of Md.*, 429 F.2d 606, 609 (4th Cir. 1970) (filed seven months before the general election). Plaintiffs have—or should have—known Texas's election certification procedures for years. There is simply no reason why Plaintiffs could not have brought this lawsuit any sooner.

Plaintiffs' belated lawsuit is also "unduly disruptive" to Texas elections, causing Proposed Intervenors' undue prejudice. *See Lopez v. Hale Cnty.*, 797 F. Supp. 547, 550 (N.D. Tex. 1992) *aff'd,* 506 U.S. 1042 (1993). Their requested relief creates "risk of confusion," and imposes a new "burden to the county" with no notice or opportunity to prepare so election officials can comply with State law. *Sanders v. Dooly Cnty., Ga.*, 245 F.3d 1289, 1291 (11th Cir. 2001). Changing Texas's certification methods during the ongoing statewide elections will also create "instability" and place "financial and logistical burden[s] on the" local election officials. *Fourts v. Harris*, 88 F. Supp. 2d 1351, 1354 (S.D. Fla. 1999), *aff'd sub nom. Chandler v. Harris*, 529 U.S. 1084 (2000). These dangers all support this Court applying the doctrine of latches here.

---

[10] *See, e.g.*, Kaley Green, *Potter County to keep voting centers, machines*, Myhighplains.com (Nov. 14, 2023), https://perma.cc/QA6V-R6JJ.

## IV. The Complaint Fails to State a Claim Under Rule 12(b)(6).

Plaintiffs' lone claim is a constitutional right-to-vote claim under the First and Fourteenth Amendments. Compl. ¶¶ 51–59. This claim is evaluated under the *Anderson-Burdick* sliding-scale framework, in which "courts apply a balancing test derived from two Supreme Court decisions." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013) (citing *Anderson v. Celebrezze,* 460 U.S. 780 (1983), and *Burdick v. Takushi,* 504 U.S. 428 (1992)). Courts applying the *Anderson-Burdick* framework compare "the character and magnitude of the asserted injury" to the right to vote with "the precise interests put forward by [defendants] as justifications for the burden imposed by its rule." *Id*. at 387–88 (quoting *Anderson*, 460 U.S. at 789). "[A] rational basis standard applies to state regulations that do not burden the fundamental right to vote" at all. *N.E. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 592 (6th Cir. 2012).

So here. Simply put, Plaintiffs do not allege a burden on anyone's right to vote. They do not claim that any voter—let alone Plaintiff Rogers or PCRP voters—have been or will be denied the right to cast a ballot, in the November 2026 Election or otherwise. Plaintiffs do not allege that any county has failed to adequately count an eligible voter's ballot or will do so in the upcoming election. They do not point to a single vote from an ineligible voter in any county in Texas that was improperly counted due to electronic voting machines, in this election or otherwise. They do not allege that *anyone's* right to vote is harmed, let alone their own. The only thing resembling an *Anderson-Burdick* allegation is the conclusory claim that Texas' longstanding method of ballot counting somehow "creates an unjustified and avoidable risk of undetected tabulation error, or wrongful manipulation by hacking . . . by unknown or hostile foreign malfeasance actors." Compl. ¶ 54. It is hard to conceive of a vaguer or more speculative allegation.

On the other side of the *Anderson-Burdick* ledger, Defendants have significant interests in enforcing longstanding Texas election law, especially with Election Day mere days away. There is a significant interest in State law "appl[ying] a uniform rule to every Texas county" as has been done for years, *Tex. League of United Latin Am. Citizens*, 978 F.3d at 149, especially when any sudden changes so close to the upcoming election could risk inconsistency and chaos. This is particularly true given that, as noted *supra*, Plaintiffs have not sued the correct Defendants to obtain statewide relief—meaning that certain counties would tabulate ballots one way and others would tabulate them another way, which is both chaotic and likely unlawful. *See Bush v. Gore*, 531 U.S. 98, 106 (2000) (finding unlawful when "the standards for accepting or rejecting contested ballots might vary . . . from county to county"). Finally, Defendants have an "interest[] in election security," *La Union del Pueblo Entero v. Abbott*, 167 F.4th 743, 762 (5th Cir. 2026); uniform and consistent enforcement of longstanding state law governing ballot counting serves that interest far better than a rash, judicially ordered remedy of Plaintiffs' choosing.

Given that Plaintiffs' complaint fails to plausibly plead a right-to-vote claim, their complaint should be dismissed under Rule 12(b)(6).

