**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| POTTER COUNTY REPUBLICAN PARTY, DANIEL ROGERS, individually, and on behalf of all others similarly effected Plaintiffs,<br><br>v.<br><br>CHRISTY BENGE, in her official capacity as the POTTER COUNTY ELECTIONS ADMINISTRATOR and as proposed representative of a defendant class of similarly situated Texas county election officials, Defendants. | **Civil Action No. 2:26-cv-00215-Z** |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE RESPONSE IN EXCESS OF PAGE LIMIT AND BRIEF IN SUPPORT**

To the Honorable Judge of Said Court:

Plaintiffs Potter County Republican Party and Daniel Rogers, individually and on behalf of all others similarly affected (together, "Plaintiffs"), move for leave to file their Response and Brief in Opposition to DSCC and DCCC's Motion to Intervene (the "Response"), attached as Exhibit A, in excess of the ten-page limit set in the Court's Order of October 30, 2026 (ECF No. 20). Plaintiffs file this motion and the Response within the deadline the Order sets and ask for no extension of it.

## I. BACKGROUND

1. Plaintiffs filed this action on October 27, 2026. ECF No. 1. Two days later, on October 29, 2026, the Democratic Senatorial Campaign Committee ("DSCC") and the Democratic Congressional Campaign Committee ("DCCC") (together, the "Committees") moved to intervene as defendants, as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, by permission under Rule 24(b). ECF No. 4 at 1. The Committees filed the motion as opposed by Plaintiffs. ECF No. 4 at 2.

2. The Committees' submission is sixty-two pages across five documents: a three-page motion signed by six attorneys from two firms (ECF No. 4); a proposed order (ECF No. 4-1); a seventeen-page brief in support (ECF No. 5); a fifteen-page proposed answer (ECF No. 5-1); and a twenty-six-page appendix reproducing seven unpublished decisions (ECF No. 6). The brief's table of authorities lists twenty-two cases, seven statutes, two federal rules, and two other authorities. ECF No. 5 at 3–5.

3. The brief argues each requirement of intervention as of right under Rule 24(a)(2), ECF No. 5 at 12–15, and, in the alternative, each requirement of permissive intervention under Rule 24(b), *id.* at 15–16. It opens with a page on the merits: that Plaintiffs' claim is "meritless," that their constitutional theory is "invented," that the Complaint "suffers from numerous procedural defects," including in its proposed defendant class, and that Plaintiffs lack standing under four Fifth Circuit decisions. *Id.* at 6. The proposed answer pleads eight affirmative defenses and prays for an award of the Committees' attorneys' fees and costs, ECF No. 5-1 at 13–14, and the Committees "reserve the right to file a Rule 12 motion," ECF No. 5 at 11 n.2.

4. On October 30, 2026, "[g]iven the time-sensitive nature of this case," the Court ordered any response from Plaintiffs to be filed before Wednesday, November 4, 2026 at 5:00 p.m. CST; fixed the length of "Plaintiffs' Memorandum Brief in Opposition to Motion to Intervene" at ten pages; and allowed the Committees a five-page reply by Monday, November 9, 2026 at 5:00 p.m. CST. ECF No. 20 at 1.

5. The Response, attached as Exhibit A, is twenty pages of text, exclusive of the caption, table of contents, table of authorities, signature block, and certificate of service. It includes the table of contents and table of authorities that Local Rule 7.2(d) requires of any brief longer than ten pages.

## II. ARGUMENT AND AUTHORITIES

6. The ten-page limit is the Court's, set by order under its authority to "direct the parties to proceed in any manner that the judge deems just and expeditious." Local Rule 83.1. The Court may enlarge it on the same authority. The Local Rules' default limits are twenty-five pages for a brief and ten for a reply, and permission to exceed those limits "will be granted by the presiding judge only for extraordinary and compelling reasons." Local Rule 7.2(c). The Response is within the twenty-five-page default; Plaintiffs seek leave only from the shorter limit the Order sets. Whether the Court measures this motion by Rule 7.2(c) or by its discretion over its own scheduling order, the reasons below meet the standard.

### A. The Committees' Submission Cannot Be Answered in Ten Pages

7. The Committees seek two forms of relief, each with its own elements, and the Response must defeat both. Intervention as of right requires the Committees to establish all four requirements of Rule 24(a)(2), and failure on any one precludes it. Ex. A, Legal Standard. The Response shows that the Committees fail two. On inadequate representation, the Response explains the two presumptions of adequate representation the Fifth Circuit applies when a movant shares an existing party's ultimate objective or is represented by a governmental party; the showing of specific conduct by the existing party that a movant must make to rebut them; why the Committees, who point to no position taken by Defendant, have made no such showing; and why each authority the Committees cite for inadequacy turned on a divergence that appeared in the record of that case and is absent here. Ex. A, Part I.A. On the interest requirement, the Response addresses separately the three interests the Committees assert, monitoring costs, timely certification, and uniform procedures, and the authorities the Committees rely on for that element. Ex. A, Part I.B.

8. Permissive intervention required its own analysis: the undue-delay-and-prejudice inquiry that Rule 24(b)(3) makes mandatory, on a calendar fixed by the Election Code; whether the Committees may use intervention to pursue relief, an award of their own attorneys' fees, that Defendant does not seek; and the conditions Plaintiffs ask the Court to impose if it permits intervention at all. Ex. A, Part II. Because the Committees' brief also opens with argument on the merits, standing, and class certification, the Response had to explain why none of that bears on Rule 24 and preserve Plaintiffs' answer to those contentions for a motion by a party. Ex. A, Part III.

9. Ten pages would have forced Plaintiffs either to leave one of those questions unanswered or to answer each with conclusions. The Response does neither. It meets the Committees' authorities with pin citations, including to the pages of the Committees' own appendix, and it addresses the proposed answer and the reserved Rule 12 motion as well as the brief, because an order granting intervention would bring the pleading into the case along with the argument.

**B. The Additional Pages Serve the Court's Interest in a Prompt Decision**

10. The Order's premise is speed, and the Response is built for it. Plaintiffs seek no extension; this motion and the Response are filed within the deadline the Order sets, and the Committees' November 9 reply deadline is unaffected. The Response is organized so that the Court can resolve the motion on a single element if it chooses: Part I.A shows that the Committees identify no conduct by Defendant adverse to their interest, and that failure alone defeats intervention of right. Ex. A, Part I.A.

