**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| POTTER COUNTY REPUBLICAN PARTY and DANIEL ROGERS, individually and on behalf of all others similarly affected,<br><br>*Plaintiffs,*<br>v.<br>CHRISTY BENGE, in her official capacity as the POTTER COUNTY ELECTIONS ADMINISTRATOR and as proposed representative of a defendant class of similarly situated Texas county election officials,<br><br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 2:26-cv-00215-Z |

**PLAINTIFFS' RESPONSE AND MEMORANDUM BRIEF IN OPPOSITION TO MOTION TO INTERVENE BY NAACP TEXAS STATE CONFERENCE, LEAGUE OF WOMEN VOTERS OF TEXAS, MOVE TEXAS CIVIC FUND, AND COMMON CAUSE (ECF NO. 25)**

## Introduction

The Motion to Intervene (ECF No. 25) should be denied. Four advocacy organizations ("Movants"), four days into this case and before Defendant had appeared, ask to become full parties on the side of a county official whose litigation positions remain unknown and whose objective in this suit is identical to theirs. Their brief does not mention the controlling rule. When a movant "has the same ultimate objective as a party to the lawsuit," the Fifth Circuit presumes adequate representation, and "the mere possibility that a party may at some future time" diverge "cannot alone show inadequate representation." *Louisiana v. Burgum*, 132 F.4th 918, 922 (5th Cir. 2025) (emphasis omitted) (quoting *Bush v. Viterna*, 740 F.2d 350, 358 (5th Cir. 1984)). This Court applied *Burgum* last year to deny intervention of right to a movant that, like Movants, pointed to no "specific conduct" by the existing party adverse to its interest. *Missouri v. U.S. Food & Drug*

*Admin.*, No. 2:22-CV-223-Z, 2025 WL 1223581, at *4 (N.D. Tex. Apr. 28, 2025). Movants' entire showing on adequacy is that Defendant "may have different reasons for taking the positions that [she] does]." Br. at 13. That is the "mere possibility" *Burgum* holds insufficient. Movants' asserted interests and their request for permissive intervention fail as well. If Movants have a perspective Defendant lack, "the proper procedure is to move to appear as amici curiae, not to move to intervene." *Burgum*, 132 F.4th at 923–24 (quoting *Richardson v. Flores*, 979 F.3d 1102, 1106 (5th Cir. 2020)).

**Background**

Plaintiffs filed this action on October 27, 2026. ECF No. 1. The Complaint challenges no provision of the Texas Election Code and seeks no change to how any voter registers, votes, or has a ballot received. Compl. ¶ 8. It seeks one thing: before county officials certify returns for federal office, the tabulations of voting systems that encode selections in barcodes or QR codes must be verified against the voter-verifiable paper records those systems generate. Compl. ¶¶ 7, 11–12. Texas law already requires a partial manual count of paper ballots after every election conducted on an electronic voting system, performed by the early voting ballot board. Tex. Elec. Code § 127.201(a), (b-1); ECF No. 5 at 3–4. Plaintiffs ask that this existing procedure be applied to all ballots rather than a sample, within existing post-election processes. Compl. ¶¶ 10, 21–22, 38, 55, 62. Election Day was November 3; county canvasses must convene no later than November 17; and the state canvass follows between November 21 and December 6. ECF No. 5 at 3.

Movants filed their Motion on October 31, "just four days after the case was filed" and "before the defendant ha[d] made an appearance." Br. at 7. Defendant has stated no position on the Motion. ECF No. 37 at 1. Movants assert two interests: their members' interest in having their votes "accurately and fairly counted," and the resources they say they would spend recruiting

temporary election workers and educating members if Plaintiffs prevail. Br. at 9–11. They have "concurrently filed" a motion to dismiss, Br. at 9, and their brief is signed by sixteen attorneys from four organizations, Br. at 17.

**Legal Standard**

Intervention as of right under Rule 24(a)(2) requires a timely application, "an interest relating to the property or transaction which is the subject of the action," a risk that disposition of the action "may, as a practical matter, impair or impede" the movant's ability to protect that interest, and inadequate representation "by the existing parties to the suit." *La Union del Pueblo Entero v. Abbott* ("*LUPE*"), 29 F.4th 299, 305 (5th Cir. 2022) (quoting *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)). The movant bears the burden on each. *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). The fourth requirement "cannot be treated as so minimal as to write the requirement completely out of the rule," *Texas*, 805 F.3d at 661 (quotation omitted), and it has "teeth" when the movant "has the same ultimate objective as a party to the lawsuit" or the existing party "is a governmental body or officer charged by law with representing the interests" of the movant. *Burgum*, 132 F.4th at 922 (quotations omitted). The first presumption is overcome only by "adversity of interest, collusion, or nonfeasance on the part of the existing party"; the second only by showing that the movant's "interest is in fact different" and "will not be represented." *Id.* Under either, "the mere possibility that a party may at some future time" diverge "cannot alone show inadequate representation." *Id.* (emphasis omitted) (quoting *Bush*, 740 F.2d at 358).

