## TABLE OF CONTENTS

TABLE OF AUTHORITIES....ii

CASES....ii

CONSTITUTIONAL PROVISIONS....vi

STATUTES....vi

RULES....vi

PRELIMINARY STATEMENT .... 1

BACKGROUND .... 2

LEGAL STANDARD.... 4

ARGUMENT .... 7

I. Plaintiffs Lack Article III Standing, Depriving This Court of Subject-Matter Jurisdiction. .... 7

A. Plaintiffs Assert Only a Generalized Grievance Shared by Every Voter. .... 7

B. The Alleged Injury Is Speculative and Conjectural, Not Concrete or Imminent. .... 11

D. The Alleged Injury Is Not Fairly Traceable to Defendant. .... 14

E. Statewide Relief Is Not Redressable Against a Single County Official. .... 14

F. PCRP Cannot Manufacture Standing Through Its Own Expenditures. .... 16

II. The *Purcell* Principle Independently Bars the Eve-of-Election Relief Plaintiffs Seek. .... 17

III. The Complaint Fails to State a Claim Under the Fourteenth Amendment. .... 18

A. Plaintiffs Identify No Protected Liberty or Property Interest. .... 18

B. The *Anderson*/*Burdick* Framework Forecloses Any Substantive Due Process Claim... 19

C. Plaintiffs Allege No Disparate Treatment Cognizable Under Equal Protection. .... 20

D. The Alleged Election Irregularity Is Not Cognizable Under Section 1983.... 21

E. HAVA Provides No Privately Enforceable Right. .... 21

F. The Complaint's Allegations of Risk Are Conclusory Under *Twombly*/*Iqbal*. .... 22

IV. Count II Fails Because the Declaratory Judgment Act Creates No Independent Cause of Action. .... 23

CONCLUSION.... 23

CERTIFICATE OF SERVICE .... 24

## TABLE OF AUTHORITIES

### CASES


*Alexander v. Sandoval*,
532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) .......... 21

*Am. Civil Rights Union v. Martinez-Rivera*,
166 F.Supp.3d 779 (W.D. Tex. 2015) .......... 11

*Anderson v. Celebrezze*,
460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) .......... 2, 18, 19

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......... 6, 22

*Bennett v. Spear*,
520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) .......... 14

*Broyles v. Texas*,
618 F.Supp.2d 661 (S.D. Tex. 2009) .......... 18, 21

*Brunner v. Ohio Republican Party*,
555 U.S. 5, 129 S.Ct. 5, 172 L.Ed.2d 4 (2008) .......... 22

*Burdick v. Takushi*,
504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) .......... 2, 18, 19

*Bush v. Gore*,
531 US. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) .......... 20

*Carney v. Adams*,
592 U.S. 53, 141 S.Ct. 493, 208 L.Ed.2d 305 (2020) .......... 5

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) .......... 11, 12, 13

*Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential for Neighborhoods, (HAVEN)*,
915 F.2d 167 (5th Cir. 1990) .......... 23

*Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council*,
364 F.3d 269 (5th Cir. 2004) .......... 5

*Dep't of Educ. v. Brown*,
600 U.S. 551, 143 S.Ct. 2343, 216 L.Ed.2d 1116 (2023) .......... 13

*Diamond Alt. Energy, LLC v. Envtl. Prot. Agency*,
606 U.S. 100, 145 S.Ct. 2121, 222 L.Ed.2d 370 (2025) .......... 7

*Engquist v. Oregon Dep't of Agr.*,
553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 121 (2008) .......... 20

*Eubanks v. Nelson*,
No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024) (not designated for publication), *cert. denied sub nom. Gremont v. Nelson*, ___ U.S. ___, 145 S.Ct. 441, 220 L.Ed.2d 189 (2024) .......... 10

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367, 144 S.Ct. 1540, 219 L.Ed.2d 121 (2024) .......... 8, 11, 14, 16

*Gill v. Whitford*,
585 U.S. 48, 138 S.Ct. 1916, 201 L.Ed.2d 313 (2018) .......... 13, 17

*Hikma Pharm. USA, Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580, 146 S.Ct. 1391, 225 L.Ed.2d 159 (2026) .......... 6

*Hotze v. Hudspeth*,
16 F.4th 1121 (5th Cir. 2021) .......... 8, 11

*HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*,
907 F.3d 199 (5th Cir. 2018) .......... 5

*In re FEMA Trailer Formaldehyde Products Liab. Litig. (Miss. Plaintiffs)*,
668 F.3d 281 (5th Cir. 2012) .......... 6

*Jefferson v. Abbott*,
No. 3:24-CV-3065-L-BN, 2025 WL 2754036 (N.D. Tex. Sept. 29, 2025) .......... 11

*Jerusalem v. Dep't of State La.*,
No. 23-30521, 2024 WL 194174 (5th Cir. Jan. 18, 2024) (not designated for publication), *cert. denied*, ___ U.S. ___, 144 S.Ct. 2524, 219 L.Ed.2d 1202 (2024) .......... 9

*Kozuszek v. Brewer*,
546 F.3d 485 (7th Cir. 2008) .......... 21

*La Union Del Pueblo Entero v. Abbott*,
119 F.4th 404 (5th Cir. 2024)....................17, 18

*La Union Del Pueblo Entero v. Abbott*,
151 F.4th 273 (5th Cir. 2025), *cert. denied*, ___ U.S. ___, 146 S.Ct. 2781 (2026)....................16

*La Union del Pueblo Entero v. Abbott*,
167 F.4th 743 (5th Cir. 2026)....................19

*La Union del Pueblo Entero v. Abbott*,
187 F.4th 690 (5th Cir. 2026)....................17

*Lance v. Coffman*,
549 U.S. 437, 127 S.Ct. 1194, 167 L.Ed.2d 29 (2007)....................4, 8, 10, 13

