**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| POTTER COUNTY REPUBLICAN PARTY, DANIEL ROGERS, and ALEXANDER HALE, individually and on behalf of all others similarly affected, | § § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | 2:26-CV-215-Z |
| CHRISTY BENGE, in Her Official Capacity as the POTTER COUNTY ELECTIONS ADMINISTRATOR and as Proposed Representative of a Defendant Class of Similarly Situated Texas County Election Officials, | § § § § § § | |
| Defendant. | | |

**PLAINTIFFS' RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT CHRISTY BENGE'S MOTION TO DISMISS (ECF NOS. 59, 63)**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... iii

SUMMARY OF THE RESPONSE ..... 1

STATEMENT OF THE CASE ..... 2

A. The Amended Complaint's Allegations ..... 2

B. Procedural Posture ..... 4

LEGAL STANDARDS ..... 4

ARGUMENT ..... 5

I. PLAINTIFFS HAVE ARTICLE III STANDING. ..... 5

A. Benge Misidentifies the Injury. ..... 5

B. PCRP Has Standing. ..... 5

1. PCRP has associational standing on behalf of its candidate members. ..... 5

2. PCRP has standing in its own right. ..... 6

3. Rogers has standing as county chairman. ..... 6

4. Hale has candidate standing. ..... 7

C. The Fifth Circuit Decisions Benge Cites Do Not Control. ..... 7

D. The Injury Is Concrete and Imminent. ..... 8

E. The Injury Is Traceable to Benge and Redressable by an Order Against Her. ..... 9

II. *PURCELL* DOES NOT SUPPORT DISMISSAL. ..... 10

III. THE REQUESTED REMEDY IS WITHIN THE COURT'S EQUITABLE POWER AND PROMOTES THE ELECTION CODE'S EXPRESS PURPOSES. ..... 11

IV. THE AMENDED COMPLAINT STATES FOURTEENTH AMENDMENT CLAIMS. ..... 13

A. Count I States an Equal Protection Claim. ..... 13

B. Count II: The Right to Vote Includes the Right to Have One's Vote Counted as Cast. ..... 14

C. The *Anderson*/*Burdick* Balance Cannot Be Struck Against Plaintiffs on the Pleadings. ..... 15

D. Count III and Benge's Remaining Arguments. ..... 16

E. The Amended Complaint's Allegations Are Factual and Plausible. ..... 17

V. COUNT IV STANDS WITH COUNTS I THROUGH III. ..... 18

VI. ALTERNATIVELY, ANY DISMISSAL MUST BE WITHOUT PREJUDICE AND WITH LEAVE TO AMEND. ....................18

CONCLUSION AND PRAYER ....................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ....15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....5, 18

*Baker v. Carr*, 369 U.S. 186 (1962) ....14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....5

*Bennett v. Spear*, 520 U.S. 154 (1997) ....9

*Black v. McGuffage*, 209 F. Supp. 2d 889 (N.D. Ill. 2002) ....9, 14

*Bost v. Ill. State Bd. of Elections*, 607 U.S. 71 (2026) ....1, 5–8

*Broyles v. Texas*, 618 F. Supp. 2d 661 (S.D. Tex. 2009) ....16–17

*Bush v. Gore*, 531 U.S. 98 (2000) ....1, 13–14

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ....8

*Daniels v. Williams*, 474 U.S. 327 (1986) ....17

*Dep't of Educ. v. Brown*, 600 U.S. 551 (2023) ....9

*Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008) ....16

*Eubanks v. Nelson*, No. 23-10936, 2024 U.S. App. LEXIS 7982 (5th Cir. Apr. 3, 2024) ....7–8

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ....6

*FEC v. Akins*, 524 U.S. 11 (1998) ....7

*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011) ....2

*Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980) ....17

*Gill v. Whitford*, 585 U.S. 48 (2018) ....7, 10

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) ....18

*Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) ....11–12

*Hotze v. Hudspeth*, 16 F.4th 1121 (5th Cir. 2021) ....7–8

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ....5–6

*Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219 (6th Cir. 2011) ....14, 17

*Jerusalem v. Dep't of State La.*, No. 23-30521, 2024 U.S. App. LEXIS 1187 (5th Cir. Jan. 18, 2024) ....7–8

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) ....16

*King v. Dogan*, 31 F.3d 344 (5th Cir. 1994) ....1

*Kozuszek v. Brewer*, 546 F.3d 485 (7th Cir. 2008) ................16–17

*Kucinich v. Tex. Democratic Party*, 563 F.3d 161 (5th Cir. 2009) ................10

*La Union del Pueblo Entero v. Abbott*, 119 F.4th 404 (5th Cir. 2024) ................10–11

*Lance v. Coffman*, 549 U.S. 437 (2007) ................8

*Larson v. Valente*, 456 U.S. 228 (1982) ................10

*League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008) ................11–14, 16

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ................4, 7

*Lutostanski v. Brown*, 88 F.4th 582 (5th Cir. 2023) ................7–8, 10

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ................16

*Moore v. Ogilvie*, 394 U.S. 814 (1969) ................10

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981) ................4

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) ................11

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ................10–11

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ................18

*Raskin v. Jenkins*, No. 23-10960, 2024 U.S. App. LEXIS 18072 (5th Cir. July 23, 2024) ................7–8