## V. Plaintiffs' Requested Relief Would Violate State Law.

### A. Plaintiffs Request a Mandatory Injunction That Would Upend Countless Provisions of Texas Law.

As noted *supra*, the Texas Election Code provides an extensive, legislatively crafted process for the tabulation of ballots. *See supra* Background I (citing Tex. Elec. Code. §§ 127.001–127.351). Plaintiffs ask this Court to invalidate this longstanding, complex series of laws by judicial fiat, through an extreme mandatory injunction. But this is not a court's role. *See generally Universal Amusement Co., Inc. v. Vance*, 587 F.2d 159, 172 (5th Cir. 1978) ("[W]e cannot judicially rewrite the Texas statutes and rules"), *aff'd*, 445 U.S. 308 (1980); *see also Rush v. Nat'l*

*Bd. of Med. Exam'rs*, 268 F. Supp. 2d 673, 678 (N.D. Tex. 2003) ("Mandatory preliminary relief which goes well beyond simply maintaining the status quo pendente lite is particularly disfavored").

Plaintiffs only potential justification for demanding that this Court rewrite the Texas Election Code is that federal law conflicts with and thus must invalidate the state statutes in question, pursuant to the Supremacy Clause. This argument fails for two reasons. First, Plaintiffs can point to no federal statute or constitutional provision that conflicts with Texas' law. And second, the lone federal law claim that Plaintiffs bring against these various state statutes—the constitutional right to vote under the First and Fourteenth Amendments—is meritless. See Argument IV.

### B. Plaintiffs' Requested Relief Would Gravely Imperil Timely Certification as Required Under State Law

Finally, as noted in Background II, there is a clear and statutorily required timeline for Texas to certify the results of the November 3, 2026 election. Under the Texas Election Code, the county Commissioners Court must complete its local canvass by November 17, 2026. Tex. Elec. Code § 67.003(b)–(c). After the local canvass is complete, the county clerk—or the individuals performing the duties of a county clerk, such as county elections administrator or county tax assessor-collector, *id.* §§ 31.034(3), 31.071(a)—must certify election returns and deliver them to the Secretary of State within 24 hours—meaning by November 18, 2026. *Id.* § 67.007(a)–(d). The Governor must then conduct a state canvass on a date no later than December 7, 2026. *Id.* § 67.012(a)(2).

Plaintiffs do not challenge *any* of these state laws. And yet, Plaintiffs' demand for "a manual hand count of all . . . ballots in all precincts in Texas before final certification of the election for statewide federal office," Compl. ¶ D, gravely imperils the ability of Texas' county officials,

statewide officers, and the Governor to comply with these provisions in the Election Code. Plaintiffs do not provide *any* explanation for how requiring counties—with essentially no warning—to complete a time-consuming and complex statewide hand count across 254 Texas counties will allow those counties to comply with these statutory deadlines.

Plaintiffs requested relief thus almost certainly violates these provisions of the Texas Election Code, rendering that relief unavailable and impracticable.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully ask this Court to dismiss Plaintiffs' Complaint.

Dated: October 31, 2026

Respectfully submitted,

/s/ *Edgar Saldivar*
Edgar Saldivar
Texas Bar No. 24038188
Ashley Harris*
Texas Bar No. 24123238
Thomas Buser-Clancy**
Texas Bar No. 24078344
Adriana Pinon
Texas Bar No. 24089768
Carolina Rivera Nelson*
Texas Bar No. 24132741
ACLU FOUNDATION OF
TEXAS, Inc.
1018 Preston Street
Houston, TX 77002
Telephone: (713) 942-8146
esaldivar@aclutx.org
aharris@aclutx.org
tbuser-clancy@aclutx.org
apinon@aclutx.org
criveranelson@aclutx.org

Jonathan Topaz*
Dayton Campbell-Harris*†
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 284-7334
jtopaz@aclu.org
dcampbell-harris@aclu.org
slakin@aclu.org

Adriel I. Cepeda Derieux*
Lucas Rodriguez*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
Telephone: (202) 457-0800
acepedaderieux@aclu.org
lrodriguez@aclu.org

Kathryn “Kassi” Yukevich
Texas Bar No. 24133390
Heather V. Davis
Texas Bar No. 24092324
Amy Carter
Texas Bar No. 24004580
CARTER LAW GROUP, PC
351 W. Jefferson Blvd.
Suite 503, LB 11
Dallas, TX 75208
Telephone: (214) 390-4173
kyukevich@clgtrial.com
hdavis@clgtrial.com
amy@clgtrial.com

Robert Weiner*
M. David Rollins-Boyd*
Grace Thomas*
Samantha Heyward*
LAWYERS’ COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
rweiner@lawywerscommittee.org
drollins-boyd@lawywerscommittee.org
gthomas@lawywerscommittee.org
sheyward@lawyerscommittee.org

* motion for admission *pro hac vice*
forthcoming
**admission pending
† practice limited to federal court

*Counsel for Proposed Intervenor-Defendants*

**CERTIFICATE OF SERVICE**

I certify that on October 31, 2026, the foregoing document was filed on the Court's CM/ECF system which sent notification of such filing to all counsel of record.

/s/ *Edgar Saldivar*
Edgar Saldivar
Texas Bar No. 24038188
ACLU FOUNDATION OF
TEXAS, Inc.
1018 Preston Street
Houston, TX 77002
Telephone: (713) 942-8146
esaldivar@aclutx.org

*Counsel for Proposed Intervenor-Defendants*