11. A complete response now also avoids piecemeal briefing later. The Response sets out the conditions Plaintiffs would ask the Court to impose if it permits intervention and the limits

on an intervenor's ability to pursue relief in its own right, so that those questions can be decided in the same order that decides the motion rather than litigated after an intervention order issues. Ex. A, Parts II.B–C. Its tables, point headings, and pin citations let the Court go directly to any argument without reading the whole.

### C. The Request Is Proportionate

12. The Response is twenty pages. The Committees' papers are sixty-two, of which the brief's argument alone is eleven, ECF No. 5 at 6–16, and the proposed answer whose defenses and prayer the Response must also address is fifteen more. Twenty pages is within the limit Local Rule 7.2(c) would otherwise allow a response brief and less than a third of what the Committees filed. Granting leave changes nothing in the schedule the Court set.

## III. CONCLUSION AND PRAYER

13. Plaintiffs ask the Court to grant leave to file the Response attached as Exhibit A in excess of the ten-page limit set in the Order of October 30, 2026 (ECF No. 20), to deem the Response filed as of the date of this motion, and to direct the Clerk to file it as a separate docket entry. In the alternative, if the Court denies leave, Plaintiffs ask for one business day from the date of the Court's order to file a response that conforms to the ten-page limit.

Dated: November 4, 2026.

Respectfully submitted,

| */s/ Daniel Bates* | */s/Jared R. Woodfill* |
|---|---|
| Daniel Bates<br>State Bar No. 01899900<br>DECKER JONES, PC<br>801 Cherry Street, Suite 2000, Unit 46<br>Fort Worth, Texas 76102<br>Telephone: (817) 336-2400<br>dbates@deckerjones.com<br>ATTORNEYS FOR PLAINTIFFS | Jared R. Woodfill<br>State Bar No. 00788715<br>WOODFILL LAW FIRM, PC<br>5850 San Felipe, 5th Floor<br>Houston, Texas 77057<br>Telephone: (832) 255-3751<br>Woodfillservice@gmail.com<br>ATTORNEYS FOR PLAINTIFFS |

| | |
|---|---|
| POTTER COUNTY REPUBLICAN PARTY AND DANIEL ROGERS | POTTER COUNTY REPUBLICAN PARTY AND DANIEL ROGERS |

**CERTIFICATE OF SERVICE**

I certify that on November 4, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas using the Court's electronic case filing system, which will serve all counsel of record, including counsel for Defendant and counsel for the proposed intervenors.

*/s/ Jared R. Woodfill*

EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| POTTER COUNTY REPUBLICAN PARTY, DANIEL ROGERS, individually, and on behalf of all others similarly effected Plaintiffs,<br><br>v.<br><br>CHRISTY BENGE, in her official capacity as the POTTER COUNTY ELECTIONS ADMINISTRATOR and as proposed representative of a defendant class of similarly situated Texas county election officials, Defendants. | **Civil Action No. 2:26-cv-00215-Z** |

**PLAINTIFFS' RESPONSE AND BRIEF IN OPPOSITION TO DSCC AND DCCC'S MOTION TO INTERVENE**

To the Honorable Judge of Said Court:

Plaintiffs Potter County Republican Party ("PCRP") and Daniel Rogers, individually, and on behalf of all others similarly affected, oppose the Motion to Intervene (ECF No. 4) and supporting brief (ECF No. 5) filed by the Democratic Senatorial Campaign Committee ("DSCC") and the Democratic Congressional Campaign Committee ("DCCC") (together, the "Committees").

## TABLE OF CONTENTS


**Page**

Introduction ..... 1

Background ..... 2

A. The Complaint Seeks a Pre-Certification Verification Count Inside the Election Code's Existing Calendar ..... 2

B. The Committees Moved Two Days Later, Before Defendant Had Taken Any Position ..... 3

Legal Standard ..... 4

Argument ..... 5

I. THE COMMITTEES ARE NOT ENTITLED TO INTERVENE AS OF RIGHT ..... 5

A. Defendant Adequately Represents the Committees' Interest, and the Committees Identify No Conduct to the Contrary ..... 5

1. The same-ultimate-objective presumption applies ..... 5

2. The Committees show no adversity of interest, collusion, or nonfeasance ..... 7

3. Every case the Committees cite turned on a divergence that appeared in the record ..... 10

B. The Committees Assert No Direct, Substantial, Legally Protectable Interest, and No Impairment ..... 12

II. PERMISSIVE INTERVENTION SHOULD BE DENIED, OR GRANTED ONLY ON CONDITIONS ..... 15

A. Intervention Would Unduly Delay and Prejudice Adjudication of the Original Parties' Rights ..... 15

B. The Committees May Not Use Intervention to Pursue Relief Defendant Does Not Seek ..... 17

C. Any Permissive Intervention Should Be Conditioned ..... 17

III. THE MOTION'S COMMENTARY ON THE MERITS IS NOT BEFORE THE COURT ..... 18

Conclusion and Prayer ..... 19

CERTIFICATE OF COMPLIANCE ..... 20

CERTIFICATE OF SERVICE ..... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sept. 21, 2016) .............. 11, 12

*Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022) .............. 11

*Bost v. Ill. State Bd. of Elections*, 607 U.S. 71 (2026) .............. 1, 14, 17

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) .............. 4, 11

*Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984) .............. 1, 5, 8

*Craig v. Simon*, 493 F. Supp. 3d 773 (D. Minn. 2020) .............. 11

*Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104 (1st Cir. 1999) .............. 9

*Diamond v. Charles*, 476 U.S. 54 (1986) .............. 17

*Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742 (7th Cir. 2020) .............. 12

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) (en banc) .............. 12

*Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024) .............. 19

*Fed. Election Comm'n v. Ted Cruz for Senate*, 596 U.S. 289 (2022) .............. 14

*Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536 (5th Cir. 2022) .............. 5, 9

*Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493 F.3d 570 (5th Cir. 2007) .............. 4, 8, 12

*Hollingsworth v. Perry*, 570 U.S. 693 (2013) .............. 17

*Hopwood v. Texas*, 21 F.3d 603 (5th Cir. 1994) .............. 8, 9, 12

*Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996) (en banc) .............. 16

*Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285 (5th Cir. 1987) .............. 5, 17

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) ...... 4, 5, 6, 7, 9, 10, 12, 13, 18

*Lance v. Coffman*, 549 U.S. 437 (2007) .............. 14

*Louisiana v. Burgum*, 132 F.4th 918 (5th Cir. 2025) ............ 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 16, 17

*Miller v. Vilsack*, No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022) .............. 11

*Missouri v. U.S. Food & Drug Admin.*, No. 2:22-CV-223-Z, 2025 WL 1223581 (N.D. Tex. Apr. 28, 2025) .............. 1, 4, 5, 6, 7, 10, 12, 16

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984) (en banc) .............. 5

*Newby v. Enron Corp.*, 443 F.3d 416 (5th Cir. 2006) .............. 14, 17

*Richardson v. Flores*, 979 F.3d 1102 (5th Cir. 2020) .............. 2, 16

*SEC v. Stanford Int'l Bank, Ltd.*, 429 F. App'x 379 (5th Cir. 2011) ....................17

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ....................7

*Sossamon v. Lone Star State of Tex.*, 560 F.3d 316 (5th Cir. 2009) ....................8

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) ....................4, 5, 8, 9, 11, 12, 13, 14

*Texas v. U.S. Dep't of Homeland Sec.*, No. 24-40571, 2024 WL 4404421 (5th Cir. Oct. 4, 2024) ....................16

*Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433 (2017) ....................17

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ....................7, 8

*Turner v. Cincinnati Ins. Co.*, 9 F.4th 300 (5th Cir. 2021) ....................5

*Veasey v. Perry*, 577 F. App'x 261 (5th Cir. 2014) ....................4, 9, 12

**Statutes**

42 U.S.C. § 1988 ....................18

Tex. Elec. Code §§ 33.001–.003 ....................1, 13

Tex. Elec. Code § 67.003 ....................2

Tex. Elec. Code § 67.007 ....................2

Tex. Elec. Code § 67.012 ....................2

Tex. Elec. Code § 127.201 ....................1, 3, 13

**Rules**

Fed. R. Civ. P. 24 .................... *passim*

Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment ....................18

Fed. R. Civ. P. 65(d)(2) ....................15

## Introduction

1. The motion should be denied. Two national political party committees, just two days into this case, ask to become full parties on the side of a county official who has not answered, whose litigation strategies and positions are not yet known, and whose objective in this suit as required by Texas law, is identical to theirs. The Fifth Circuit resolved that request in *Louisiana v. Burgum*, 132 F.4th 918 (5th Cir. 2025), and this Court applied *Burgum* last year in *Missouri v. U.S. Food & Drug Administration*, No. 2:22-CV-223-Z, 2025 WL 1223581 (N.D. Tex. Apr. 28, 2025): a movant that shares an existing party's ultimate objective must identify specific conduct by that party adverse to the movant's interest, and "the mere possibility that a party may at some future time" diverge in its interest "cannot alone show inadequate representation." *Burgum*, 132 F.4th at 922–23 (emphasis omitted) (quoting *Bush v. Viterna*, 740 F.2d 350, 358 (5th Cir. 1984)). The Committees identify no conduct of defendant at all, and certainly no conduct that could be considered an adequate representation. Their brief does not confront the same-ultimate-objective presumption; its only answer to a shared objective is a footnote citing a Seventh Circuit decision which is inapplicable and nonbinding. Their proposed answer pleads the same defenses any Texas election official would plead. The Committees fail a Rule 24(a)(2) analysis on the fourth element, and no more is needed to deny the Motion.

2. The "interest" the Committees assert fails as well. They say they will "incur enormous expense monitoring hand counts across the State." Br. at 8. The Committees offer no evidence to support this baseless contention. Texas law already entitles political parties, candidates, and their watchers to be present at every manual count, if they choose. Tex. Elec. Code §§ 127.201(d), 33.001–.003. A voluntary decision to spend money watching a count one is already entitled to watch is a preference about the outcome, not an interest the law protects. The Supreme

Court rejected that theory of a personal stake in the very case the Committees cite. *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 77, 82 (2026). *Bost* rests on candidate status. The Committees are not candidates. No candidate has moved to intervene.

3. Permissive intervention would add two parties, six lawyers from two firms, a reserved Rule 12 motion, and a claim for attorney's fees against Plaintiffs to a case governed by the Election Code's calendar. Every question in it must be decided before county returns are certified. The Committees' perspective is one Defendant is required to protect and, if the Committees think she will not, the Committees can file an amicus brief. "[T]he proper procedure is to move to appear as amici curiae, not to move to intervene." *Burgum*, 132 F.4th at 923–24 (quoting *Richardson v. Flores*, 979 F.3d 1102, 1106 (5th Cir. 2020)). If the Court nonetheless permits intervention, it should impose the conditions set out in Part II.C.

## BACKGROUND

### *A. The Complaint Seeks a Pre-Certification Verification Count Inside the Election Code's Existing Calendar.*

4. Plaintiffs filed this action on October 27, 2026. ECF No. 1. The Complaint challenges no provision of the Texas Election Code and seeks no change to how any voter registers, votes, or has a ballot received. Compl. ¶ 8. It asks for prospective relief only directed to one step: before county officials certify returns for federal office, the electronic tabulation produced by voting systems that encode voter selections in barcodes or QR codes must be verified and confirmed against the voter-verifiable, human-readable paper records those systems produce. Compl. ¶¶ 7, 11–12. Plaintiffs plead that the relief "uses records already generated in the election, occurs during the ordinary post-election period, and can be designed to preserve statutory deadlines," Compl. ¶ 38, and request "procedures that can be implemented within existing post-election processes," Compl. ¶ 62.

5. The statutory calendar, as the Committees themselves lay it out, is this: Election Day is November 3, 2026; the county canvass convenes no later than November 17; certified county returns go to the Secretary of State within 24 hours of the county canvass; and the Governor conducts the state canvass between the 18th and 33rd days after the election, November 21 through December 6. Br. at 3 (citing Tex. Elec. Code §§ 67.003(c), 67.007(c)–(d), 67.012(a)(2)). Texas law already requires a partial manual count of paper ballots after every election conducted on electronic voting systems. Tex. Elec. Code § 127.201(a). The early voting ballot board performs that count; it is public; political parties and candidates and the watchers they appoint are "entitled to be present"; and the results are reported to the Secretary of State and posted. *Id.* § 127.201(b-1)–(e); Br. at 3–4. Plaintiffs only seek to apply these existing procedures to all ballots rather than just a one-percent sample to verify and confirm the machine ballot vote count. Compl. ¶¶ 10, 21–22, 55.