## Argument and Authorities

## I. MOVANTS ARE NOT ENTITLED TO INTERVENE AS OF RIGHT

### A. Defendant Adequately Represents Movants' Interest

Plaintiffs do not dispute timeliness. The Court can begin and end with the fourth requirement, as it did in *Missouri*, 2025 WL 1223581, at *2.

***1. Both presumptions apply.*** Movants and Defendant have the same ultimate objective. The inquiry "evaluates the parties' intended outcome of the litigation and the relief they seek." *Missouri*, 2025 WL 1223581, at *3 (citing *Burgum*, 132 F.4th at 922). Movants seek to intervene "as Defendants" to defeat a suit they say was brought "without legitimate cause," Br. at 1–2, and they have already filed a motion to dismiss, Br. at 9. Defendant, sued only in her official capacity for prospective relief against her certification duties, Compl. ¶ 15, can have no other objective. The governmental presumption applies as well. Movants contend only that it "can be and is often overcome," Br. at 12–13, and the interest they assert for their members, "ensuring that all lawfully cast votes are counted as required by law," Br. at 1, is the interest county election officials are charged by law to protect. The Court need not choose; *LUPE* applied the same framework "[a]ssuming either presumption applies." 29 F.4th at 308.

***2. Movants show no adversity of interest, collusion, or nonfeasance.*** The question under either presumption is what Defendant has actually done, and the answer is nothing. Movants' answer on adequacy is one sentence: "Even assuming that Defendants are generally interested in defending against Plaintiffs' claims, they may have different reasons for taking the positions that they do." Br. at 13. The word "may" concede the point. *Burgum* requires "specific conduct" by the existing party adverse to the movant on a "matter currently before" the Court. 132 F.4th at 923 (quoting *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 579 (5th

Cir. 2007)). API lost because it "d[id] not discuss any action taken by BOEM that is adverse to its own interest" and admitted it "presently cannot know . . . what litigation position or defenses BOEM will pursue." *Id.* Movants stand where API stood. They moved before Defendant "ha[d] made an appearance," Br. at 7, and identify no position she has taken, no issue she has conceded, and no defense she has declined to raise. What remains is "the mere possibility" that Defendant might someday diverge, which "cannot alone show inadequate representation." *Burgum*, 132 F.4th at 922. Movants' remaining arguments do not fill the gap.

*Bellitto.* Movants borrow from *Bellitto v. Snipes* the idea that an elected official's "interests and interpretation" of the law "may not be aligned" with theirs. Br. at 13. *Bellitto* was unopposed and granted intervention to a union that moved only after the defendant's second motion to dismiss revealed what her defense would be. No. 16-CV-61474, 2016 WL 5118568, at *1–2 (S.D. Fla. Sept. 21, 2016) (ECF No. 6 at App. 3–4). That is the sequence *Burgum* requires: a position taken, then a motion. Movants skipped the first step. And the premise that a public defendant's broader interests leave a private movant's narrower ones unrepresented is the argument *Burgum* rejected, 132 F.4th at 922–23, and this Court rejected in *Missouri*: "if they have the same ultimate objective, which they do, then GenBioPro must provide more." 2025 WL 1223581, at *4 (ECF No. 6 at App. 21–22); *see Texas*, 805 F.3d at 663 (rejecting the same "broader" interests argument).

*Berger.* Movants cite *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179, 196–97 (2022), for the statement that similar but not identical interests "normally" do not trigger a presumption. Br. at 12. But *Berger* held only that a presumption "is inappropriate when a duly authorized state agent seeks to intervene to defend a state law," and it expressly declined to "decide whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government." 597 U.S. at 197. Movants are

private litigants, and the Fifth Circuit has applied its presumptions to private movants since *Berger*. *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022); *Burgum*, 132 F.4th at 922. *Berger* also turned on record conduct: a defendant that "declined to offer expert-witness affidavits" and "declined to seek a stay" of an injunction. 597 U.S. at 198. Movants identify nothing comparable.

*LUPE.* The divergence the Fifth Circuit found in *LUPE*, Br. at 13, was concrete and in the record: the State "would prefer to not resolve this case on the merits at all"; some local officials had "already said that they will not substantively defend the constitutionality of the law"; and one was "a plaintiff in another case challenging" SB 1. 29 F.4th at 308–09. Nothing comparable exists here. And *LUPE*'s discussion of the governmental presumption cuts against Movants: the committees' interests there were "incidentally partisan," an interest "Neither the State nor its officials can vindicate such an interest while acting in good faith." *Id.* at 309. Movants disclaim partisanship. They are "nonpartisan" organizations "not affiliated with any candidate," Br. at 2; App. 6, whose stated interests an accurate count, orderly certification, and voter confidence, Br. at 9–11 are the public interests Defendant is charged to serve. The one divergence *LUPE* recognized is the one Movants say they lack.