*League of United Latin Am. Citizens v. Abbott*,
951 F.3d 311 (5th Cir. 2020)....................20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)....................5, 7, 8, 14, 15, 16

*Lutostanski v. Brown*,
88 F.4th 582 (5th Cir. 2023)....................8, 10, 15

*M.D.C.G. v. United States*, 956 F.3d 762 (5th Cir. 2020)....................6

*Matthews v. Eldridge*,
424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1978)....................19

*Merrill v. Milligan*,
___ U.S. ___, 142 S.Ct. 879 (2022)....................18

*Morales-Garza v. Lorenzo-Giguere*,
277 Fed. App'x 444 (5th Cir. 2008)....................22

*NAACP v. Tindell*,
95 F.4th 212 (5th Cir. 2024)....................8, 13

*Purcell v. Gonzales*,
549 U.S. 1, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006)....................2, 17, 18

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001)....................6

*Raskin v. Jenkins*,
No. 23-10960, 2024 WL 3508051 (5th Cir. July 23, 2024)
(not designated for publication) .......... 9

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
589 U.S. 423, 140 S.Ct. 1205, 206 L.Ed.2d 452 (2020) .......... 17

*Reule v. Jackson*,
114 F.4th 360 (5th Cir. 2024), *cert. denied*, ___ U.S. ___, 145 S.Ct. 1431,
221 L.Ed.2d 556 (2025) .......... 5, 14

*Reynolds v. Sims*,
377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) .......... 13

*Richardson v. Texas Sec'y of State*,
978 F.3d 220 (5th Cir. 2020) .......... 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) .......... 6, 7, 12

*Stringer v. Whitley*,
942 F.3d 715 (5th Cir. 2019) .......... 12, 16

*Tex. All. for Retired Americans v. Hughs*,
976 F.3d 564 (5th Cir. 2020) .......... 17

*Texas Voters All. v. Dallas Cnty.*,
495 F.Supp.3d 441 (E.D. Tex. 2020) .......... 14, 15, 22

*TransUnion LLC v. Ramirez*,
594 U.S. 413, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021) .......... 11

*Uzuegbunam v. Preczewski*,
592 U.S. 279, 141 S.Ct. 792, 209 L.Ed.2d 94 (2021) .......... 15

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) .......... 4

*Virginia House of Delegates v. Bethune-Hill*,
587 U.S. 658, 139 S.Ct. 1945, 204 L.Ed.2d 305 (2019) .......... 4

*Whitmore v. Arkansas*,
495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ........................................................ 11

**CONSTITUTIONAL PROVISIONS**

U.S. CONST., art. III ........................................................................................ 1, 5, 7, 8, 10, 23

U.S. CONST. amend. XIV ........................................................................ 1, 4, 8, 9, 18, 20, 23

**STATUTES**

42 U.S.C. § 15301 *et seq*. ................................................................................................ 21

42 U.S.C. § 1983 ........................................................................................................ 4, 18, 21

**RULES**

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 6, 24

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 6, 24

**PRELIMINARY STATEMENT**

This eleventh-hour lawsuit targets a county official, whom Plaintiffs admit is following state law, in order to ask the Court for a sweeping statewide intervention into the process of certifying election results based on no more than theoretical possibility. In their Complaint, Plaintiffs – the Potter County Republican Party and one of its members who is a registered voter in Potter County – seek to force the Potter County Elections Administrator, and through her a putative defendant class of all other elections administrators in Texas, to go well beyond the requirements of Texas law governing election certification. Specifically, Plaintiffs ask this Court to require that Defendant (and the proposed defendant class) conduct a full manual hand count of every paper ballot in every precinct throughout the state before the results of the November 3, 2026 federal election may be certified. The lawsuit is based on the possibility that electronic voting systems theoretically could be hacked by malign actors, foreign or domestic, or through use of artificial intelligence.

What Plaintiffs do not allege is as significant as what they do. They do not assert that Defendant has violated or is violating the Texas Election Code, nor do they contend that any previous Potter County election has been tainted, altered, or inaccurately certified. And Plaintiffs do not claim that Texas law fails to require any sort of hand-count audit of voted ballots, because it does. They do not allege any imminent, identifiable threat of hacking by a particular actor. Instead, Plaintiffs contend that the existing statutory requirements for ballot audits are insufficient to allay their concerns about unrealized hacking risks, and that the Fourteenth Amendment should be read to require their preferred measures.

That claim is fatally flawed, jurisdictionally and on the merits. Based on four independent grounds, Plaintiffs lack Article III standing. Plaintiffs' asserted injury is a

generalized grievance shared by every voter in Texas, including all those in Potter County. Moreover, their supposed injury is speculative and conjectural, rather than being concrete and imminent, as required to show injury in fact. The purported injury is not fairly traceable to the Defendant, since it is premised on the acts of hypothetical third-party actors (such as hackers and equipment vendors) rather than those of Defendant. Additionally, the injury is not redressable against Defendant, given that a lone county official lacks the authority or actual capability to ensure hand-count verification of paper ballots throughout Texas. Considered separately or together, these shortcomings show that Plaintiffs lack standing.

Beyond the standing defect, there is no recognized liberty or property interest in any specific method of verifying voted ballots which might support a procedural due process claim. Likewise, any substantive due process claim fails under the controlling *Anderson*/*Burdick* analysis because the existing audit procedures under Texas law impose no severe burden. The Complaint is devoid of any indication that Plaintiffs or any voters are treated disparately in Potter County's handling of its federal elections, vitiating the equal protection claim. Finally, the eve-of-election relief Plaintiffs request is foreclosed by the *Purcell* principle.

Election security and integrity are important issues, and they deserve to be thoughtfully analyzed and debated. Our constitutional system provides an avenue to do so: the legislative process. The difficulty, time, and expense of engaging in that process, however, do not make this lawsuit a proper forum for that debate. In sum, the Complaint should be dismissed in its entirety.