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423 (2020) ................10

*Reynolds v. Sims*, 377 U.S. 533 (1964) ................1, 13

*Richardson v. Tex. Sec'y of State*, 978 F.3d 220 (5th Cir. 2020) ................15

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47 (2006) ................4, 7

*Soltysik v. Padilla*, 910 F.3d 438 (9th Cir. 2018) ................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................2

*Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564 (5th Cir. 2020) ................10

*Tex. Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006) ................6

*Tex. Voters All. v. Dallas Cnty.*, 495 F. Supp. 3d 441 (E.D. Tex. 2020) ................9

*United States v. Classic*, 313 U.S. 299 (1941) ................14

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) ................10

*Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515 (1937) ................11

**Constitutional Provisions**

U.S. Const. art. III ................4

U.S. Const. art. VI, cl. 2 ................15

U.S. Const. amend. XIV ................15, 17

**Statutes**

28 U.S.C. §§ 2201–2202 ........ 18

42 U.S.C. § 1983 ........ 4, 16–18

Tex. Elec. Code § 1.0015 ........ 12

Tex. Elec. Code § 31.043 ........ 9

Tex. Elec. Code § 127.201 ........ 1, 3, 9, 13, 15

**Rules**

Fed. R. Civ. P. 12(b)(1) ........ 4

Fed. R. Civ. P. 12(b)(6) ........ 4–5

Fed. R. Civ. P. 15(a)(1)(B) ........ 1, 18

Fed. R. Civ. P. 15(a)(2) ........ 18

Fed. R. Evid. 201 ........ 2

5th Cir. R. 47.5.4 ........ 8

**Other Authorities**

Cybersecurity & Infrastructure Sec. Agency, *2026 Election Infrastructure Security Plan: Securing the Next 250* (Sept. 2026) ........ 2, 7

Letter from Markwayne Mullin, Sec'y of Homeland Sec., to White House Transparency Task Force (Aug. 24, 2026) ........ 2

Tex. Sec'y of State, *Post-Election Hand Count Audit Guide* (rev. Nov. 4, 2025) ........ 3, 12

Tex. Sec'y of State, *Voting Systems by County* (rev. Sept. 1, 2026) ........ 2

Plaintiffs Potter County Republican Party ("PCRP"), Daniel Rogers, and Alexander Hale oppose Defendant Christy Benge's Motion to Dismiss (ECF No. 59) and amended brief (ECF No. 63).[1] Plaintiffs have filed their First Amended Complaint as a matter of course. Fed. R. Civ. P. 15(a)(1)(B). An amended complaint that does not adopt or incorporate the original by reference supersedes it and renders it of no legal effect, *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam), so a motion directed to the original is moot. If the Court applies the motion to the amended pleading, it fails.

## SUMMARY OF THE RESPONSE

The motion attacks a lawsuit Plaintiffs did not bring. Plaintiffs do not allege that any Texas machine was hacked and do not depend on proof that any official acted with intent. Am. Compl. ¶¶ 16, 49. Texas requires a post-election hand count audit "to ensure the accuracy of the tabulation," Tex. Elec. Code § 127.201(a), but when the records show a discrepancy, each county's custodian alone decides whether anything more is done. Am. Compl. ¶¶ 12–15, 33. The November 3, 2026 reconciliations show differences across the State, so identical ballots receive different protection depending on the county. *Id.* ¶¶ 37–38, 73. That is arbitrary and disparate treatment of votes under *Bush v. Gore* and *Reynolds v. Sims*. Am. Compl. ¶¶ 53, 70–85. The remedy is a hand count of the lawful paper ballots in the federal races, reconciled to the machine totals before certification, under one uniform procedure in every county. *Id.*, Prayer.

Benge's jurisdictional challenge is facial, so the Amended Complaint's allegations control. Hale and PCRP's candidate members have "a concrete and particularized interest in the rules that govern the counting of votes in their elections," win or lose. *Bost v. Ill. State Bd. of Elections*, 607

[1] "Am. Compl." refers to the First Amended Complaint, ECF No. 72; "Br." to Defendant's amended brief, ECF No. 63, by its internal page numbers; and "App." to Plaintiffs' Appendix filed with this response. Internal quotation marks and citations are omitted unless noted.

U.S. 71, 77, 82 (2026); Am. Compl. ¶¶ 19, 26. Benge does not cite *Bost*. And Rogers, PCRP's chairman, appoints watchers whom Benge's system keeps from observing the count. Am. Compl. ¶¶ 20–25.

On the merits, *Purcell* is not a pleading defense, and the *Anderson*/*Burdick* balance Benge invokes cannot be struck against Plaintiffs on a record that does not yet exist. The motion should be denied as moot or, alternatively, denied.