**B. The Committees Moved Two Days Later, Before Defendant Had Taken Any Position**

6. The Committees filed their motion on October 29, 2026. ECF Nos. 4–6. Defendant Benge had not answered, moved, or stated a position on any issue in the case, and she has not done so as of this filing. [Confirm as of filing.] Her counsel advised that she is "unopposed" to the Committees' request. Mot. at 2.

7. The Committees seek intervention as of right under Rule 24(a)(2) or, alternatively, permissive intervention under Rule 24(b). Mot. at 1. They describe themselves as the Democratic Party's national senatorial and congressional campaign committees, whose "principal mission is to help Democrats win." Br. at 5, 11. The interests they assert are (1) the cost of "monitoring hand counts across the State for fairness and accuracy," Br. at 8; (2) an interest in the "timely certification" of their candidates and their being "seated promptly with the 120th United States

Congress," Br. at 2, 9; and (3) an interest in "consistent, fair procedures" statewide, Br. at 8. These are by law the same interests of Defendant (and all citizens). Their argument that Defendant does not adequately represent them consists of nothing more than the baseless conclusion that Defendant "lacks Proposed Intervenor-Defendants' direct stake," Br. at 2, and that "[n]one of" their interests in "conserving party resources, electing Democratic candidates, and ensuring that Democratic Member-elects and Senator-elects are seated promptly" are "shared by the Defendant," Br. at 9. The Committees offer no evidence that Defendant will not adequately represent their alleged interest.

8. The proposed answer attached to the motion pleads eight affirmative defenses: lack of Article III standing, failure to state a claim, laches, failure to establish entitlement to injunctive relief, failure to satisfy Rule 23, *Purcell v. Gonzalez*, *Bush v. Gore*, and a reservation of the right to amend and to move to dismiss. Proposed Answer at 13. It prays for dismissal with prejudice and for an award of the Committees' "reasonable attorneys' fees and costs under any applicable statute or equitable doctrine." *Id.* at 14. The Committees also "reserve the right to file a Rule 12 motion." Br. at 6 n.2. The motion is signed by six attorneys from two firms. Mot. at 1–3.

## Legal Standard

9. Federal Rules of Civil Procedure 24 is intended to prevent multiple law suits in common questions of law or fact are involved. *Deus v. Allstate* Ins., 15 F.3d 506, 525 (5th Cir. 1994) and does not permit the creation of a whole new lawsuit by a proposed intervenor. *Deus*, 15 F.3d at 525. The purpose of Rule 24 is to prevent multiple lawsuits -- a purpose which does not exist in this case.

10. A movant is entitled to intervene as of right under Rule 24(a)(2) only if it establishes all four requirements: (1) a timely application; (2) "an interest relating to the property or

transaction which is the subject of the action"; (3) that disposition of the action "may, as a practical matter, impair or impede" its ability to protect that interest; and (4) that its interest is "inadequately represented by the existing parties to the suit." *La Union del Pueblo Entero v. Abbott* ("LUPE"), 29 F.4th 299, 305 (5th Cir. 2022) (quoting *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)). The movant bears the burden on each. *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). "Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 578 (5th Cir. 2007); *Missouri*, 2025 WL 1223581, at *1–2.

11. The inadequate-representation requirement "cannot be treated as so minimal as to write the requirement completely out of the rule." *Texas*, 805 F.3d at 661 (internal quotation marks and citation omitted). The Fifth Circuit therefore recognizes two presumptions of adequate representation that give the requirement "teeth." *Burgum*, 132 F.4th at 922 (quoting *Brumfield*, 749 F.3d at 345); *Veasey v. Perry*, 577 F. App'x 261, 263 (5th Cir. 2014). The first arises when the movant "has the same ultimate objective as a party to the lawsuit"; it is overcome only by "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Burgum*, 132 F.4th at 922 (quoting *Texas*, 805 F.3d at 661, and *LUPE*, 29 F.4th at 308). The second arises when the existing party "is a governmental body or officer charged by law with representing the interests" of the movant and is overcome only by showing that the movant's interest "is in fact different" and "will not be represented." *Id.* When a presumption applies, "the mere possibility that a party may at some future time" diverge "cannot alone show inadequate representation." *Id.* (emphasis omitted) (quoting *Bush*, 740 F.2d at 358); *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022).

12. Permissive intervention under Rule 24(b)(1)(B) is "wholly discretionary with the [district] court," *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) (alteration in original), and "may be denied even when the requirements of Rule 24(b) are satisfied," *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471–72 (5th Cir. 1984) (en banc)). The Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## Argument

### I. THE COMMITTEES ARE NOT ENTITLED TO INTERVENE AS OF RIGHT

### A. Defendant Adequately Represents the Committees' Interest, and the Committees Identify No Conduct to the Contrary

13. Plaintiffs do not dispute that the motion is timely. The Court can begin and end with the fourth requirement, as it did in *Missouri*. 2025 WL 1223581, at *2 ("The Court need not address the remaining factors—a movant must satisfy all four factors to prevail.").

#### ***1. The same-ultimate-objective presumption applies***

14. The Committees and Defendant have the same ultimate objective. The inquiry "evaluates the parties' intended outcome of the litigation and the relief they seek," at the level of generality of upholding or defeating the challenged action. *Missouri*, 2025 WL 1223581, at *3 (citing *Burgum*, 132 F.4th at 922). The Committees must show that their interest will not be adequately represented by Defendant. They failed to do so. *Trobovich v. United Mine Workers,* 404 U.S.528, 538 n.10 (1972); *Burgum*, 132 F.4th at 918, 922 (5th Cir. 2025).