*Uniformity.* Movants argue that county officials cannot protect a "statewide interest" in uniform procedures because the proposed class omits counties that assign election duties to clerks or tax assessor-collectors. Br. at 13–14 (citing *Bush v. Gore*, 531 U.S. 98, 107 (2000)). That is a critique of the class and the relief, not an interest Defendant cannot represent. Defendant is sued as the proposed representative of a class whose scope she will litigate, Compl. ¶¶ 16, 41–50, and the *Bush v. Gore* contention is a defense available to any defendant—one the other proposed intervenors have already pleaded, ECF No. 5-1 at 13. A defense everyone on that side can raise is

no evidence that Defendant will not raise it. Like the intervenors in *Hopwood*, Movants have not shown "that they have a separate defense of the affirmative action plan that the State has failed to assert." *Texas*, 805 F.3d at 663 (quoting *Hopwood v. Texas*, 21 F.3d 603, 606 (5th Cir. 1994)).

*Other lawsuits.* That Movants "have often sued election officials in Texas" in other cases, Br. at 14, is not adversity "germane to the case," *Guenther*, 50 F.4th at 543, or on a "matter currently before" this Court, *Burgum*, 132 F.4th at 923. The Fifth Circuit denied intervention on a comparable showing in *Veasey v. Perry*, an expedited Texas election case: "the ultimate objective is the same and True the Vote has not shown a sufficient disalignment of interest to warrant intervention." 577 F. App'x 261, 263 (5th Cir. 2014). If Defendant later concedes an issue or declines to defend, Movants may move again on that record. Until then, intervention as of right must be denied. *Haspel & Davis*, 493 F.3d at 578.

**B. Movants Assert No Legally Protectable Interest and Show No Impairment**

Movants also fail the second requirement, and so the third. Rule 24(a)(2) requires "a direct, substantial, legally protectable interest in the proceedings," *LUPE*, 29 F.4th at 305, 306, 310, 311 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc)), one that "goes beyond a generalized preference that the case come out a certain way," *Texas*, 805 F.3d at 657. The Fifth Circuit draws the line at regulation of the movant's own conduct: an organization with "only an ideological interest in the litigation," where "the lawsuit does not involve the regulation of [the organization's] conduct in any respect," has no Rule 24(a)(2) interest. *Id.* at 657–58 (quoting *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 343 (6th Cir. 2007)). That is why *LUPE*, applying the more lenient standard for public-interest groups that Movants invoke, Br. at 8, rested on a statute that "unquestionably regulates the conduct of the Committees' volunteers and poll watchers." 29 F.4th at 306. Neither interest Movants assert qualifies.

*Members' votes*. Movants' members, like every Texas voter, have an interest in an accurate and timely count. Br. at 9. That is the "general interest" in an accurate tally that the Supreme Court distinguished from a candidate's "an undeniably different—and more particularized—interest," *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 77–78 (2026) (quotation omitted), and the undifferentiated interest in lawful government that supports no personal stake, *Lance v. Coffman*, 549 U.S. 437, 439–42 (2007) (per curiam). Movants' prediction that a hand count would introduce "human errors," App. 7, 17, is a merits argument for Defendant to make, not an interest in the subject of the action. The relief regulates no voter and no Movant: any order would require county officials to verify machine totals against paper records already generated. Compl. ¶¶ 12, 38. That a few members serve on early voting ballot boards, Br. at 9, adds nothing; those boards already perform the statutory manual count for the county, whose official is Defendant.

*Diversion of resources.* Movants' second interest is the money and time they say they would spend recruiting temporary workers and "combatting disinformation" if Plaintiffs prevail. Br. at 10–11; App. 8, 18–19, 23, 28. Nothing in the relief Plaintiffs seek requires Movants to spend anything; an injunction would bind Defendant and the class, not Movants. Fed. R. Civ. P. 65(d)(2). The theory that "standing exists when an organization diverts its resources in response to a defendant's actions" is "incorrect"; an organization "cannot spend its way into standing." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394–95 (2024). *Bost* said the same of election monitoring: plaintiffs "cannot 'manufacture standing by voluntarily' incurring costs," lest "a candidate who pays poll watchers a penny would have standing, while one who relies on volunteers would not." 607 U.S. at 82 (quoting *Fed. Election Comm'n v. Ted Cruz for Senate*, 596 U.S. 289, 297 (2022)). Rule 24's interest requirement is not Article III standing, *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006), but a voluntary expenditure that cannot "manufacture standing" is not an

interest "of the type that the law deems worthy of protection," *Texas*, 805 F.3d at 659. No statute is challenged here, Compl. ¶ 8, no conduct of Movants or their members is regulated, and, unlike SB 1 in *LUPE*, nothing "grants rights to the Committees and their members that could be taken away if the plaintiffs prevail." 29 F.4th at 307.