## BACKGROUND

According to the Complaint, Plaintiffs are the Potter County Republican Party ("PCRP"), a county organization of the Republican Party, and Daniel Rogers ("Plaintiff Rogers"), a registered voter in Potter County who also is PCRP's chairman. (Compl. ¶ 13; *id.* ¶ 14).

Defendant Christy Benge ("Defendant Benge") is the Potter County Elections Administrator who is sued in her official capacity and as the proposed representative of a defendant class. (Compl. ¶ 15.). No damages are sought against Defendant Benge. (*Id.*). Since the general federal election occurred on November 3, 2026 (*see* Compl. ¶ 8), and the Complaint was filed on October 27, 2026 (*see* ECF Doc. 1, at 1), Plaintiffs asked the Court for the broad relief described in the Complaint a mere seven days before the election.

Plaintiffs challenge the use of electronic voting systems that tabulate votes after they have been encoded in barcodes or QR codes, which voters allegedly cannot independently read or verify. (Comp., ¶ 7; *id.* ¶ 33). The Complaint alleges that the challenged systems utilize components manufactured in foreign countries, and that foreign adversaries and "rogue artificial intelligence (AI) programs" could compromise election infrastructure, creating what the Complaint calls an "imminent risk of undetectable tampering with machines to alter the final elections results by rogue actors." (Compl. ¶ 5; *id.* ¶ 11). As the purported basis for this threat, the Complaint quotes and discusses various federal threat assessment materials, including an ODNI assessment that "China remains the most active and persistent cyber threat[.]" (Compl. ¶ 3; *see also id.* ¶¶ 4, 5, 9, 24-25, 27-31).

Acknowledged in the Complaint is that Texas "independently requires a post-election hand-count audit of paper records or ballots when an electronic voting system is used," which is conducted at randomly selected election-day, early-voting and mail-in-ballot locations. (Compl. ¶ 10; *id.* ¶ 21). Concurrently, "Plaintiffs do not seek to challenge and do not seek to invalidate any provision of the Texas election code." (Compl. ¶ 8). Despite this pre-existing audit requirement, which is not targeted for invalidation, Plaintiffs argue that the statutory process samples too few ballots to be constitutionally sufficient. (Compl. ¶ 21).

Plaintiffs concede that the federal materials they discuss in the Complaint do not "alone, establish with certainty that any particular Texas voting machine has miscounted votes in the past," and they further disclaim any allegation that any past Potter County results "were altered, or inaccurately reported." (Compl. ¶ 32). They seek only prospective relief directed to the post-election verification and certification process, (Compl. ¶ 8) and argue that in the absence of judicial relief Defendant Benge (and the proposed defendant class) will "follow the ordinary Texas post-election procedures[.]" (Compl. ¶ 35).

Grounded on these allegations, Plaintiffs ask this Court to order a manual hand count of all paper ballots "in all precincts in Texas" before results are certified, to enjoin certification until that count is complete, and to confirm the results for "all federal races" in Texas based on the hand count. (*See* Compl. at 25-26). Count I of the Complaint asserts a claim under 42 U.S.C. § 1983 for purported violation of the Fourteenth Amendment, while Count II seeks a declaratory judgment recognizing a constitutional right to Plaintiffs' suggested pre-certification verification procedure. (Compl. ¶ 53; Compl. ¶ 59).

## LEGAL STANDARD

Federal courts must determine that they have jurisdiction before proceeding to the merits. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). At the same time, as the Supreme Court has long recognized, "[t]hose who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475-76 (1982). To reach the merits of a case, a federal court must have jurisdiction, and one essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so. *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019). Standing thus is a threshold jurisdictional issue

because, quite simply, standing is a component of subject matter jurisdiction. *HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018). If a plaintiff lacks Article III standing, then a federal court lacks jurisdiction to hear the complaint. *Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council*, 364 F.3d 269, 272 (5th Cir. 2004).

The "irreducible constitutional minimum of standing" contains three elements: injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; a causal connection between the injury and the conduct complained of, so the injury is fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Hence, a plaintiff asserting "only a generally available grievance about government" that is shared with the public at large does not present an Article III case or controversy, depriving the Court of subject-matter jurisdiction. *Id*. at 573. In other words, a plaintiff cannot establish standing by asserting an abstract "general interest common to all members of the public," no matter how sincere or "deeply committed" a plaintiff is to vindicating that general interest on behalf of the public. *Carney v. Adams*, 592 U.S. 53, 59 (2020). Likewise, it is well established that standing cannot exist where the injury "depends on the unfettered choices made by independent actors not before the court" and whose exercise of discretion the courts cannot presume either to control or to predict. *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024), *cert. denied*, ___ U.S. ___, 145 S.Ct. 1431, 221 L.Ed.2d 556 (2025). Plaintiffs, as the parties invoking federal jurisdiction, bear

the burden of establishing these three elements and, at the pleading stage, Plaintiffs must clearly allege facts demonstrating each element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Meanwhile, a Rule 12(b)(1) motion to dismiss challenges the subject-matter jurisdiction of the federal court. *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012). A district court may dispose of a motion to dismiss for lack of subject-matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *M.D.C.G. v. United States*, 956 F.3d 762, 768 (5th Cir. 2020). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, as here, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming*, 281 F.3d at 161.

Under Rule 12(b)(6), while a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to proceed to discovery, a plaintiff must "state a claim to relief that is plausible on its face." *Hikma Pharm. USA, Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589 (2026) (quoting *Twombly*., 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. Importantly, in this context, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Ultimately, the complaint must plead facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I. Plaintiffs Lack Article III Standing, Depriving This Court of Subject-Matter Jurisdiction.

It is Plaintiffs' burden to demonstrate the "irreducible constitutional minimum" of standing, consisting of (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc.*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560). They satisfy none of these requirements. Their alleged injury is a generalized grievance shared by every voter. Further, their claimed injury is speculative rather than imminent, and it is not fairly traceable to any conduct by Defendant Benge. Nor can it be redressed by an order against Benge, who only has authority in Potter County. Likewise, the organizational plaintiff's claims fail because its interests are generalized, commonly-shared complaints, and it cannot spend its way into standing. Viewed individually or together, these defects require dismissal for lack of subject-matter jurisdiction.