## STATEMENT OF THE CASE

### A. The Amended Complaint's Allegations

The federal government has warned that "[v]oting machines with components manufactured by foreign adversaries introduce significant security risks." Am. Compl. ¶¶ 5, 44. The Secretary of Homeland Security reported that the dominant vendors, including ES&S and Hart InterCivic, acknowledge that their machines contain parts made in China, and concluded that "[t]here is no question that election security is national security." *Id.* ¶¶ 6, 43–44; Letter from Markwayne Mullin, Sec'y of Homeland Sec., to White House Transparency Task Force 1–2 (Aug. 24, 2026) (App. 3–4).[2] In September 2026, the Cybersecurity and Infrastructure Security Agency published its 2026 Election Infrastructure Security Plan, which recommends that officials "[c]onduct post-election manual audits of paper ballots to verify that voting systems function properly and to identify errors before certifying the final results." Am. Compl. ¶¶ 2, 46; Cybersecurity & Infrastructure Sec. Agency, *2026 Election Infrastructure Security Plan: Securing the Next 250*, at 6 (Sept. 2026) (App. 12). Potter County uses Hart InterCivic's Verity system. Am.

[2]Because the Amended Complaint quotes and describes this letter, Am. Compl. ¶¶ 43–44, the Court may consider it incorporated by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Plaintiffs also ask the Court to take judicial notice of the official agency publications cited here. Fed. R. Evid. 201(b)(2), (c)(2); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

Compl. ¶ 20; Tex. Sec'y of State, *Voting Systems by County* (rev. Sept. 1, 2026) (App. 6). DHS and FEMA have conditioned federal grant funds on a post-election manual audit of at least five percent of paper ballots in federal elections. Am. Compl. ¶¶ 9, 48.

Texas requires only a sample count, one percent of locations or three, whichever is greater. Am. Compl. ¶¶ 10, 33; *see* Tex. Elec. Code § 127.201(a). When the records show a discrepancy, the custodian may add locations to the audit but need not, and the Secretary of State's guidance directs only that a hand-count discrepancy that cannot be resolved be documented. Am. Compl. ¶ 13; Tex. Sec'y of State, *Post-Election Hand Count Audit Guide* 20 (rev. Nov. 4, 2025) (App. 10). Texas prescribes no uniform consequence when the election-night reconciliation of voters to counted ballots does not match. Am. Compl. ¶¶ 14, 36. The November 3, 2026 reconciliations show differences in Harris County (–4,085), Dallas County (–544), Randall County (–71), and Lubbock County (+245), and each county decides whether and how to resolve them. *Id.* ¶¶ 37–38. Many systems record selections in QR codes voters cannot read, so the paper ballot is an independent check only if officials compare it to the machine totals. *Id.* ¶¶ 11, 50–51.

PCRP is the Republican Party's county organization; its members include voters and candidates, and it sues for them and in its own right. Am. Compl. ¶ 19. Rogers, its chairman, appoints his party's watchers, whom Texas law entitles to observe the tabulation of ballots, but because Potter County's scanners count a QR code no person can read, they cannot observe the count. *Id.* ¶¶ 20–23. In 2022, the printed candidate name on thousands of Potter County ballot records was wrong for days, an error no watcher could detect. *Id.* ¶ 24. Hale was the Republican nominee for Congress in District 7, and a member of the proposed defendant class counted and certified his race. *Id.* ¶¶ 26, 57. Benge, Potter County's Elections Administrator and general

custodian of election records, conducts the audit and decides whether a discrepancy leads to any further count or correction. *Id.* ¶ 27.

Under 42 U.S.C. § 1983, Count I alleges that standardless, county-by-county treatment of identical discrepancies violates the Equal Protection Clause; Count II, that it burdens the right to have one's vote counted as cast; and Count III, that certifying federal results while discrepancies documented by the State's own audit remain unresolved is fundamentally unfair. Am. Compl. ¶¶ 70–85. Count IV seeks a declaration. *Id.* ¶¶ 86–88. Plaintiffs ask the Court to preserve the November 3, 2026 records; to order, before final certification, a hand count of the lawful paper ballots in the federal races, reconciled to the machine totals, in Potter County by counting teams drawn from both county chairmen's nominees and observed by both parties' watchers, and in every county of the defendant class under uniform procedures the Court fashions; to confirm the federal results by that count where it differs from the machine count; and to require uniform standards in future federal elections. *Id.*, Prayer.

### B. Procedural Posture

Plaintiffs sued on October 27, 2026. ECF No. 1. On November 9, Benge moved to dismiss under Rules 12(b)(1) and 12(b)(6), submitting no evidence. ECF Nos. 59, 63. On November 14, 2026, Plaintiffs filed their First Amended Complaint as a matter of course. ECF No. 72.