The Committees' proposed answer prays "[t]hat the Court dismiss Plaintiffs' Complaint with prejudice" and that Plaintiffs "take nothing." Proposed Answer at 14. Defendant, sued only in her

official capacity and only for prospective relief against her certification duties, Compl. ¶ 15, can have no other objective than the Committees. The Committees say as much: their interest is in certification "according to settled rules," Br. at 7, which is what Defendant is required to do by law absent an injunction. In *Burgum*, API and BOEM shared the objective of upholding the Rule, 132 F.4th at 922; in *Missouri*, GenBioPro and FDA shared the objective of upholding the challenged approvals, 2025 WL 1223581, at *3. The alignment here is closer still: Defendant is "unopposed" to the Committees joining her side. Mot. at 2.

15. The Court need not decide whether the second, governmental presumption also applies. *Burgum* did not reach it: having held that API showed only "the mere possibility that [BOEM] may at some future time" diverge, the Fifth Circuit "pretermit[ted]" the second presumption and held API not entitled to intervene as of right. 132 F.4th at 923. The Committees do not dispute that the governmental presumption applies; they argue only that it is overcome. Br. at 9. The rule is the same under either presumption: if one applies, "the mere possibility that a party may at some future time" diverge "cannot alone show inadequate representation." *Missouri*, 2025 WL 1223581, at *2 (App. 20) (emphasis omitted) (quoting *Burgum*, 132 F.4th at 922). *LUPE* applied that framework to national party committees seeking to defend alongside Texas election officials, "[a]ssuming either presumption applies," and found the presumptions rebutted on a record of conduct discussed below. 29 F.4th at 308. The question is whether these Committees have made any comparable showing. They have not tried.

***2. The Committees show no adversity of interest, collusion, or nonfeasance***

16. Apart from a footnote citing a Seventh Circuit decision, Br. at 10 n.3, which is addressed below, the brief does not engage the same-ultimate-objective presumption. Its answer to the governmental presumption is one proposition: Defendant "lacks Proposed Intervenor-

Defendants' direct stake," Br. at 2, because she does not share their interests in "conserving party resources, electing Democratic candidates, and ensuring that Democratic Member-elects and Senator-elects are seated promptly," Br. at 9. That is the argument the Fifth Circuit rejected in *Burgum*. API argued that BOEM "represents the public interests of a federal government agency, but not the specific, private interests of API and its members." 132 F.4th at 922. The court held that the cases API relied on, *Trbovich* and *Sierra Club v. Espy*, involved movants who "pointed to specific conduct showing that the party at issue inadequately represented its interests": in *Trbovich*, "distinct evidence it wished to introduce, remedies it sought, and legal arguments it intended to make"; in *Espy*, a letter from the agency stating that it would apply a preliminary injunction "not more broadly than the district court required." *Id.* at 922–23 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 536–37 (1972), and *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994)). API does not discuss any action taken by BOEM that is adverse to its own interest." As API admits, it "presently cannot know . . . what litigation position or defenses BOEM will pursue." *Id.* at 923. Intervention as of right was denied. This Court applied the same rule to GenBioPro: "It may be true that the federal Defendants have broader interests to defend than GenBioPro does. But if they have the same ultimate objective, which they do, then GenBioPro must provide more." *Missouri*, 2025 WL 1223581, at *4 (App. 21–22).

17. The Committees must establish that Defendant will not make all of the Committees' arguments because Defendant's interest in the suit is different from the Committees' interest. *Western Watersheds Project v. Haaland*, 22 F.4th 828, 840 (9th Cir. 2022); and, *Wolfsen Land & Cattle Co. v. Pacific Coast Fed'n of Fishermen's Ass'ns,* 695 F.3d 1310, 1316 (Fed Cir. 2012). The Committees' motion and brief failed to provide the necessary divergent interest,. Defendant has filed nothing. She has conceded nothing, she has declined to defend nothing, and taken no

position the Committees could call adverse or divergent. They stand where API stood: they cannot know what defenses Defendant will pursue, and the Committees do not claim to know what actions and defenses Defendant will take. Government actors "are accorded a presumption of good faith because they are public servants, not self-interested private parties." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009). Adversity must be shown on a "matter currently before" the Court, *Burgum*, 132 F.4th at 923 (quoting *Haspel & Davis*, 493 F.3d at 579), and there is none. What remains is only speculation that Defendant might someday defend less vigorously than the two national committees would prefer. That is "the mere possibility that a party may at some future time" diverge, which "cannot alone show inadequate representation." *Burgum*, 132 F.4th at 922 (emphasis omitted) (quoting *Bush*, 740 F.2d at 358).

18. The Committees' own proposed answer confirms the point. *Trbovich* adversity is shown by distinct evidence, distinct remedies, or distinct legal arguments. *Burgum*, 132 F.4th at 922–23. The proposed answer pleads none. Its eight affirmative defenses (standing, failure to state a claim, laches, no entitlement to injunctive relief, Rule 23, *Purcell*, *Bush v. Gore*, and a reservation) are the defenses any Texas election official sued on this Complaint would undoubtedly plead, and nothing in the Committees' proposed answer identifies a defense Defendant cannot or will not raise or an argument she would decline to make. Proposed Answer at 13. The Committees' own authority states the test they cannot meet. *Texas* explains that the student groups in *Hopwood* failed because they "did not connect the allegedly divergent interests with any concrete effects on the litigation," and it quotes *Hopwood*'s holding: "The proposed intervenors have not demonstrated that the State will not strongly defend its affirmative action program. Nor have the proposed intervenors shown that they have a separate defense of the affirmative action plan that the State has failed to assert." 805 F.3d at 663 (quoting *Hopwood v. Texas*, 21 F.3d 603, 606 (5th

Cir. 1994)). *Texas* also cites with approval the First Circuit's statement that "[t]he general notion that the [government] represents 'broader' interests at some abstract level is not enough." *Id.* (second alteration in original) (quoting *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999)). The Committees have made neither showing. In *Burgum*, API's proposed answer "was materially identical to BOEM's, stating no new claims or defenses," 132 F.4th at 921, and the Fifth Circuit affirmed the denial of intervention. The Committees' pleading will differ from the one Defendant files, if at all, only in the names on the signature block.