*Impairment.* With no protectable interest, there is nothing to impair; the only effect on themselves Movants identify is the voluntary expenditure addressed above.

## II. PERMISSIVE INTERVENTION SHOULD BE DENIED OR CONDITIONED

Permissive intervention is "wholly discretionary with the [district] court," *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) (alteration in original); *Burgum*, 132 F.4th at 923–24, and the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3). Movants say no one is prejudiced because the case "is still in its infancy." Br. at 8. The schedule in this case is the Election Code's: county canvasses convene no later than November 17, and certified returns go to the Secretary of State within 24 hours. ECF No. 5 at 3. Every question in this case must be decided before county returns are certified. Into that window Movants propose to add four organizations and sixteen lawyers, with a motion to dismiss already filed that Plaintiffs would have to answer on the same clock as Defendant's. Br. at 9, 17. The DSCC and DCCC have made the same request, ECF No. 4; if both are granted, Plaintiffs will answer three separately represented sets of defendants on a two-week clock, none adding a defense Defendant cannot raise. In the mifepristone litigation, this Court granted permissive intervention to the manufacturers of the product under challenge one unopposed, *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 2:22-CV-223-Z, 2023 WL 11840559, at *1 (N.D. Tex. Feb. 6, 2023) (ECF No. 6 at

App. 1), the other where intervention would "change nothing in the existing case schedule," *Missouri*, 2025 WL 1223581, at *6 (ECF No. 6 at App. 23).

The decisive point is that Movants identify nothing Defendant cannot plead. Where "the movants express a unique view offered by neither party" that they want "heard," "the proper procedure is to move to appear as amici curiae, not to move to intervene." *Burgum*, 132 F.4th at 924 (quoting *Richardson*, 979 F.3d at 1106); *see Texas v. U.S. Dep't of Homeland Sec.*, No. 24-40571, 2024 WL 4404421, at *1 (5th Cir. Oct. 4, 2024) (per curiam); *Veasey*, 577 F. App'x at 263. Plaintiffs do not oppose leave for Movants to file an amicus brief on any motion in this case. Reversal of a denial of permissive intervention on that basis "is so unusual as to be almost unique." *Burgum*, 132 F.4th at 923–24 (quoting *SEC v. Stanford Int'l Bank, Ltd.*, 429 F. App'x 379, 382 (5th Cir. 2011)).

If the Court nonetheless permits intervention, it should impose conditions. *See* Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment (intervention "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings"). Plaintiffs ask that any order provide that Movants (1) are bound by every deadline the Court sets or the Election Code imposes and may not seek to extend any of them; (2) must file briefing jointly with Defendant within a single party's page limits and may not file a separate Rule 12 motion; (3) may not seek discovery beyond Defendant's; (4) may not seek attorney's fees or costs against Plaintiffs; and (5) may not seek relief that Defendant does not seek. Movants concede that an intervenor needs Article III standing to "pursue relief" different from an existing parties, Br. at 8 n.1; *see Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439–40 (2017), and they allege no injury of their own.

**Conclusion**

Plaintiffs ask the Court to deny the Motion to Intervene (ECF No. 25) or, in the alternative, to condition any permissive intervention as set out in Part II.

Dated: November 5, 2026.

Respectfully submitted,

*/s/ Jared R. Woodfill*
Jared R. Woodfill
State Bar No. 00788715
Adam M. Helleck
State Bar No. 24038953
WOODFILL LAW FIRM, PC
5850 San Felipe, 5th Floor
Houston, Texas 77057
Telephone: (832) 255-3751
Woodfillservice@gmail.com

*/s/ Daniel Bates*
Daniel Bates
State Bar No. 01899900
DECKER JONES, PC
801 Cherry Street, Suite 2000, Unit 46
Fort Worth, Texas 76102
Telephone: (817) 336-2400
dbates@deckerjones.com

ATTORNEYS FOR PLAINTIFFS
POTTER COUNTY REPUBLICAN PARTY
AND DANIEL ROGERS

**CERTIFICATE OF SERVICE**

I certify that on November 5, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Northern District of Texas using the Court's electronic case filing system, which will serve all counsel of record, including counsel for Defendant and counsel for the proposed intervenors.

*/s/ Jared R. Woodfill*
Jared R. Woodfill