#### A. Plaintiffs Assert Only a Generalized Grievance Shared by Every Voter.

The injury in fact requirement of standing obliges Plaintiffs to demonstrate an injury that is "concrete," "particularized," and "actual or imminent, not speculative." *Diamond Alt. Energy, LLC v. Envtl. Prot. Agency*, 606 U.S. 100, 111 (2025). A citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally, nor may a citizen sue based only on an "asserted right to have the Government

act in accordance with law." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). This is so because "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74. Plaintiffs' central claim, that the Fourteenth Amendment requires more robust verification and certification procedures than currently are provided by Texas law, is functionally the same as the one in *Lance*, which was that "the law—specifically the Elections Clause—has not been followed" and thus "is precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Supreme Court has] refused to countenance in the past." 549 U.S. at 441-42.

In recent cases, the Fifth Circuit repeatedly has applied these principles to reject election-integrity suits like this one. It has held that a challenge by voters to a county's electronic voting system was "precisely the kind of undifferentiated, generalized grievance about the conduct of government" that Article III precludes. *Lutostanski v. Brown*, 88 F.4th 582, 586 (5th Cir. 2023) (quoting *Lance*, 549 U.S. at 442). Similarly, it held a contention that drive-thru voting "hurt the 'integrity' of the election process" to be "far too generalized to warrant standing." *Hotze v. Hudspeth*, 16 F.4th 1121, 1124 (5th Cir. 2021). Analyzing and rejecting an argument that a local election regime amounted to vote dilution, the court noted that the "injury is not particularized" because the purported loss of benefits would "affect all Jackson residents." *NAACP v. Tindell*, 95 F.4th 212, 217 (5th Cir. 2024). As could be said of Plaintiffs' claims here, the Fifth Circuit added that "[t]he benefits of accountability are no more likely to accrue to 'especially politically engaged' voters than to anyone else." *Id.*

In a similar vein, where a voter claimed that the defendants "caused [his] votes to be invalidated because they were cast illegally" via an uncertified voting system, the court found that the plaintiff had "failed to show that such an injury would not have been common to all Dallas County voters" and thus presented a "far too generalized" injury to warrant standing. *Raskin v. Jenkins*, No. 23-10960, 2024 WL 3508051, at *2 (5th Cir. July 23, 2024) (not designated for publication). And the court found an allegation by a voter that she was injured because voting machines in Louisiana were not certified and would thereby "diminish her voice and cause her irreparable harm" to be insufficient to rise above the generalized injury category for standing purposes. *Jerusalem v. Dep't of State La.*, No. 23-30521, 2024 WL 194174, at *1 (5th Cir. Jan. 18, 2024) (not designated for publication), *cert. denied*, ___ U.S. ___, 144 S.Ct. 2524, 219 L.Ed.2d 1202 (2024). A like analysis and result obtained in *Viera v. Hudman*, No. 23-40325, 2024 WL 111353 (5th Cir. Jan 10, 2024) (not designated for publication). In *Viera*, a group of voters claimed that Brazoria County used voting machines that were not properly certified by the Election Assistance Commission under 52 U.S.C. § 20971, and that Brazoria County officials therefore violated the First, Ninth, and Fourteenth Amendment by certifying allegedly fraudulent election results produced by those allegedly uncertified voting machines. 2024 WL 111353, at *1. The Court found that the voters' claim, that they were injured because Brazoria County officials failed to comply with the law by certifying "fraudulent" election results, fell squarely within the category of generalized grievances that federal courts lack jurisdiction to adjudicate. *Id.*

Finally, in *Eubanks v. Nelson*, the Fifth Circuit reviewed "a civil rights action to prohibit the use of electronic voting equipment and systems (machines) in the State of Texas" which sought "an order requiring the use of 'hand-marked paper ballots that can be cast with anonymity

… and hand counted by residents of the state of Texas … instead of with machines." No. 23-10936, 2024 WL 1434449, at *1 (5th Cir. Apr. 3, 2024) (not designated for publication), *cert. denied sub nom. Gremont v. Nelson*, ___ U.S. ___, 145 S.Ct. 441, 220 L.Ed.2d 189 (2024). The plaintiffs in *Eubanks* alleged as injuries to confer standing that "their votes were not counted as intended and diluted" and that "the release of combined private and personal information to the Department of Homeland Security and CIS Security and their third-party partners that appears in Texas' voter data, has been and will continue to be released." *Id*. at *1. The court found that, like the plaintiffs in *Lutostanski*, the plaintiffs in *Eubanks* did not allege that their votes had or would be treated differently from other votes, but that all voters across the state who use electronic voting machines were at risk of having their votes not counted as intended. "Such an injury does not confer standing because a plaintiff who raises only a 'generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Id*. at *2 (quoting *Lance*, 549 U.S. at 439).

Plaintiffs' claims in this lawsuit suffer from the same flaw. The Complaint frames the asserted harm as one affecting "voters, including Plaintiffs," arising from a general "right to have ballots counted accurately and without dilution by all election officials." (Compl. ¶ 36); *compare Eubanks*, 2024 WL 1434449, at *2. Every voter in Potter County—indeed, in Texas—shares this interest identically, so it is not particular to these Plaintiffs. Plaintiffs' requested relief confirms the point, since Plaintiffs request that the Court order a hand count "in all precincts in Texas," a remedy that reaches the entire electorate. (Compl. at 25). Meanwhile, Plaintiff Rogers is described only as "a registered voter in Potter County," and he is not alleged to have suffered any

injury distinct from that of any other voter whose ballot is machine-tabulated. (Compl. ¶ 14). Seeking prospective injunctive relief to require state and local officials "to comply with federal and state election laws before certifying candidates and elections results," or invoking judicial review "to ensure future compliance and prevent repetition of unlawful practices" falls short of demonstrating standing. *Jefferson v. Abbott*, No. 3:24-CV-3065-L-BN, 2025 WL 2754036, at *15 (N.D. Tex. Sept. 29, 2025). In all, the Plaintiffs here stand in the same position as those in *Hotze*, who showed no basis for standing different from any other county voter and thereby "f[e]ll into the same general group of voters … who … lack standing." 16 F.4th at 1125 (internal punctuation added). As such, the Plaintiffs' Complaint presents nothing more than a generalized grievance which does not confer standing, and it should be dismissed accordingly.