## LEGAL STANDARDS

When a defendant "merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And "the presence of one party with standing is sufficient to

satisfy Article III's case-or-controversy requirement," *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006). Under Rule 12(b)(6), the Court accepts well-pleaded facts as true and asks whether they state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Plausibility "does not impose a probability requirement at the pleading stage." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## ARGUMENT

## I. PLAINTIFFS HAVE ARTICLE III STANDING.

### A. Benge Misidentifies the Injury.

Benge assumes the injury is "potential foreign actor and AI-assisted third-party interference." ECF No. 59 at 1–2; Br. 11–14. It is not. The pleaded injury is present and concrete: because each custodian decides whether a documented discrepancy leads to any further count or correction, Plaintiffs' ballots, and those in their candidates' races, receive less protection than identical ballots elsewhere. Am. Compl. ¶¶ 13–15, 20, 53. Rogers's injury is also statutory and personal: the watchers he appoints cannot observe the count. *Id.* ¶¶ 21–25. Neither injury depends on a hack; the federal warnings explain why an independent check matters. *Id.* ¶ 49. A candidate challenging the rules for counting votes in his election need not prove that those rules already produced a wrong result. *See Bost*, 607 U.S. at 77, 79.

### B. PCRP Has Standing.

#### *1. PCRP has associational standing on behalf of its candidate members.*

An association may sue for its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*,

432 U.S. 333, 343 (1977). *First*, PCRP's members include candidates, Am. Compl. ¶ 19, and candidates have standing "to challenge the rules that govern the counting of votes" in their elections, *Bost*, 607 U.S. at 83. A candidate's harm "is in no sense 'common to all members of the public.'" *Id.* at 78. Whether a documented discrepancy between the paper and the machine count is resolved before certification is a rule governing the counting of votes. *Bost* thus answers Benge's contention that PCRP's members suffer only a grievance common to every voter, Br. 16, and her vote-dilution argument, Br. 13. *Second*, accurate counting in its candidates' races is germane to a county party. Am. Compl. ¶ 19. *Third*, declaratory and injunctive relief does not "require[] individualized proof." *Hunt*, 432 U.S. at 344; *see Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 588 (5th Cir. 2006). If PCRP must name a candidate member, the remedy is leave to do so, not dismissal. *See* Part VI, *infra*.

***2. PCRP has standing in its own right.***

A party suffers direct injury from conduct threatening its "election prospects," *Benkiser*, 459 F.3d at 586, and the political power that electoral victory confers: "[w]hile power may be less tangible than money, threatened loss of that power is still a concrete and particularized injury sufficient for standing purposes," *id.* at 587. PCRP does not rest on money spent in response to Benge's conduct, so her diversion-of-resources authority is beside the point. Br. 16–17 (citing *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024)). The injury falls on PCRP's core function, electing its nominees, the kind of effect on "core business activities" that *Hippocratic Medicine* distinguished. 602 U.S. at 395.

***3. Rogers has standing as county chairman.***

As county chairman, Rogers appoints watchers whom Texas law entitles to observe the tabulation of ballots, a right that cannot be exercised when the count is a scanner's reading of a

QR code. Am. Compl. ¶¶ 21–25. The federal government's election-security agency identifies "allowing observers to be present during ballot counting" as a practice "specifically designed to reduce the likelihood and impact of insider threats." *2026 Election Infrastructure Security Plan*, *supra*, at 8 (App. 13); *see* Am. Compl. ¶ 46. A person "who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy," *Lujan*, 504 U.S. at 572 n.7, and the denial of information a statute entitles a plaintiff to obtain is a concrete injury, *FEC v. Akins*, 524 U.S. 11, 21 (1998). Only two people in Potter County hold Rogers's office, and the injury recurs every election. Am. Compl. ¶ 25. In any event, because PCRP has standing, the Court need not decide whether Rogers independently does. *Rumsfeld*, 547 U.S. at 52 n.2.[3]

#### *4. Hale has candidate standing.*

Hale was the Republican nominee for Congress in District 7 in the November 3, 2026 general election. Am. Compl. ¶¶ 26, 57. Under *Bost*, he has a concrete and particularized interest in the rules that govern the counting of votes in his election. 607 U.S. at 82. A member of the proposed defendant class counted, audited, and certified his race, Am. Compl. ¶ 26, so the class relief sought traces to and redresses his injury.

### C. The Fifth Circuit Decisions Benge Cites Do Not Control.

Benge relies on *Lutostanski v. Brown*, 88 F.4th 582 (5th Cir. 2023), *Hotze v. Hudspeth*, 16 F.4th 1121 (5th Cir. 2021), and four unpublished decisions. Br. 8–10. None decided whether a

[3]Rogers also preserves his position that a voter who cannot confirm that his ballot was counted as cast suffers a personal injury. Am. Compl. ¶¶ 20, 53, 56; *see Gill v. Whitford*, 585 U.S. 48, 65–66 (2018); *FEC v. Akins*, 524 U.S. 11, 24 (1998) ("where a harm is concrete, though widely shared, the Court has found 'injury in fact'"). Plaintiffs recognize that *Bost* described voters' interest in an accurate tally as "general," 607 U.S. at 78, and that the Fifth Circuit has treated voter challenges to electronic voting as generalized grievances, *Lutostanski v. Brown*, 88 F.4th 582, 586 (5th Cir. 2023), and preserve the issue.