19. Nor is partisanship adversity. The Committees say their "principal mission is to help Democrats win." Br. at 11. A wish that one side's candidates prevail is not a legal standard for seeking intervention; it is not a divergence "germane to the case." *Guenther*, 50 F.4th at 543 (quoting *Texas*, 805 F.3d at 662). The questions this case presents have the same answers whichever party's candidate is ahead: whether the Fourteenth Amendment requires verification of machine totals against paper records before certification, whether Plaintiffs have standing, and whether a defendant class may be certified. That is why the Fifth Circuit affirmed the denial of intervention to True the Vote, which had "supported and sponsored" the voter-identification law it sought to defend: "the ultimate objective is the same and True the Vote has not shown a sufficient disalignment of interest to warrant intervention." *Veasey*, 577 F. App'x at 263. *See also Hopwood*, 21 F.3d at 605–06 (State adequately represented students who sought to defend the admissions policy from which they benefited).

20. *LUPE* does not hold otherwise. The Committees may point to its observation that party committees' interests are "incidentally partisan" and that "Neither the State nor its officials can vindicate such an interest while acting in good faith." 29 F.4th at 308–09. That discussion was,

in the court's words, "Specific to the governmental-representative presumption," *id.*; it was not the basis on which *LUPE* found adversity under the same-ultimate-objective presumption, which turned on what the State and the local officials had actually said and done. *See* Part I.A.3, *infra*. And the argument that a public defendant's broader interests leave a private movant's narrower ones unrepresented has been rejected and is the argument *Burgum*, decided three years after *LUPE* and quoting it for the governing rule, rejected absent "specific conduct." 132 F.4th at 922–23. This Court applied *Burgum* to the same argument in *Missouri*. 2025 WL 1223581, at *4 (App. 21–22).

21. Defendant's non-opposition does not help the Committees. A party who welcomes allies on her side of the "v." has shown that her interests align with theirs, not that she will fail to represent them.

### ***3. Every case the Committees cite turned on a divergence that appeared in the record***

22. The Committees' authorities confirm the required divergence rule. In each, the movant pointed to something the existing party had actually done or said which created divergence in the interest to be protected.

23. *LUPE*. The Committees quote *LUPE*'s observation that "there are reasons to believe the Committees' interests are less broad than those of the governmental defendants, which may lead to divergent results." Br. at 10 (quoting 29 F.4th at 308). The reasons the Fifth Circuit gave were concrete, and the divergence it identified was "first and foremost with how to carry out the ultimate objective," 29 F.4th at 308: the State and its officials "vigorously contend that these lawsuits should be dismissed on sovereign-immunity and standing grounds" and "would prefer to not resolve this case on the merits at all"; "at least some of the local officials have already said that they will not substantively defend the constitutionality of the law"; and one local official was "a plaintiff in another case challenging the constitutionality of provisions in SB 1." 29 F.4th at 308–

09. Each of those facts was in the record. No such facts or evidence exists here to support the Committees' arguments. *Burgum* later read that standard to require "specific conduct." 132 F.4th at 922–23. No specific conduct exists in this record which would support the required divergence of interest necessary for the Committees to intervene.

24. *Texas v. United States.* The Jane Does overcame the presumption because the government had taken a litigation position *adverse* to their interests. 805 F.3d at 662–64. No adversity of interest exists in this record.

25. *Brumfield and Miller.* In *Brumfield*, the State conceded a legal issue the intervenors wished to contest. 749 F.3d at 346; *see Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *3 n.5 (5th Cir. Mar. 22, 2022) (App. 17–18) (so describing *Brumfield*). In *Miller*, the Secretary's position was "not that the USDA is continuing to discriminate," which the Federation disputed, so the two were "staking out a position significantly different" from each other. *Id.* at *3 & n.5 (App. 17–18).

26. *Berger.* The Committees take their "minimal challenge" language from *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022). Br. at 9. *Berger* involved state legislative leaders whom a North Carolina statute expressly authorized to defend state law on the State's behalf, and the Court held that a presumption of adequate representation does not apply against a duly authorized state agent. 597 U.S. at 195–97. No statute makes the Committees anyone's agent, and *Berger* did not disturb the Fifth Circuit's presumptions as applied to private movants. The Fifth Circuit has continued to apply them since. *Burgum*, 132 F.4th at 922.

27. *Craig and Bellitto.* In *Craig v. Simon*, the intervenor was the candidate himself. Br. at 9 (describing the intervenor as "a candidate for [Congress]"); 493 F. Supp. 3d 773, 781 (D. Minn. 2020). It is a district-court decision from another circuit that did not apply the Fifth Circuit's

presumptions. *Bellitto v. Snipes* was unopposed by every party, was decided under Eleventh Circuit law, and granted intervention to a union that moved only after the defendant's second motion to dismiss revealed that the defendant's "interests and interpretation of the NVRA may not be aligned" with the union's. No. 16-cv-61474, 2016 WL 5118568, at *1–2 (S.D. Fla. Sept. 21, 2016) (App. 3–4). That is the sequence *Burgum* requires: a position taken, then a motion. The Committees skipped the first step. Again, the record in this case differs because there is no evidence or presumption that Defendant will take a position adverse to the Committees, or contrary to Texas law.

28. *Driftless.* The Committees' footnote argues that if sharing a side's "general goal" were enough to defeat intervention, "intervention as of right will almost always fail." Br. at 10 n.3 (quoting *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 748 (7th Cir. 2020)). *Driftless* is a Seventh Circuit decision. The Fifth Circuit has answered the concern with the presumption framework itself: intervention as of right does not fail whenever a movant shares a side; it fails when, as in *Burgum*, *Missouri*, *Veasey*, and *Hopwood*, the movant shows nothing beyond the shared objective. *LUPE* itself said as much in rejecting the plaintiffs' concern that political groups would intervene in every high-profile case: "Every intervenor must satisfy each of the four requirements of Rule 24(a)(2) - though some can, . . . many cannot." 29 F.4th at 309 n.8 (citing *Texas*, 805 F.3d at 663–64, and *Hopwood*, 21 F.3d at 606).

29. The proper disposition follows from the Committees' own cases. If Defendant concedes an issue, declines to defend, or takes a position adverse to the Committees' interest, they may move again on that record; that is what the union did in *Bellitto* and what GenBioPro did in *Missouri* when an amended complaint created a "unique threat" to its product. 2025 WL 1223581,

at *5–6 (App. 22–23) (quoting GenBioPro's reply). Until then, intervention as of right must be denied. *Haspel & Davis*, 493 F.3d at 578.