### B. The Alleged Injury Is Speculative and Conjectural, Not Concrete or Imminent.

A threatened injury supports standing only if it is "certainly impending" and "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). The Supreme Court has pointedly declared that plaintiffs "cannot rely on speculation about the unfettered choices made by independent actors who are not before the courts." *Food & Drug Admin.*, 602 U.S. at 383 (quoting *Clapper*, 568 U.S. at 415 n. 5). Where a complaint does not complain of specific voting practices, but only potentially unlawful voting practices, it is too uncertain and speculative to support standing. *See Am. Civil Rights Union v. Martinez-Rivera*, 166 F.Supp.3d 779, 803 (W.D. Tex. 2015). That result is preordained by *Clapper*, which rejected a standing theory that "relies on a highly attenuated chain of possibilities." 568 U.S. at 410. Similarly, an unrealized risk of future harm is not itself a concrete injury unless and until it materializes. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021). The same reasoning is applied by the Fifth Circuit. In

particular, "general data" does not establish "a substantial risk that Plaintiffs themselves" will be injured, so "Plaintiff-specific evidence is needed." *Stringer v. Whitley*, 942 F.3d 715, 722 (5th Cir. 2019). To that end, plaintiffs seeking prospective relief "must show a continuing or threatened future injury to themselves," not a diffuse risk to the public. *Id*. at 721.

The Complaint alleges only a hypothetical future risk to all Potter County voters. Specifically, Plaintiffs aver that "malicious actors could potentially compromise election infrastructure," (Compl. ¶ 5) and that "rogue artificial intelligence (AI) programs" create an "imminent risk of undetectable tampering[.]" (Compl. ¶ 11). These are not realized or imminent harms, but rather conjectural possibilities. Moreover, the alleged harm depends on an attenuated chain of contingencies—that a malicious actor will choose to attack Potter County's equipment, will succeed, will evade the existing statutory audit, and will thereby alter a federal result. *Cf. Clapper*, 568 U.S. at 410.

Conjecture is confirmed on the face of the Complaint, which expressly states that the cited federal materials do not establish that any Texas machine "has miscounted votes in the past," and which does not allege that any past Potter County results "were altered, or inaccurately reported." (Compl. ¶ 32). Instead, it is the possibility of hacking, with or without AI assistance, that characterizes Plaintiffs' claims. But to establish injury in fact, Plaintiffs were required to show that they suffered "an invasion of a legally protected interest" that is, *inter alia*, "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 578 U.S. at 339. In other words, their injury must be "concrete," meaning that it is "real, and not abstract." *Id*. at 340 (cleaned up). To counter possible hacking, Plaintiffs ask the Court to order more stringent quality control over election certification than Texas law requires, which would benefit all voters. An analogous request was rebuffed by the Supreme Court, where the claim was injury because

the government had not adopted a lawful benefits program under which the plaintiffs would qualify for assistance. "But the same could be said of anyone who might benefit from a benefits program the Government has not chosen to adopt. It is difficult to see how such an injury could be … concrete (since an as-yet-uncreated benefits plan is necessarily 'abstract' and not 'real')." *Dep't of Educ. v. Brown*, 600 U.S. 551, 563-64 (2023) (internal punctuation added). So it is here. The Complaint pleads only a speculatively possible future injury, so it alleges no injury in fact. *See Clapper*, 568 U.S. at 409. Absent that requisite aspect of standing, it should be dismissed.

### C. Plaintiff Allege No Cognizable, Particularized Vote-Dilution Theory.

To the extent Plaintiffs cast their injury as vote "dilution," that theory requires a harm that is "individual and personal in nature." *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (quoting *Reynolds v. Sims*. 377 U.S. 533, 561 (1964)). While voters who show disadvantage to themselves as individuals have standing to sue for a remedy, a systemic interest shared with the public at large is only "a nonjusticiable general interest common to all members of the public," which is "the kind of undifferentiated, generalized grievance about the conduct of government" that precludes standing. *Gill*, 585 U.S. at 68 (quoting *Lance*, 549 U.S. at 442) (internal punctuation omitted). A vote dilution claim that does not show how Plaintiffs are affected in a personal and individual way does not confer standing. *See NAACP*, 95 F.4th at 217. Yet that is all the Complaint in this case presents. It suggests a universal right against "dilution of votes by all election officials" but fails to identify any manner in which Rogers's vote will be counted or weighed differently than that of any other voter. (Compl. ¶ 36; *id*. ¶ 14). Relief is sought in the form of a statewide hand count (Compl. at 25), which is not a remedy focused on individual legal rights but on a generalized grievance that cannot support standing. *See Gill*, 585 U.S. at 72. Jurisdiction for such a claim is not shown, so the Complaint should be dismissed.