party or candidate may challenge the rules for counting votes in its races. Self-represented voters brought *Lutostanski*, *Raskin*, *Jerusalem*, and *Eubanks*, alleging that voting machines were "uncertified" or otherwise unlawful; most sought to prohibit electronic voting altogether. *Lutostanski*, 88 F.4th at 585–86; *Raskin v. Jenkins*, No. 23-10960, 2024 U.S. App. LEXIS 18072, at *2–3 (5th Cir. July 23, 2024) (per curiam); *Jerusalem v. Dep't of State La.*, No. 23-30521, 2024 U.S. App. LEXIS 1187, at *1–2 (5th Cir. Jan. 18, 2024) (per curiam); *Eubanks v. Nelson*, No. 23-10936, 2024 U.S. App. LEXIS 7982, at *7–9 (5th Cir. Apr. 3, 2024) (per curiam). Their injury was that the law "has not been followed," the paradigm generalized grievance. *Lutostanski*, 88 F.4th at 586 (quoting *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam)). The *Lutostanski* and *Eubanks* plaintiffs did "not allege that their votes have or will be treated differently from other votes." *Eubanks*, 2024 U.S. App. LEXIS 7982, at *10. Plaintiffs allege exactly that: identical ballots receive different protection depending on the county. Am. Compl. ¶¶ 13–15, 73. They seek to ban no equipment, *id.* ¶ 8, and Rogers pleads a statutory observation right the system defeats and a documented prior failure in Benge's own county, *id.* ¶¶ 21–24.

None of these cases decided the candidate theory. *Eubanks* held the candidate theory forfeited for inadequate briefing, 2024 U.S. App. LEXIS 7982, at *12–13, and *Hotze* held it forfeited too, 16 F.4th at 1124, and called the question "far from clear," *id.* at 1124 n.2. *Hotze* did hold that the claim that drive-through voting hurt the "integrity" of the election process was "far too generalized." *Id.* at 1124. But *Bost*, decided after all these cases, cited Judge Oldham's *Hotze* dissent, 607 U.S. at 78, and recognized that candidates' interest "extends to the integrity of the election," *id.* at 82. And the unpublished decisions are not precedent. 5th Cir. R. 47.5.4.

**D. The Injury Is Concrete and Imminent.**

Benge's reliance on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), is misplaced. Br. 11–13. The *Clapper* injury depended on a "highly attenuated chain of possibilities." 568 U.S. at 410. Nothing here turns on speculation. The challenged rule exists now, and the November 3, 2026 reconciliations already show differences each county will handle as it chooses. Am. Compl. ¶¶ 13–15, 37–38, 52. Nor must a voter prove that his own ballot was miscounted. Because voting is anonymous, "it is impossible for any one voter to know with more certainty that their intended votes were not counted." *Black v. McGuffage*, 209 F. Supp. 2d 889, 895 (N.D. Ill. 2002). And *Department of Education v. Brown*, 600 U.S. 551, 564 (2023), cited at Br. 13, concerned a "wholly discretionary decision" to adopt a benefits program, not what an official will do with Plaintiffs' votes.

**E. The Injury Is Traceable to Benge and Redressable by an Order Against Her.**

*Traceability.* As general custodian of Potter County's election records, Benge conducts its post-election hand count audit and decides whether a discrepancy leads to any further count, investigation, or correction. Am. Compl. ¶¶ 27, 33, 52; *see* Tex. Elec. Code § 31.043. The challenged discretion is hers, as are the procedures that keep Rogers's watchers from observing the count. Am. Compl. ¶ 25. Traceability does not require that the defendant's conduct be "the very last step in the chain of causation," *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997), and unlike the "bad actor" "not presently before the Court" in Benge's authority, *Tex. Voters All. v. Dallas Cnty.*, 495 F. Supp. 3d 441, 455 (E.D. Tex. 2020), the defendant's own conduct is the injury here.

*Redressability.* An order requiring Benge to hand count the lawful paper ballots in Potter County's federal races before certification, reconciled to the machine totals and observed by both parties' watchers, would redress the injury to PCRP, its candidate members, and Rogers where they vote and compete. Am. Compl. ¶ 25 & Prayer. In a general election the Secretary of State

selects the audit sample, Tex. Elec. Code § 127.201(b), but Benge conducts the count and, under the Secretary's procedures, "may select additional precincts and polling places to be counted," *id.* § 127.201(a), (b-3). Benge objects that she cannot deliver statewide relief. Br. 15–16. But a plaintiff "need not show that a favorable decision will relieve his every injury," *Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982), and "the ability 'to effectuate a partial remedy' satisfies the redressability requirement," *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021). The count in every other county comes through the defendant class, and whether that relief issues turns on class certification and on whether it is "tailored to redress the plaintiff's particular injury," *Gill*, 585 U.S. at 73. Those are questions for later, not grounds to dismiss now.

Nor did *Lutostanski* hold that county officials were the wrong defendants. *Contra* Br. 15. It held forward-looking relief unredressable because the Secretary had since certified the challenged system and the plaintiffs showed no imminent risk of future harm. 88 F.4th at 586–87. Here, the challenged procedure has not changed and will govern every federal election Benge certifies. Am. Compl. ¶¶ 52, 54.[4]

## II. *PURCELL* DOES NOT SUPPORT DISMISSAL.

Benge's *Purcell* argument fails for three reasons. Br. 17–18. *First*, *Purcell* guides whether a federal court should alter election rules by injunction shortly before an election: "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam). It supplies no basis for dismissal, and every case Benge cites arose on an application to stay or vacate an injunction.