### B. The Committees Assert No Direct, Substantial, Legally Protectable Interest, and No Impairment

30. Rule 24(a)(2) requires "a direct, substantial, legally protectable interest in the proceedings." *LUPE*, 29 F.4th at 305 & 310 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc)). Intervention of right "will not be granted for purely 'ideological, economic, or precedential' reasons," *id.* (quoting *Texas*, 805 F.3d at 657), and the movant must have "a stake in the matter that goes beyond a generalized preference that the case come out a certain way," *Texas*, 805 F.3d at 657. The more lenient standard the Committees invoke for public-interest groups, Br. at 7–8 (quoting *LUPE*, 29 F.4th at 305–06), does not dispense with the Fifth Circuit's requirement. *LUPE* applied it to an interest grounded in a statute that "unquestionably regulates the conduct of the Committees' volunteers and poll watchers," 29 F.4th at 306, not to the cost of exercising a right the movant already holds. The Committees assert three interests. None qualifies under Fifth Circuit law.

31. *The cost of watching.* The Committees say that if Plaintiffs succeed they will "incur enormous expense monitoring hand counts across the State for fairness and accuracy." Br. at 8. Nothing in the relief Plaintiffs seek requires the Committees to spend anything. Texas law already provides that political parties and candidates, and the watchers they appoint, are "entitled to be present" at the statutory manual count. Tex. Elec. Code §§ 127.201(d), 33.001–.003; Br. at 4. Whether to exercise that entitlement, and how much to spend doing so, is the Committees' choice. An interest in how one chooses to respond to a court order that binds someone else is the "generalized preference" *Texas* excludes as meeting the necessary requirement under Fifth Circuit law.

32. *LUPE* does not hold otherwise. The interest the Fifth Circuit found there was that SB 1 "unquestionably regulates the conduct of the Committees' volunteers and poll watchers," "changes the legal landscape for what it takes to carry out that duty," and "grants rights to the Committees and their members that could be taken away if the plaintiffs prevail." 29 F.4th at 306–07. The panel expressly declined to decide "whether the Committees' more election-specific interests are enough to establish intervention by right." *Id.* at 306 n.5. Here no statute is challenged, Compl. ¶ 8; no conduct of the Committees or their members is regulated by the relief sought; and no right of theirs is at stake. The Committees' description of *LUPE* as a case about "the deployment of their own resources," Br. at 2, 8, omits the statute that regulated those resources.

33. The Committees' reliance on *Bost* fails for the same reason. They cite it as "recognizing standing of candidate who alleged litigation could affect 'resources allocated to the post-election certification process.'" Br. at 8. The quoted words are the Supreme Court's summary of what the petitioners "alleged," 607 U.S. at 75; the Court said it "need not resolve" whether any such harm had been adequately pleaded, *id.* at 77; and it rested its holding on candidate status: "As a candidate for office, Congressman Bost has standing to challenge the rules that govern the counting of votes in his election." *Id.* at 83. The Court was explicit that it "address today only candidates' standing." *Id.* at 82–83 n.7. On the resource theory the Committees propose in this case, it was equally explicit: "Plaintiffs cannot 'manufacture standing by voluntarily' incurring costs," and a rule keyed to monitoring expenditures would mean that "a candidate who pays poll watchers a penny would have standing, while one who relies on volunteers would not." *Id.* at 82 (quoting *Fed. Election Comm'n v. Ted Cruz for Senate*, 596 U.S. 289, 297 (2022)). Rule 24's interest requirement is not Article III standing, *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir.

2006), but a voluntary expenditure that cannot "manufacture standing" is not an interest "of the type that the law deems worthy of protection," *Texas*, 805 F.3d at 659.

34. *Timely certification and seating.* The Committees' second interest is that their candidates' "certification is likely to be delayed or may be denied altogether" and that Democratic winners be "seated promptly with the 120th United States Congress." Br. at 8–9. Every voter and every candidate in Texas shares the interest in prompt and accurate certification. It is the "general interest" in an accurate tally that *Bost* contrasted with a candidate's "undeniably different" stake, 607 U.S. at 78, and the undifferentiated interest in lawful government that does not support a personal stake, *Lance v. Coffman*, 549 U.S. 437, 439–42 (2007) (per curiam). The candidates hold the differentiated interest *Bost* describes: Mr. Talarico and the Democratic nominees in Texas's 38 congressional districts. Br. at 2. None has moved to intervene, and the Committees do not claim to be their legal representatives. The Committees' premise that certification "is likely to be delayed or may be denied altogether," Br. at 8, is only their baseless assumption, not an allegation in the Complaint. The Complaint seeks procedures "that can be implemented within existing post-election processes," Compl. ¶ 62, inside a statutory window that runs to December 6, Br. at 3. The Committees' baseless assumptions that a count "is not possible" and would produce "chaos," Br. at 8, are only arguments about the merits of the relief, and not interests in the subject of the action.

35. *Uniform procedures.* The Committees' third interest, in "consistent, fair procedures" statewide, Br. at 8, is a general interest shared by the public at large and is in substance a critique of the scope of the proposed defendant class, not a specific and distinguishable interest of the Committees.

36. *Impairment.* Because the Committees have no protectable interest, there is nothing to impair. Any injunction would bind Defendant and the defendant class, not the Committees, Fed.

R. Civ. P. 65(d)(2), and the only practical effect on themselves the Committees identify is the voluntary expenditure addressed above.

## II. PERMISSIVE INTERVENTION SHOULD BE DENIED, OR GRANTED ONLY ON CONDITIONS

### A. Intervention Would Unduly Delay and Prejudice Adjudication of the Original Parties' Rights

37. Rule 24(b)(3) directs the Court to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." The Committees answer that there is "no conceivable prejudice" because they "agree to be bound by any case schedule set by the Court." Br. at 11. That promise is empty here. The only schedule in this case is the one the Election Code sets: Election Day on November 3, county canvasses convening no later than November 17, certified returns to the Secretary of State within 24 hours, and the state canvass between November 21 and December 6. Br. at 3. Every question in this case must be decided before county returns are certified. There is no later date to which anything can be moved.