### D. The Alleged Injury Is Not Fairly Traceable to Defendant.

Standing exists if the plaintiff establishes that there is "a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Reule*, 114 F.4th at 367 (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)); *accord Lujan*, 504 U.S. at 560. The line of causation between the illegal conduct and injury—the "links in the chain of causation"—must not be too speculative or too attenuated. *Food & Drug Admin.*, 602 U.S. at 383. Consequently, where a plaintiff attributes its harm to actors other than the named defendant, the plaintiff fails to show that the claimed injury was traceable to the defendant's action. *See Texas State LULAC v. Elfant*, 52 F.4th 248, 255 (5th Cir. 2022). Likewise, traceability fails where the alleged "bad actor" responsible for the feared harm is a nonparty "not presently before the Court." *Texas Voters All. v. Dallas Cnty.*, 495 F.Supp.3d 441, 455 (E.D. Tex. 2020). In the present case, the Complaint attributes the feared harm to independent third parties: "components manufactured by foreign adversaries," "malicious actors," and "[w]rongdoers, foreign or domestic," using AI to interfere with the proper certification of the election. (Compl. ¶ 5; *id.* ¶ 11). By contrast, Defendant Benge is alleged only to "follow ordinary Texas post-election procedures." (Compl. ¶ 35). And Plaintiffs "do not seek to challenge and do not seek to invalidate any provision of the Texas election code." (Compl. ¶ 8). The alleged causal chain runs through foreign hackers, AI agents, and equipment vendors rather than any act of Defendant Benge. Plaintiffs' alleged injury thus is not fairly traceable to her, so Plaintiffs lack standing in this case. *See Reule*, 114 F.4th at 367; *Lujan*, 504 U.S. at 56.

**E. Statewide Relief Is Not Redressable Against a Single County Official.**

Another "irreducible" essential element of standing is redressability. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021). Redressability requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. It does not exist where "enjoining … future actions will not undo" the alleged harm or where a plaintiff's injury is "essentially independent" of the defendant's conduct, leaving the court "unable to grant relief that would effectively redress the alleged injury." *Texas Voters All.*, 495 F.Supp.3d at 455-56. A similar obstacle arises where a different actor independently causes the harm. *Elfant*, 52 F.4th at 256. And where the requested remedy is aimed at a party who is unable to effectuate the relief fully, the claim fails redressability. *See Lutostansky*, 88 F.4th at 587 (voting system injury not redressable against county defendants, but rather Secretary of State).

Plaintiffs' Complaint presents a structural redressability problem. They seek an order compelling a manual hand count of all ballots "in all precincts in Texas" and manual hand verification of the ballots before confirmation for "all federal races" in Texas. (Compl. at 25-26). Yet, as the Complaint itself alleges, Texas uses "a decentralized election-administration structure in which local authorities conduct the local canvass," and county returns are "then canvassed at the state level." (Compl. ¶ 20). Concurrently, Defendant Benge "supervises elections in Potter County"; she does not control the statewide canvass, the officials of other Texas counties, or the Secretary of State. (Compl. ¶ 15). Self-evidently, this Court cannot deliver the requested statewide relief through an order directed to Defendant Benge. The alleged harm would persist throughout the remainder of Texas regardless of any judgment against her. *See Texas Voters All.*, 495 F.Supp.3d at 456. Additionally, standing does not follow from the conclusion that the injunctive relief sought by a plaintiff would prevent the plaintiff from suffering the same injury

in the future, "which is always true when a plaintiff seeks an injunction prohibiting a defendant from repeating an action that injured the plaintiff in the past." *Stringer*, 942 F.3d at 721. Rather, Plaintiffs must also show that there is a substantial risk that they will suffer the potential future injury absent their requested relief. *Id*. Plaintiffs' alleged injury is too speculative for this purpose, and the alleged statewide harm will not be averted by relief against Defendant Benge.

**F. PCRP Cannot Manufacture Standing Through Its Own Expenditures.**

PCRP lacks organizational standing. An organization may have standing either by showing it can sue on behalf of its members ("associational standing") or sue in its own right ("organizational standing"). *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 285 (5th Cir. 2025), *cert. denied*, ___ U.S. ___, 146 S.Ct. 2781 (2026). Associational standing is derivative of the standing of the association's members, requiring that (1) they have standing, and (2) that the interests the association seeks to protect be germane to its purpose. *Id*. Since the injury alleged in the Complaint is common to all voters in Potter County (and Texas), the individual members of the PCRP lack standing which, in turn, deprives PCRP of associational standing. *See Lujan*, 504 U.S. at 560-61; *see also La Union Del Pueblo Entero*, 151 F.4th at 285.

Organizations suing on their own behalf, invoking organizational standing, must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals. *La Union Del Pueblo Entero*, 151 F.4th at 285. "But an organization that has not suffered a concrete injury caused by a defendant's actions cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's actions." *Food & Drug Admin*., 602 U.S. at 394. Following from this precept, the Fifth Circuit has concluded that a resource-diversion theory is "foreclosed" because "an organization's diversion of resources in response to a defendant's action cannot confer standing." *La Union del Pueblo Entero v. Abbott*,

187 F.4th 690, 697 (5th Cir. 2026). Here, PCRP alleges only that it "expends … time, resources and manpower" on election advocacy and voter education and sues "on behalf of its members[.]" (Compl. ¶ 13). While PCRP has only the same generalized grievance as all other voters, *Gill*, 585 U.S. at 68, its expenditure assertion presents no more than self-initiated spending that is insufficient to bootstrap its own standing from the dry well of its members' standing. *See Food & Drug Admin.*, 602 U.S. at 394.

## II. The *Purcell* Principle Independently Bars the Eve-of-Election Relief Plaintiffs Seek.

Even if Plaintiffs could clear the jurisdictional bar of standing, the extraordinary relief they request is independently foreclosed by the *Purcell* principle. The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020). Court orders affecting elections can themselves result in voter confusion and consequent incentive to remain away from the polls, a risk that only increases as the election draws nearer. *Purcell v. Gonzales*, 549 U.S. 1, 4-5 (2006). The principle from these cases is clear: "court changes of election laws close in time to the election are strongly disfavored." *Tex. All. for Retired Americans v. Hughs*, 976 F.3d 564, 567 (5th Cir. 2020).