[4]Benge does not argue mootness, and neither the close of the polls nor completion of the canvass would moot this action. The Amended Complaint seeks declaratory and injunctive relief governing future federal elections, Am. Compl., Prayer, and Benge will administer them under the same procedures, *id.* ¶ 52. "Many claims that implicate election laws" fall within the exception for controversies "capable of repetition, yet evading review." *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 164 (5th Cir. 2009); *see Moore v. Ogilvie*, 394 U.S. 814, 816 (1969).

*See Purcell v. Gonzalez*, 549 U.S. 1, 4–6 (2006) (per curiam); *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 567 (5th Cir. 2020) (per curiam); *La Union del Pueblo Entero v. Abbott*, 119 F.4th 404, 407, 409 (5th Cir. 2024).

*Second*, the election is over. *Purcell* rests on the concern that court orders "can themselves result in voter confusion and consequent incentive to remain away from the polls." 549 U.S. at 4–5. A count of the paper ballots the election already generated changes nothing about how, when, or where anyone votes. Am. Compl. ¶¶ 8, 55. Nor does the relief raise the concern in *La Union del Pueblo Entero*, where an injunction left a ballot-handling law unenforceable in six counties while it remained "fully in effect" "[e]verywhere else in Texas." 119 F.4th at 408–09. Plaintiffs seek one uniform procedure in every county. *Third*, *Purcell* itself recognized that "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." 549 U.S. at 4. A full hand count before certification serves that interest. Timing may bear on the scope of interim relief, but not on whether the Amended Complaint states a claim.

## III. THE REQUESTED REMEDY IS WITHIN THE COURT'S EQUITABLE POWER AND PROMOTES THE ELECTION CODE'S EXPRESS PURPOSES.

Federal courts have broad equitable power to remedy the constitutional violations they find. Where a court's equitable jurisdiction is invoked, "[u]nless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake." *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) (citing *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937)). Federal courts should not be "asked to count and validate ballots and enter into the details of the administration of the election," but intervention may be appropriate in a challenge to "the fairness of the official terms and procedures

under which the election was conducted." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978)). *Brunner* noted that the plaintiffs there were "not asking . . . for a recount." *Id.* Plaintiffs do seek a count, but not one the Court would conduct. Texas officials would count the paper ballots already in their custody, using the records, personnel, and procedures the State uses for its own audit, under uniform standards the Court sets. Am. Compl. ¶¶ 55, 79 & Prayer. The Court would not "examine the validity of individual ballots"; it would remedy "an officially-sponsored election procedure which, in its basic aspect, [is] flawed." *Griffin*, 570 F.2d at 1078.

The count must reach every lawful paper ballot in the federal races. A count triggered only by an unresolved discrepancy would leave the trigger with the same custodian whose unguided discretion is challenged: a discrepancy she treats as resolved ends the inquiry, and the State's guidance requires only that one she cannot resolve be documented. Am. Compl. ¶¶ 13, 15; *Post-Election Hand Count Audit Guide*, *supra*, at 20 (App. 10). A complete count of the lawful paper ballots, reconciled to the machine totals before certification, is the one uniform standard no custodian can avoid.

A full hand count also promotes the Election Code's express purposes, though the Court's authority rests on federal law. The Legislature declared its intent "that the application of this code and the conduct of elections be uniform and consistent throughout this state to reduce the likelihood of fraud in the conduct of elections, protect the secrecy of the ballot, promote voter access, and ensure that all legally cast ballots are counted." Tex. Elec. Code § 1.0015. Resolving identical discrepancies in some counties while merely documenting them in others is neither uniform nor consistent; one count conducted the same way in every county is both. Am. Compl. ¶¶ 15, 73.

## IV. THE AMENDED COMPLAINT STATES FOURTEENTH AMENDMENT CLAIMS.

### A. Count I States an Equal Protection Claim.

"The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–05 (2000) (per curiam). The right may be denied "by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). In *Bush*, "[t]he problem inheres in the absence of specific standards to ensure its equal application." 531 U.S. at 106.

Count I applies those principles. Texas created an audit "to ensure the accuracy of the tabulation," Tex. Elec. Code § 127.201(a), but leaves each custodian, without any standard, to decide whether a discrepancy leads to any further count, investigation, or correction. Am. Compl. ¶¶ 12–15, 33, 72. The November 3, 2026 reconciliations show such differences across the State. *Id.* ¶¶ 37–38. Identical discrepancies are thus expanded and resolved in some counties and merely documented in others, and identical ballots in the same federal election receive different protection depending on where they are cast. *Id.* ¶ 73. Benge answers that Plaintiffs identify no voter singled out, Br. 20, but the absence of a uniform standard is itself the source of the unequal treatment.