38. Into that window the Committees propose to add two parties, six lawyers from two firms, a reserved Rule 12 motion, Br. at 6 n.2, and a claim for attorney's fees against Plaintiffs, Proposed Answer at 14. In *Missouri*, this Court granted permissive intervention because GenBioPro's participation would "change nothing in the existing case schedule." 2025 WL 1223581, at *6 (App. 23) (quoting GenBioPro's reply). Here it would double the opposition Plaintiffs must answer, on the same two-week clock, without adding a single defense that Defendant cannot raise.

39. That last point decides the discretionary question. The Committees' proposed answer identifies nothing Defendant cannot plead. If the Committees believe Defendant will leave something unsaid, the Fifth Circuit has prescribed the remedy: where "the movants express a

unique view offered by neither party" that they want "heard," "the proper procedure is to move to appear as amici curiae, not to move to intervene." *Burgum*, 132 F.4th at 923–24 (quoting *Richardson v. Flores*, 979 F.3d 1102, 1106 (5th Cir. 2020)); *see Texas v. U.S. Dep't of Homeland Sec.*, No. 24-40571, 2024 WL 4404421, at *1 (5th Cir. Oct. 4, 2024) (per curiam) (affirming denial of intervention without prejudice and noting that the district court "has the option, in its discretion, of allowing these putative intervenors to participate as amici curiae in any further proceedings"). *Richardson* was itself a Texas election case. Plaintiffs do not oppose leave for the Committees to file an amicus brief on any motion in this case, and the Fifth Circuit reviews a denial of permissive intervention on that basis with "exceedingly deferential" scrutiny. *Burgum*, 132 F.4th at 921 (quoting *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir. 1996) (en banc)). Reversal of a denial of permissive intervention "is so unusual as to be almost unique." *Id.* at 923–24 (quoting *SEC v. Stanford Int'l Bank, Ltd.*, 429 F. App'x 379, 382 (5th Cir. 2011) (quoting *Kneeland*, 806 F.2d at 1289)).

## B. The Committees May Not Use Intervention to Pursue Relief Defendant Does Not Seek

40. The Committees are right that an intervenor need not establish Article III standing to seek the same relief an existing party seeks. Br. at 6 (citing *Newby*, 443 F.3d at 422). But "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439–40 (2017). The Court stated that holding for intervenors of right, the posture before it, but the principle on which it rested, that "[f]or all relief sought, there must be a litigant with standing," *id.*, applies no less to a permissive intervenor. The Committees' proposed answer prays for an award of their own attorney's fees and costs against Plaintiffs. Proposed Answer at 14. Defendant seeks no such relief, and the Committees have alleged no injury of their own that would support

it: the only harms they describe are voluntary monitoring costs and a generalized interest in prompt certification, neither of which is a personal stake under *Bost*, 607 U.S. at 78, 82. The same limitation would govern any attempt by the Committees to appeal a judgment that Defendant chose not to appeal. *Hollingsworth v. Perry*, 570 U.S. 693, 705–07 (2013); *Diamond v. Charles*, 476 U.S. 54, 68 (1986). Plaintiffs raise the point now so that an order permitting intervention is not later treated as a determination that the Committees may pursue relief in their own right.

### C. Any Permissive Intervention Should Be Conditioned

41. Even "[a]n intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment. A permissive intervention, which the Court need not grant at all, is no less subject to conditions. If the Court permits the Committees to intervene, Plaintiffs ask that the order provide that the Committees:

(a) are bound by every deadline the Court sets or the Election Code imposes, and may not seek an extension of any of them;

(b) must file their briefing jointly with Defendant, within the page limits applicable to a single party, and may not file a separate Rule 12 motion;

(c) may not serve or seek discovery beyond that served or sought by Defendant;

(d) may not seek attorney's fees or costs against Plaintiffs under 42 U.S.C. § 1988 or otherwise; and

(e) may not seek relief that Defendant does not seek.

## III. THE MOTION'S COMMENTARY ON THE MERITS IS NOT BEFORE THE COURT

42. The Committees devote the first page of their brief to the merits: that Plaintiffs' claim is "meritless," that their constitutional theory is "invented," that the proposed class is defective, and that Plaintiffs lack standing under a line of Fifth Circuit decisions. Br. at 1. None of that bears on Rule 24. The rule asks whether the movant has an interest in the subject of the action and whether existing parties adequately represent it, not whether the plaintiff will win. *LUPE*, 29 F.4th at 305. Plaintiffs will answer the Committees' contentions *when a party* presents them in a Rule 12 motion or in response to any motion for preliminary injunction. One observation suffices for now. Each of the four standing decisions the Committees cite, Br. at 1, was brought pro se by individual voters alleging that electronic voting machines were insecure or uncertified; none was brought by a political party organization, and none sought the pre-certification verification relief sought here. *See* App. 7–9, 13, 24. In *Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024) (per curiam) (App. 5–12), where several plaintiffs had run for office, the court did not reach candidate standing: the district court found that candidate-specific injuries "appear[] nowhere" in the complaint, and the Fifth Circuit held the argument forfeited for failure to brief it. App. 11.

## CONCLUSION AND PRAYER

43. The Committees share Defendant's objective, identify no conduct of Defendant adverse to their interest, and assert interests that are either voluntary or shared with the public at large. Plaintiffs ask the Court to deny the Committees' Motion to Intervene.

Dated: November 4, 2026.

Respectfully submitted,

| | |
|---|---|
| */s/ Jared R. Woodfill*<br>Jared R. Woodfill<br>State Bar No. 00788715<br>WOODFILL LAW FIRM, PC<br>5850 San Felipe, 5th Floor<br>Houston, Texas 77057<br>Telephone: (832) 255-3751<br>Woodfillservice@gmail.com | */s/ Daniel Bates*<br>Daniel Bates<br>State Bar No. 01899900<br>DECKER JONES, PC<br>801 Cherry Street, Suite 2000, Unit 46<br>Fort Worth, Texas 76102<br>Telephone: (817) 336-2400<br>dbates@deckerjones.com<br><br>ATTORNEYS FOR PLAINTIFFS<br>POTTER COUNTY REPUBLICAN PARTY<br>AND DANIEL ROGERS |

## CERTIFICATE OF SERVICE

I certify that on November 4, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas using the Court's electronic case filing system, which will serve all counsel of record, including counsel for Defendant and counsel for the proposed intervenors.

*/s/Jared R. Woodfill*________