The *Purcell* principle may be overcome if (1) the underlying merits are entirely clearcut in favor of the plaintiff, (2) the plaintiff would suffer irreparable harm absent the injunction, (3) the plaintiff has not unduly delayed bringing the complaint to court, and (4) the changes in question are the least feasible before the election without significant cost. *La Union Del Pueblo Entero v. Abbott*, 119 F.4th 404, 409 (5th Cir. 2024). A complaint with merits that are not "entirely clearcut" fails "at the very first step." *Id.*

At best, Plaintiffs' assertions fail to satisfy the first, second, and fourth conditions. They filed suit on October 27, 2026, days before the November 3, 2026 election, and asked the Court to enjoin certification "until the required manual paper-verification procedure has been fully completed by hand counting all paper election records or ballots in all precincts in Texas." (Compl. ¶¶ 35, 55, 61; Compl. at 25). As discussed above and below, the merits are anything but clearcut since the Complaint shows neither standing nor a viable Fourteenth Amendment claim. *See La Union Del Pueblo Entero*, 119 F.4th at 409. At the same time, superimposing a statewide full manual hand count of every paper ballot in every Texas precinct onto the existing certification process is the antithesis of a change that could be implemented "without significant cost, confusion, or hardship." *Id*. (quoting *Merrill v. Milligan*, ___ U.S. ___, 142 S.Ct. 879, 881 (2022) (Kavanaugh, J., concurring)). It follows that the *Purcell* principle provides an independent basis to deny the relief sought by Plaintiffs.

## III. The Complaint Fails to State a Claim Under the Fourteenth Amendment.

Even if Plaintiffs had standing, Count I of their Complaint fails to state a claim. Section 1983 supplies no substantive rights on its own, and not every dispute about election administration is a constitutional violation. *Broyles v. Texas*, 618 F.Supp.2d 661, 694 (S.D. Tex. 2009). The Complaint falls short of the threshold on any applicable theory: it identifies no protected interest, no severe burden under the governing *Anderson*/*Burdick* framework, no disparate treatment, and no willful conduct of the kind § 1983 reaches in election cases.

### A. Plaintiffs Identify No Protected Liberty or Property Interest.

Precisely what kind of Fourteenth Amendment claim Plaintiffs urge is somewhat unclear. If it is a procedural due process claim, such a claim imposes a threshold requirement to show a cognizable liberty or property interest of which Plaintiffs have been deprived. *Matthews v.*

*Eldridge*, 424 U.S. 319, 332 (1978). The Fifth Circuit has applied this rule to the election context, pointing out that it "found no court that has held that the right to vote – much less the alleged right to vote by mail – is a property interest." *Richardson v. Texas Sec'y of State*, 978 F.3d 220, 230 (5th Cir. 2020). Accordingly, it concluded that the Secretary of State was likely to show that the plaintiffs had "alleged no cognizable liberty or property interest that could serve to make out a procedural due process claim." *Id*. at 233. Plaintiffs here assert a "constitutional right … to pre-certification verification, based on paper records or ballots," (Compl. ¶ 59) but assert no deprivation of any recognized interest. (*See* Compl. ¶ 53). If the right to vote itself is not a protected interest under Fifth Circuit law, a claimed right to a particular method of post-election verification is not one either. *See Richardson*, 978 F.3d at 230. To the extent Count I asserts a procedural due process theory, it fails as a matter of law.

### B. The *Anderson/Burdick* Framework Forecloses Any Substantive Due Process Claim.

Challenges to state election procedures are governed by the *Anderson/Burdick* balancing test, not strict scrutiny. *La Union del Pueblo Entero v. Abbott*, 167 F.4th 743, 761 (5th Cir. 2026). Under that framework, a court weighs "the character and magnitude of the asserted injury" against "the precise interests put forward by the State." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). When a law imposes only "reasonable, nondiscriminatory restrictions," "the State's important regulatory interests are generally sufficient to justify" them. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Strict scrutiny is reserved for severe burdens. *Anderson*, 460 U.S. at 788. The Complaint here alleges no burden at all on Plaintiffs' ability to vote; it argues only that Texas should conduct a more extensive audit than state law already requires. (Compl. ¶ 21). Indeed, Plaintiffs acknowledge that Texas law "independently requires a post-election hand-count audit," conducted at randomly selected locations and precincts. (Compl. ¶ 10; *id*. ¶ 21). In other words,

Plaintiffs do not allege that their right to vote is burdened, but rather that their interest in accuracy and electoral integrity demands more procedure. But the extant audit procedures under Texas law are reasonable and nondiscriminatory, thus readily satisfying the State's interests under *Anderson*/*Burdick*. Hence, Count I states no substantive due process violation. *See Anderson*, 460 U.S. at 789; *Burdick*, 504 U.S. at 434.

### C. Plaintiffs Allege No Disparate Treatment Cognizable Under Equal Protection.

An equal protection claim in the voting context requires arbitrary and disparate treatment of similarly situated voters. *See Bush v. Gore*, 531 US. 98, 104 (2000). In *Bush*, the Supreme Court found an equal protection violation because a statewide recount lacked uniform standards and produced "unequal evaluation of ballots" across counties. 531 U.S. at 105-06. The question, the court emphasized, was "not whether local entities … may develop different systems for implementing elections." Id. at 109. The guarantee of the Fourteenth Amendment is the right "to participate on an equal basis with other qualified voters." *League of United Latin Am. Citizens v. Abbott*, 951 F.3d 311, 313 (5th Cir. 2020). A class-of-one theory likewise requires intentional differential treatment of similarly situated persons without a rational basis. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008). But the Plaintiffs here argue the opposite of disparate treatment: the Complaint challenges the across-the-board electronic tabulation of votes, not any unequal treatment of any class of voters. (Compl. ¶ 7). Further, the relief it seeks is a uniform statewide hand count. (Compl. at 25). The Complaint identifies no individual voter or class of voters singled out for treatment different from any other. (Compl. ¶ 53). Accordingly, it fails to state an equal protection claim