*Bush* said its "consideration is limited to the present circumstances" and did not decide "whether local entities, in the exercise of their expertise, may develop different systems for implementing elections." 531 U.S. at 109. But courts have applied its principles to claims like Count I. *See Brunner*, 548 F.3d at 477. Where Illinois left the choice of voting system to local authorities, the court in *Black* explained that "the lack of a uniform standard of voting results in voters being treated arbitrarily in the likelihood of their votes being counted," and held that,

"[e]ven without a suspect classification or invidious discrimination," the plaintiffs stated an equal protection claim. 209 F. Supp. 2d at 899. The Sixth Circuit held that allegations that a voting system burdened voters differently "county to county, city to city, and precinct to precinct" could establish an equal protection violation. *Brunner*, 548 F.3d at 476–78. It later contrasted "more general administrative decisions," citing *Bush*'s caveat, with a county board's post-election discretion over counting, where "the cause for constitutional concern is much greater" and the board "must apply specific and uniform standards." *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 235–36 (6th Cir. 2011). So too with the post-election discretion Texas leaves each county custodian. Am. Compl. ¶¶ 13, 15, 33.

**B. Count II: The Right to Vote Includes the Right to Have One's Vote Counted as Cast.**

"Obviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted at Congressional elections." *United States v. Classic*, 313 U.S. 299, 315 (1941). The Constitution secures a citizen's "right to a vote free of arbitrary impairment by state action," including "dilution by a false tally." *Baker v. Carr*, 369 U.S. 186, 208 (1962). "The right to vote includes the right to have one's vote counted on equal terms with others." *Brunner*, 548 F.3d at 476.

Count II applies those principles. A voter whose ballot is tabulated from a barcode or QR code cannot confirm that the encoding matches his selections, and the only independent check, the post-election hand count audit, carries no mandatory consequence when it reveals a discrepancy. Am. Compl. ¶¶ 50–51, 78. The State has no legitimate interest in leaving documented discrepancies unresolved or treating identical discrepancies differently by county. *Id.* ¶ 79.

Benge stresses that Plaintiffs challenge no Election Code provision and that she follows state law. Br. 1, 3, 14, 21. Neither point helps her. Plaintiffs do not ask the Court to invalidate the

statute, which sets a minimum sample, "at least" one percent of locations or three, and lets the custodian "select additional precincts and polling places to be counted." Tex. Elec. Code § 127.201(a), (b-3); *see* Am. Compl. ¶¶ 8, 16. Compliance with state law is no answer to a claim that the procedure falls short of what the Fourteenth Amendment requires. *See* U.S. Const. art. VI, cl. 2. Nor do the claims depend on the Code's current text. The Fourteenth Amendment, not the Election Code, defines the right, and it will govern whatever procedures Texas adopts.

### C. The *Anderson*/*Burdick* Balance Cannot Be Struck Against Plaintiffs on the Pleadings.

Benge agrees that the *Anderson*/*Burdick* framework governs, Br. 19, and the Fifth Circuit has concluded that it "provides the appropriate test" for due-process challenges to election laws. *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 233–35 (5th Cir. 2020). The Court "must first consider the character and magnitude of the asserted injury," then "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule," and "consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

Benge does not perform that analysis. She identifies no state interest served by leaving documented discrepancies unresolved or treating identical discrepancies differently by county, offering only the conclusion that Texas's sample count is "reasonable and nondiscriminatory." Br. 20. Whether it is depends on facts not before the Court: the vulnerabilities the federal government identified, Am. Compl. ¶¶ 3–6, 40–48; whether a one-percent sample with no mandatory consequence can detect and correct tabulation errors, *id.* ¶¶ 10–15, 33–34; the federal five-percent audit condition, *id.* ¶¶ 9, 48; and the feasibility of a pre-certification count, *id.* ¶ 55. The Ninth Circuit reversed a dismissal that struck this balance on the pleadings: "without any factual record at this stage, we cannot say that the Secretary's justifications outweigh the

constitutional burdens on Soltysik as a matter of law." *Soltysik v. Padilla*, 910 F.3d 438, 447 (9th Cir. 2018). So too here.

**D. Count III and Benge's Remaining Arguments.**

*Procedural due process.* Benge argues that Plaintiffs identify no liberty or property interest under *Mathews v. Eldridge*, 424 U.S. 319 (1976). Br. 18–19. The Amended Complaint asserts no procedural due process claim. Am. Compl. ¶ 84. Count III alleges substantive due process: certifying federal results while discrepancies documented by the State's own audit remain unresolved, under a regime requiring no further inquiry, is fundamentally unfair. *Id.* ¶¶ 82–83. The Sixth Circuit drew the same line, holding that allegations that a State "utilizes 'non-uniform rules, standards, and procedures,'" supported by "specific factual allegations," could present "the exceptional case where a state's voting system is fundamentally unfair," while dismissing a procedural due process claim. *Brunner*, 548 F.3d at 478–79. And pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

*Equal protection.* Benge argues that the original Complaint alleged no disparate treatment. Br. 20. The Amended Complaint does, as Part IV.A shows. Her class-of-one authority, *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 607 (2008), concerned public employment and a theory Plaintiffs do not plead.