### D. The Alleged Election Irregularity Is Not Cognizable Under Section 1983.

Section 1983 reaches an election dispute only where there is "willful conduct" that "undermines the organic processes by which candidates are elected." *Broyles*, 618 F.Supp.2d at 694 (quoting *Kozuszek v. Brewer*, 546 F.3d 485, 488 (7th Cir. 2008)). The alleged irregularity must implicate "the very integrity of the electoral process," reaching "a point of patent and fundamental unfairness[.]" *Id*. Logically, then, it must "go well beyond the ordinary dispute over the counting and marking of ballots" even if "garden variety" errors control the outcome of the election. *Id*. Nowhere in the Complaint is there an allegation of willful misconduct by Defendant Benge, nor is any intent to affect any outcome alleged. It alleges only that she will "follow the ordinary Texas post-election procedures and will not voluntarily conduct the additional Texas statewide manual hand-counting of all of the paper records or ballots cast in all Texas precincts for the statewide federal office, as requested here." (Compl. ¶ 35). At the same time, Plaintiffs do "not seek to challenge any provision of the Texas election code." (Compl. ¶ 8). A disagreement about whether the state's existing audit should be more extensive is a quintessential dispute over the counting of ballots, not the willful, integrity-undermining conduct that § 1983 reaches. *See Broyles*, 618 F.Supp.2d at 694.

### E. HAVA Provides No Privately Enforceable Right.

To the extent Count I rests on the Help America Vote Act ("HAVA"), 42 U.S.C. § 15301 *et seq*., the statute cannot supply the federal right that § 1983 requires. A private right of action "must be created by Congress," and a court must find that the statute displays an intent to create "not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Absent that intent, no private cause of action exists, and a court may not create one. *Id*. at 287. "Raising up causes of action where a statute has not created them may be a proper

function for common-law courts, but not for federal tribunals." *Id*. Returning to HAVA, the Fifth Circuit has held that "HAVA does not itself create a private right of action." *Morales-Garza v. Lorenzo-Giguere*, 277 Fed. App'x 444, 446 (5th Cir. 2008). Further, HAVA's two express enforcement mechanisms preclude an implied private remedy. *Texas Voters All.*, 495 F.Supp.3d at 459. And the Supreme Court, addressing a request for emergency relief, found private litigants "not sufficiently likely to prevail on the question of whether Congress has authorized" a district court to enforce a HAVA provision in a private action. *Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008). Plaintiffs invoke HAVA's requirement of a "voter-verifiable paper record with the manual audit capacity" as support for their asserted right, and rely on federal audit conditions, (Compl. ¶¶ 29, 31) but HAVA confers no privately enforceable right, and any claim resting on that theory fails as a matter of law.

### F. The Complaint's Allegations of Risk Are Conclusory Under *Twombly/Iqbal*.

Well-known federal pleading standards require a complaint to offer "more than labels and conclusions" and to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A court disregards allegations that are "no more than conclusions" and "not entitled to the assumption of truth," the asks whether the remaining facts plausibly establish a right to relief. *Iqbal*, 556 U.S. at 679. It is the conclusory nature of allegations, rather than any fanciful quality, that disentitles them to the presumption of truth. *Id*. at 681. Facial plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Stripped of its conclusions, the Complaint here pleads only that machines "could potentially" be compromised, and that they face an "imminent risk" of tampering. (Compl. ¶¶ 5, 11). That threat is supported by generalized national threat assessments, rather than facts about

Potter County's equipment. (*See* Compl. ¶¶ 3-6). Since Plaintiffs acknowledge no past Potter County result was altered, (Compl. ¶ 32) what remains establishes at most a sheer possibility of future harm that falls short of the plausibility standard. *See Iqbal*, 556 U.S. at 678-79.

**IV. Count II Fails Because the Declaratory Judgment Act Creates No Independent Cause of Action.**

Count II, which seeks a declaratory judgment, is wholly derivative of Count I and fails with it. The Declaratory Judgment Act is "remedial only"; it enlarged the available remedies but did not extend the jurisdiction of federal courts, and it "merely recognizes that the case or controversy requirement of Art. III … applies in the declaratory judgment context." *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential for Neighborhoods, (HAVEN)*, 915 F.2d 167, 170-71 (5th Cir. 1990). The Act thus presupposes an underlying justiciable controversy and "does not allow a stranger to intended litigation to use a declaratory judgment action as a vehicle to create a cause of action" where it has no standing to seek imposition of liability. *See id*. at 172.

Count II invokes no independent substantive right. It incorporates the same allegations as Count I (Compl. ¶ 57) and seeks only "a declaration that they have a constitutional right under the Fourteenth Amendment … to pre-certification verification." (Compl. ¶ 59). Because the Act's actual-controversy requirement is coterminous with Article III, *HAVEN*, 915 F.2d at 170, the standing defects that bar Count I equally preclude Count II. Since the Act creates no claim of its own, the failure of the Fourteenth Amendment theory disposes of Count II as well. Count II should be dismissed along with Count I.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant Benge respectfully requests that the Court dismiss the Complaint in its entirety for lack of subject-matter jurisdiction under Federal Rule of Civil

Procedure 12(b)(1) or, in the alternative, for failure to state a claim under Rule 12(b)(6), and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

POTTER COUNTY ATTORNEY'S OFFICE
500 South Fillmore, Room 301
Amarillo, Texas 79101
Telephone: (806) 379-2255
Fax: (806) 379-2267

By:__________________________________
Scott Brumley
Potter County Attorney
Texas Bar No. 00783738
Email: scottbrumley@co.potter.tx.us

*Attorney for Defendant Christy Benge*

## CERTIFICATE OF SERVICE

On ___________________, I filed the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas. I hereby certify that I have served the document on all counsel of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2), specifically, through the Court's CM/ECF system.

______________________________________
Scott Brumley
*Attorney for Defendant Christy Benge*