*"Willful conduct."* Benge contends that § 1983 reaches election disputes only upon willful conduct that undermines the electoral process. Br. 21 (citing *Broyles v. Texas*, 618 F. Supp. 2d 661, 694 (S.D. Tex. 2009), and *Kozuszek v. Brewer*, 546 F.3d 485, 488 (7th Cir. 2008)). *Kozuszek* concerned two ballots officials "spoiled (i.e., did not count)," 546 F.3d at 486, and *Broyles*, while calling "the refusal to hold a manual recount" a "garden variety" irregularity, recognized that "the

dilution of votes by reason of . . . weighted voting systems" has risen to the level of a constitutional violation, 618 F. Supp. 2d at 694. The Fifth Circuit distinguishes "state laws and patterns of state action that systematically deny equality in voting" from "episodic events," and requires intent for the "unlawful administration" of "a non-discriminatory state law." *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980). But it confined that holding "to cases where inadvertent errors occur in the administration of otherwise fair voting procedures," reserving cases where "election laws may operate so unfairly as to constitute a denial of equal protection or due process, even without a showing of discriminatory intent." *Id.* at 454 n.6. The Sixth Circuit rejected an intent requirement for a county board's post-election review of ballots. *Hunter*, 635 F.3d at 234–35 n.13. Plaintiffs challenge the procedure itself, prospectively, not a malfunction, a single disputed count, or one official's refusal to recount. And § 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels v. Williams*, 474 U.S. 327, 329–30 (1986).

*HAVA.* Benge argues that the Help America Vote Act creates no private right of action. Br. 21–22. Plaintiffs assert no HAVA claim; Counts I through III arise under § 1983 and the Fourteenth Amendment. Am. Compl. ¶¶ 29, 70–85.

**E. The Amended Complaint's Allegations Are Factual and Plausible.**

Benge calls the risk allegations "conclusory." Br. 22–23. They are not. The Amended Complaint identifies the federal findings it relies on by author, date, and content, Am. Compl. ¶¶ 3–6, 9, 40–48; the discretion Texas leaves each county, *id.* ¶¶ 13, 33; the November 3, 2026 reconciliation differences, *id.* ¶¶ 37–38; and the 2022 Potter County ballot error, *id.* ¶ 24. "When there are well-pleaded factual allegations, a court should assume their veracity." *Iqbal*, 556 U.S. at 679. Benge faults Plaintiffs for not alleging that a past result was altered, Br. 23, but the claims

challenge the procedure for counting and certifying in the face of vulnerabilities federal reviewers have found, not a past miscount. Am. Compl. ¶¶ 40–49.

**V. COUNT IV STANDS WITH COUNTS I THROUGH III.**

Plaintiffs agree that the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, is remedial and supplies no independent cause of action. Br. 23. Count IV rests on the § 1983 claims in Counts I through III and on an actual controversy with the official who conducts Potter County's audit. Am. Compl. ¶¶ 52, 86–88. Benge's attack on it fails with her attack on Count I.

**VI. ALTERNATIVELY, ANY DISMISSAL MUST BE WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.**

If the Court finds any deficiency, two rules govern. *First*, a dismissal for want of jurisdiction "is not a determination on the merits," so any standing dismissal must be without prejudice, and the rule that the Court decide jurisdiction first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam); *see* ECF No. 59 at 3. *Second*, Plaintiffs have amended once as a matter of course, Fed. R. Civ. P. 15(a)(1)(B), and "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2); *see Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). If the Court requires more, Plaintiffs request leave to name PCRP's candidate members and to plead more facts about the November 3, 2026 audits and how each county resolved its discrepancies.

**CONCLUSION AND PRAYER**

Plaintiffs respectfully request that the Court deny Defendant Christy Benge's Motion to Dismiss (ECF No. 59) as moot in light of the First Amended Complaint or, alternatively, deny it in its entirety. Alternatively, Plaintiffs request that any dismissal be without prejudice and with

leave to file an amended complaint within fourteen days of the Court's order, and that the Court grant Plaintiffs all other relief to which they are entitled.

Respectfully submitted,

/s/ Jared R. Woodfill
Jared R. Woodfill
State Bar No. 00788715
Adam M. Helleck
State Bar No. 24038953
WOODFILL LAW FIRM, PC
5850 San Felipe, 5th Floor
Houston, Texas 77057
Telephone: (832) 255-3751
Woodfillservice@gmail.com

/s/ Daniel Bates
Daniel Bates
State Bar No. 01899900
DECKER JONES, PC
801 Cherry Street, Suite 2000, Unit 46
Fort Worth, Texas 76102
Telephone: (817) 336-2400
dbates@deckerjones.com

ATTORNEYS FOR PLAINTIFFS
POTTER COUNTY REPUBLICAN
PARTY, DANIEL ROGERS, AND
ALEXANDER HALE

**CERTIFICATE OF SERVICE**

I certify that on November 14, 2026, I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Northern District of Texas using the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

/s/ Jared R. Woodfill
Jared R. Woodfill