# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

Cases… ..... iii

Constitutional Provisions ..... vi

Statutes ..... vi

Rules… ..... vi

INTRODUCTION ..... 1

BACKGROUND ..... 2

LEGAL STANDARDS ..... 4

ARGUMENT ..... 7

I. Plaintiffs Lack Article III Standing to Challenge Potter County's Election Administration ..... 8

A. The Amended Complaint Pleads Only a Generalized Grievance about Statewide Election Administration that Every Texas Voter Shares. ..... 9

B. Rogers Alleges Neither a Personal Injury to his Own Vote Nor a Cognizable Injury to his Poll-Watcher Role. ..... 11

C. Hale Cannot Sue Benge Because the Votes in His Congressional Race Were Counted and Certified Outside Potter County. ..... 13

D. The Potter County Republican Party Alleges No Concrete Injury to Its Own Candidates or Resources. ..... 14

E. Any Threat of Future Injury in Potter County Is Speculative and Cannot Support the Prospective Relief Plaintiffs Seek. ..... 15

F. A Single County Official Cannot Redress the Statewide Relief Plaintiffs Demand. ... 16

II. The Amended Complaint Fails to State any Fourteenth Amendment Claim. ..... 17

A. The Equal Protection Claim Fails Because *Bush v. Gore* Does Not Reach Reasonable County-to-County Variation under a Uniform Statute. ..... 18

B. The Equal Protection and Due Process Claims Fail Because Plaintiffs Disclaim the Intentional Discrimination the Constitution Requires. ..... 19

C. The Right-to-Have-Votes-Counted Claim Fails Because Texas's Audit Is a Reasonable, Nondiscriminatory Procedure under *Anderson*/*Burdick*. ..... 20

D. The Substantive Due Process Claim Fails Because County Discretion over Audit Follow-Up Is Garden-Variety Administration. ..... 21

E. The Amended Complaint Pleads No Plausible Constitutional Violation by Benge. .... 22

III. The Declaratory Judgment Count and the Demand for a Statewide Hand Count Independently Fail. .... 23

A. Count IV States No Independent Claim and Fails with the Other Counts. .... 23

B. The Requested Court-Run Statewide Hand-Count Regime Exceeds the Federal Judicial Role. .... 24

CONCLUSION .... 25

CERTIFICATE OF SERVICE .... 25

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Celebrezze*,
460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) ............ 4, 18, 20, 21

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............ 7, 15, 23

*Audler v. CBC Innovis Inc.*,
519 F.3d 239 (5th Cir. 2008) ............ 6

*Bost v. Illinois State Bd. of Elections*,
607 U.S. 71, 146 S.Ct. 513, 223 L.Ed.2d 357 (2026) ............ 14

*Broyles v. Texas*,
618 F.Supp.2d 661 (S.D. Tex. 2009) ............ 22

*Burdick v. Takushi*,
504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) ............ 4, 18, 20, 21

*Bush v. Gore*,
531 U.S. 428, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) ............ 2, 4, 8, 18, 19

*California v. Texas*,
593 U.S. 659, 141 S.Ct. 2104, 210 L.Ed.2d 230 (2021) ............ 14, 17

*Carney v. Adams*,
592 U.S. 53, 141 S.Ct. 493, 208 L.Ed.2d 305 (2020) ............ 5

*Center for Biological Diversity v. U.S. Dept. of Transp.*,
180 F.4th 796, 803 (5th Cir. 2026) ............ 12

*City of Los Angeles v. Lyons*,
461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ............ 16

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) ............ 16

*Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*,
915 F.2d 167 (5th Cir. 1990) ............ 23, 24

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008) ............ 20

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332, 126 S.Ct. 1854, 164 L.Ed.3d 589 (2006) ............ 6

*Davis v. Fed. Election Comm'n*,
554 U.S. 724, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) .......... 6

*Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council*,
364 F.3d 269 (5th Cir. 2004) .......... 5

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367, 144 S.Ct. 1540, 219 L.Ed.2d 121 (2024) .......... 10

*Gamza v. Aguirre*,
619 F.2d 449 (5th Cir. 1980) .......... 19, 22, 24

*Gill v. Whitford*,
585 U.S. 48, 138 S.Ct. 1916, 201 L.Ed.2d 313 (2018) .......... 6, 8, 9, 13, 15, 17

*Hikma Pharm. USA, Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580, 146 S.Ct. 1391, 225 L.Ed.2d 159 (2026) .......... 7

*Hollingsworth v. Perry*,
570 U.S. 693, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013) .......... 13

*Hotze v. Hudspeth*,
16 F.4th 1121 (5th Cir. 2021) .......... 10, 14

*HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*,
907 F.3d 199 (5th Cir. 2018) .......... 5

*In re FEMA Trailer Formaldehyde Products Liab. Litig. (Miss. Plaintiffs)*,
668 F.3d 281 (5th Cir. 2012) .......... 6

*Lance v. Coffman*,
549 U.S. 437, 127 S.Ct. 1194, 167 L.Ed.2d 29 (2007) .......... 4, 9

*Lewis v. Casey*,
518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) .......... 17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) .......... 5, 9

*Lutostanski v. Brown*,
88 F.4th 582 (5th Cir. 2023) .......... 10, 11

*M.D.C.G. v. United States*,
956 F.3d 762 (5th Cir. 2020) .......... 6

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*,
571 U.S. 191, 134 S.Ct. 843, 187 L.Ed.2d 703 (2014) .......... 24

*NAACP v. Tindell*,
95 F.4th 212 (5th Cir. 2024) .......... 11

*Noble v. White*,
996 F.2d 797 (5th Cir. 1993) .......... 24

*OCA-Greater Houston v. Texas*,
867 F.3d 604 (5th Cir. 2017) .......... 15

*Pub. Citizen, Inc. v. Bomer*,
274 F.3d 212 (5th Cir. 2001) .......... 9

*Purcell v. Gonzales*,
549 U.S. 1, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006) .......... 25

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) .......... 6

*Raskin v. Jenkins*,
No. 3:22-CV-2012-E-BH, 2022 WL 19355739 (N.D. Tex. Nov. 2, 2022) .......... 10, 11, 13

*Reule v. Jackson*,
114 F.4th 360 (5th Cir. 2024), *cert. denied*, ___ U.S. ___, 145 S.Ct. 1431,
221 L.Ed.2d 556 (2025) .......... 6

*Richardson v. Texas Secretary of State*,
978 F.3d 220 (5th Cir. 2020) .......... 20, 21

*Snowden v. Hughes*,
321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944) .......... 19, 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) .......... 6, 9, 10, 12

*Stringer v. Whitley*,
942 F.3d 715 (5th Cir. 2019) .......... 16

*Strongin v. Scott*,
No. 4:22-CV-0576-P, 2023 WL 5200667 (N.D. Tex. Aug. 14, 2023),
*aff'd sub nom. Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449
(5th Cir. Apr. 3, 2024) .......... 12

*Texas Democratic Party v. Benkiser*,
459 F.3d 582 (5th Cir. 2006) .......... 14, 15

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) .......... 5

*Vapor Tech. Ass'n v. Graham*,
167 F.4th 302 (5th Cir. 2026) .......... 15

*Virginia House of Delegates v. Bethune-Hill*,
587 U.S. 658, 139 S.Ct. 1945, 204 L.Ed.2d 305 (2019) .......... 5

*Welch v. McKenzie*, 765 F.2d 1311
(5th Cir. 1985) ........ 21, 22

*White v. Garcia*,
No. 4:22-CV-00746-O-BP, 2022 WL 17968764 (N.D. Tex. Nov. 18, 2022),
*report and recommendation adopted*, No. 4:22-CV-00746-O-BP,
2022 WL 17968757 (N.D. Tex. Dec. 27, 2022) ........ 13

*Wyatt v. Dretke*,
165 F. App'x 335 (5th Cir. 2006) ........ 19

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. art. III ........ 1, 5, 6, 7, 8, 9, 10, 12, 13

U.S. CONST., amend. XIV ........ 1, 2, 4, 8, 17, 18, 19, 20, 22, 24

**STATUTES**

42 U.S.C. § 1983 ........ 4, 7, 10, 22, 23, 24

TEX. ELEC. CODE § 127.201 ........ 19, 21

TEX. ELEC. CODE § 33.0015 ........ 12

TEX. ELEC. CODE § 33.056 ........ 13

TEX. ELEC. CODE § 33.063 ........ 12

**RULES**

FED. R. CIV. P. 12(b)(1) ........ 6, 9, 25

FED. R. CIV. P. 12(b)(6) ........ 7, 25

FED. R. CIV. P. 12(h)(3) ........ 9, 25

FED. R. CIV. P. 5(b)(2) ........ 26

## INTRODUCTION

By their amended complaint, Plaintiffs again ask this Court to commandeer how Texas counties audit and certify federal elections. The Potter County Republican Party ("the Party"), its chairman Daniel Rogers ("Rogers"), and Alexander Hale ("Hale") the Republican Party's 2026 nominee for Congress in District 7 of Texas, sued Defendant Christy Benge ("Benge"), the Potter County Elections Administrator, in her official capacity and as the proposed representative of a defendant class consisting of every Texas county's election officials. They argue that since Texas grants each county's election records custodian discretion over how to follow up on a post-election audit discrepancy, identical ballots receive different protection from county to county, in purported violation of the Fourteenth Amendment. Based on that contention, Plaintiffs request audacious relief: a court-designed hand count in every Texas precinct before any federal result may be certified. But the grievance Plaintiffs describe is one about the administration of government in general, which is shared by every Texas voter and is particular to none of them.

The amended complaint is fatally defective under Article III of the Constitution. To sue in federal court, a plaintiff must plead an injury of his own, concrete and particular to him, not a generalized interest in how the law is applied statewide. None of the Plaintiffs has one. The amended complaint identifies no Potter County ballot that was miscounted or treated differently from any other. Instead, it alleges only that counties may act differently from one another. Rogers alleges nothing personal to him as a voter or as the chairman who appoints poll watchers. Hale cannot proceed against Benge because the votes in his race were counted in other counties. And the Party identifies no concrete harm to any of its candidates or its own resources.

Two other jurisdictional defects compound the first. Since Plaintiffs seek only prospective relief, each must show an imminent threat of future injury in Potter County, yet the sole incident

they plead there is an isolated, corrected 2022 printing error, not a counting error. Likewise, because they sued one county official while demanding relief that would bind every county in Texas, no order against Benge could redress the statewide harm they assert

Concurrently, the amended complaint states no viable Fourteenth Amendment claim. Its Fourteenth Amendment theory rests on *Bush v. Gore*, which addressed a standardless statewide recount and expressly reserved the question of local variation this case raises. Plaintiffs disclaim any assertion of Benge's intent to discriminate, vitiating an element that both the Equal Protection and Due Process Clauses require. Their right-to-vote theory succumbs to the rule that a reasonable, nondiscriminatory election procedure – which is all the Texas audit procedure is – survives constitutional review. And their due process theory challenges ordinary election administration that falls far short of the fundamental unfairness the law demands to sustain such a claim.

Finally, the declaratory judgment count adds nothing of its own, and the statewide hand-count regime Plaintiffs demand would place this Court in charge of administering Texas elections despite settled federal judicial reluctance to shoulder that burden. Consequently, the amended complaint should be dismissed in its entirety, for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim.

## BACKGROUND

The amended complaint challenges how Texas counties follow up on the post-election audit that state law requires. The Party, its chairman Rogers, and Hale (the Republican Party's 2026 nominee for the United States House of Representatives in Congressional District 7 of Texas) sued Benge, the Potter County Elections Administrator, in her official capacity and as the proposed representative of a defendant class of the general custodians of election records in every Texas

county. (ECF Doc. 72, ¶¶ 19-20, 26-27.) Plaintiffs seek only declaratory and injunctive relief and request no damages. (ECF Doc. 72, ¶ 67.)

Texas law requires a post-election hand count audit of paper ballots after every election conducted on an electronic voting system "to ensure the accuracy of the tabulation." (ECF Doc. 72, ¶ 12.) When the audit reveals a discrepancy between the hand count and the voting-system results, the general custodian of election records is authorized, but not required, to add precincts to the audit, and the Texas Secretary of State's guidance directs only that the custodian document the discrepancy and the efforts to resolve it. (ECF Doc. 72, ¶ 13.) Nothing in Texas law requires any further count, investigation, or correction before the results are certified. (ECF Doc. 72, ¶ 13.) The November 3, 2026 general election was the first federal general election conducted under this audit procedure. (ECF Doc. 72, ¶ 13.)

The amended complaint's central allegation is that, because each custodian decides for her own county whether a documented discrepancy "leads to any further count, investigation, or correction," identical ballots "receive different protection depending on the county in which they are cast." (ECF Doc. 72, ¶¶ 7, 73.) On that basis, Plaintiffs request that the Court certify a statewide defendant class of county custodians (ECF Doc. 72, ¶ 59), order a pre-certification hand count and reconciliation of the Potter County federal-race ballots (ECF Doc. 72, at 31), order a manual hand count of all paper ballots "in all precincts in Texas" before statewide federal office results are certified (ECF Doc. 72, at 32), and order the reported results confirmed or corrected (ECF Doc. 72, ¶ 17) for "all federal elections held on November 3, 2026, in Texas[.]" (ECF Doc. 72, at 32.)

As to Potter County itself, the amended complaint describes a single incident. In 2022, the name of a candidate who had lost a primary was printed on thousands of Potter County general

election ballot records for several days before the error was traced to the ballot definition and corrected. (ECF Doc. 72, ¶ 24.) The amended complaint does not allege that the result of the race involved was altered, or that any comparable discrepancy occurred in Potter County in 2024 or in the November 3, 2026 election. The reconciliation discrepancies on which Plaintiffs rely to describe a pattern pertain to other counties (Harris, Dallas, Randall, and Lubbock), each of which decides for itself whether, when, and how to investigate such differences. (ECF Doc. 72, ¶ 37-38.)

Plaintiffs bring their claims under 42 U.S.C. § 1983 and the Equal Protection and Due Process Clauses of the Fourteenth Amendment (ECF Doc. 72, ¶ 29), invoking *Bush v. Gore* for Count I, a right to have votes counted under *Anderson*/*Burdick* for Count II, and a substantive due-process theory of fundamental unfairness for Count III (ECF Doc. 72, ¶¶ 72, 77, 82.) They assert that their "claims do not depend on proof that any official acted with intent to alter any result," (ECF Doc. 72, ¶ 16) and they disclaim any procedural due process claim. (ECF Doc. 72, ¶ 84.) Count IV seeks a declaratory judgment on the same allegations. (ECF Doc. 72, ¶¶ 87-88.)

Timing is of some significance to the relief sought. The general election was conducted on November 3, 2026. (ECF Doc. 72, ¶ 13.) Plaintiffs electronically filed their First Amended Class Action Complaint on November 14, 2026. (ECF Doc. 72, at 1; Certificate of Service at 33.) Meanwhile, Potter County's post-election hand count audit for that election was scheduled for November 16, 2026. (ECF Doc. 72, ¶ 35.)

## LEGAL STANDARDS

Federal courts must determine that they have jurisdiction before proceeding to the merits. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). At the same time, as the Supreme Court has long recognized, "[t]hose who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian Coll. v. Americans United for Separation of Church*

*& State, Inc.*, 454 U.S. 464, 475-76 (1982). To reach the merits of a case, a federal court must have jurisdiction, and one essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so. *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019). Standing thus is a threshold jurisdictional issue because standing is a component of subject matter jurisdiction. *HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018). If a plaintiff lacks Article III standing, then a federal court lacks jurisdiction to hear the complaint. *Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council*, 364 F.3d 269, 272 (5th Cir. 2004).

The "irreducible constitutional minimum of standing" contains three elements: injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; a causal connection between the injury and the conduct complained of, so the injury is fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Hence, a plaintiff asserting "only a generally available grievance about government" that is shared with the public at large does not present an Article III case or controversy, depriving the Court of subject-matter jurisdiction. *Id.* at 573. In other words, a plaintiff cannot establish standing by asserting an abstract "general interest common to all members of the public," no matter how sincere or "deeply committed" a plaintiff is to vindicating that general interest on behalf of the public. *Carney v. Adams*, 592 U.S. 53, 59 (2020). Likewise, it is well established that standing cannot exist where the injury "depends on the unfettered choices made by independent actors not before the court"

and whose exercise of discretion the courts cannot presume either to control or to predict. *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024), *cert. denied*, ___ U.S. ___, 145 S.Ct. 1431 (2025).

Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing these three elements and, at the pleading stage, Plaintiffs must clearly allege facts demonstrating each element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Additionally, as is relevant to Plaintiffs' apparent reliance on their proposed defendant class for standing purposes, a plaintiff's standing "is not dispensed in gross"; the remedy must be tailored to redress that plaintiff's particular injury. *Gill v. Whitford*, 585 U.S. 48, 73 (2018) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006)). The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). Measured from that point, "a litigant may not merely champion the rights of another", and where no class has yet been certified – as here – a plaintiff may not bootstrap his standing from the non-existent class. *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) (finding plaintiff lacked standing to sue proposed class defendants who did not harm him).

Meanwhile, a Rule 12(b)(1) motion to dismiss challenges the subject-matter jurisdiction of the federal court. *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012). A district court may dispose of a motion to dismiss for lack of subject-matter jurisdiction based on the complaint alone. *M.D.C.G. v. United States*, 956 F.3d 762, 768 (5th Cir. 2020). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, as here, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming*, 281 F.3d at 161.

Under Rule 12(b)(6), while a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to proceed to discovery, a plaintiff must "state a claim to relief that is plausible on its face." *Hikma Pharm. USA, Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589 (2026) (quoting *Twombly.*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* Importantly, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The plausibility standard governs all federal civil actions, *Iqbal*, 556 U.S. at 684, and in a 42 U.S.C. § 1983 action the plaintiff must plead that each official defendant, through her own conduct, violated the Constitution. *Id.* at 676.

## ARGUMENT

This lawsuit represents a bold demand that a federal court take control of how all 254 Texas counties audit and certify federal elections, but none of the Plaintiffs before the Court can clear the threshold Article III sets for any litigant seeking relief. They plead no injury particular to themselves, offering instead only a disagreement shared by every Texas voter with the discretion left by the Texas Election Code to county custodians. And they seek to parlay that disagreement into a federal decree by suing a single county official for relief that would bind every county in the state. Their claims fail for want of jurisdiction on both of those grounds. Even if the Court reached

the merits, the amended complaint states no Fourteenth Amendment claim: its equal protection theory depends on a reading of *Bush v. Gore* that the decision itself forecloses, it disclaims the discriminatory intent the Constitution requires to show a violation, and it recasts ordinary election administration as a federal constitutional wrong. Further, the declaratory judgment count adds nothing independent from Plaintiffs' other claims, and the statewide hand-count regime Plaintiffs demand lies beyond the proper federal judicial role. The amended complaint should be dismissed for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim.

## I. Plaintiffs Lack Article III Standing to Challenge Potter County's Election Administration.

Standing "is not dispensed in gross"; each Plaintiff must establish it for the relief sought. *Gill*, 585 U.S. at 73. None of the three in this case can do so. The Party, Rogers, and Hale all rely on a single complaint—that Texas grants county custodians discretion over how to follow up on an audit discrepancy—which is a disagreement about statewide uniformity that belongs to every Texas voter alike. Rogers adds nothing personal as a voter or as the chairman who appoints poll watchers. Hale cannot reach Benge because the amended complaint alleges that his congressional race was counted and certified by another county's custodian (ECF Doc. 72, ¶ 26). The Party identifies no concrete harm to any of its candidates or to its own resources. Their putative future injury is conjectural, while the sole Potter County incident they plead in support is an isolated, corrected 2022 printing error. (ECF Doc. 72, ¶ 24). Moreover, Plaintiffs sued one county official while demanding relief that would bind every county in Texas (ECF Doc. 72, ¶ 27), but no order the Court could enter against Benge would redress the statewide harm they assert. Each of these defects independently requires dismissal under Rule 12(b)(1) and Rule 12(h)(3).

### A. The Amended Complaint Pleads Only a Generalized Grievance about Statewide Election Administration that Every Texas Voter Shares.

Plaintiffs' central theory is a generalized grievance, not an injury in fact, and it defeats standing for every count of the amended complaint. A plaintiff invoking federal jurisdiction must clearly allege facts demonstrating each element of standing, beginning with an injury that is both concrete and particularized. *Spokeo, Inc.*, 578 U.S. at 338. A litigant who raises only a generally available grievance about government—claiming harm to every citizen's interest in the proper application of the law and seeking relief that benefits him no more than the public at large—does not present an Article III case or controversy. *Lance*, 549 U.S. at 439 (quoting *Lujan*, 504 U.S. at 573-74).

The amended complaint frames itself in exactly those terms. Plaintiffs challenge whether Texas may leave to county discretion "whether a documented discrepancy between the paper records and the machine tabulation in a federal election leads to any further count, investigation, or correction, so that identical ballots receive different protection depending on the county in which they are cast." (ECF Doc. 72, ¶ 7.) In their telling, the practice means that "identical ballots cast in the same federal election receive different protection depending on the county in which they are cast." (ECF Doc. 72, ¶ 73; *see also id.*, ¶ 7.) That is an interest in the uniform administration of Texas elections held identically by every Texas voter, which the Supreme Court treats as a collective, nonjusticiable interest rather than an individual legal injury. *Gill*, 585 U.S. at 70; *accord Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 219 (5th Cir. 2001) (in challenge to campaign finance structure of Texas judicial elections noting Plaintiffs presented only generalized grievance, common to all citizens or litigants in Texas, for which they lacked standing). It is not particularized, since it affects the Plaintiffs in the same manner that all other voters in Texas are

affected. *See Spokeo, Inc.*, 578 U.S. at 339. A voter may not rely on such an undifferentiated grievance to establish standing, since it would apply equally to the millions of voters in Texas. *See Lutostanski v. Brown*, 88 F.4th 582, 586 (5th Cir. 2023) (plaintiffs whose injury theory would apply equally to all voters in county, and who failed to allege that county's voting system somehow invalidated their votes while counting more than 600,000 others, failed to demonstrate standing). Article III prescribes that a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Plaintiffs here make precisely that kind of argument, decrying counties' post-election verification discretion as unconstitutional without a showing of impact to themselves that differs in kind or measure from any other voter.

The United States Court of Appeals for the Fifth Circuit sees it similarly. In *Hotze v. Hudspeth*, voters and candidates claimed that a county's voting practices harmed the integrity of the election process, but the Fifth Circuit held the claim to be too generalized to support standing. 16 F.4th 1121, 1124 (5th Cir. 2021). Another court in this federal District reached the same result in *Raskin v. Jenkins*, dismissing a § 1983 suit against a county elections administrator because the plaintiff alleged only a risk shared by all voters, not differential treatment of her own ballot. No. 3:22-CV-2012-E-BH, 2022 WL 19355739, at *5-6 (N.D. Tex. Nov. 2, 2022). The preclusion of generalized grievances as grounds for standing, the court explained, applies with full force in the equal protection context, so only those personally denied equal treatment may sue. *Id.* at *6. Here, Plaintiffs allege no such personal denial, or that any voter in Potter County is being treated unequally from other Potter County voters. They allege only that counties may act differently from one another. (ECF Doc. 72, ¶ 15.)

At the same time, the statewide hand count and statewide result-correction they demand confirm that the grievance they assert belongs to the entire electorate. (*See* ECF Doc. 72, at 32.) *See Lutostanski*, 88 F.4th at 586 (injury undifferentiated from general electorate is insufficient to show standing). Plaintiffs do not allege that they have been prevented from voting, and they do not contend that their vote is likely to go uncounted. Instead, they simply complain that ballot verification may differ from county to county, which presumably could allow some electoral mischief to go uncorrected somewhere. (*See* ECF Doc. 72, ¶¶ 7, 15.) How that differentiates them from any other Texas voter is unexplained, because it doesn't. Similarly, if implemented, their requested regimen of uniform verification would inure to the benefit of all Texas voters, not just Plaintiffs. *See NAACP v. Tindell*, 95 F.4th 212, 217 (5th Cir. 2024) (injury affecting all city residents was insufficient to support standing). As such, their grievance is generalized, and the amended complaint should be dismissed for lack of standing.

**B. Rogers Alleges Neither a Personal Injury to his Own Vote Nor a Cognizable Injury to his Poll-Watcher Role.**

Rogers fares no better in either of the two capacities he asserts. As a voter, he alleges that his ballot is tabulated on the Hart InterCivic Verity system (ECF Doc. 72, ¶ 20), and "receives less protection than an identical ballot cast in a county whose custodian expands the audit or resolves the discrepancy before certification." (ECF Doc. 72, ¶ 20.) To sue over impairment of his vote, Rogers must assert a direct, personal interest in the effectiveness of his own ballot, not the citizenry's general interest in lawful administration. *Raskin*, 2022 WL 19355739, at *4. He must show individual injury, rather than "a generally available grievance about the government's voting system that everybody in Texas is subject to." *Strongin v. Scott*, No. 4:22-CV-0576-P, 2023 WL 5200667, at *4 (N.D. Tex. Aug. 14, 2023), *aff'd sub nom. Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024). Rogers does not allege that his vote was or will be treated

differently from any other Potter County ballot. He alleges only that counties may treat discrepancies differently from other counties. (ECF Doc. 72, ¶ 20.) That is simply the same generalized grievance shared by the electorate restated as to one voter. It is insufficient to support standing. *See Raskin*, 2022 WL 19355739, at *6; *Strongin*, 2023 WL 5200667, at *4.

Rogers's second theory, as the county chairman who appoints his party's poll watchers (ECF Doc. 72, ¶ 21), also fails to supply injury in fact. He alleges that a watcher "can see a voter carry a printed record to the scanner but cannot see what the scanner reads, because it reads a QR code that no person can read," and cannot observe the machine's reading of codes at central counting. (ECF Doc. 72, ¶ 23.) A watcher's duty is to observe without obstructing the conduct of an election and to call to the attention of an election officer any observed or suspected irregularity or violation of law in the conduct of an election. TEX. ELEC. CODE § 33.0015. If the appointing authority for a watcher believes that the watcher was unlawfully prevented or obstructed from the performance of the watcher's duties, the authority may seek injunctive or mandamus relief. TEX. ELEC. CODE § 33.063(1)-(2). Rogers does not allege that he has sought such relief.

Meanwhile, a bare procedural entitlement, divorced from concrete harm, does not satisfy Article III. *Spokeo, Inc.*, 578 U.S. at 341; *see also Center for Biological Diversity v. U.S. Dept. of Transp.*, 180 F.4th 796, (5th Cir. 2026) ("A bare procedural violation does not establish standing."). Concreteness is an independent requirement that particularization cannot supply. *Spokeo, Inc.*, 578 U.S. at 339. In keeping with the absence of allegations that Rogers sought Election Code relief from obstruction of his watchers, he does not allege that his watchers were excluded from observing voting or tabulation; he alleges only that they cannot read the machine-encoded data—a limitation that befalls every watcher wherever the same equipment is used. It is untethered to any concrete personal harm, and is not redressable, because a post-election hand count of paper

ballots would not let a watcher read that data during tabulation. (ECF Doc. 72, ¶ 23.) *See, generally,* TEX. ELEC. CODE § 33.056 (authorizing watcher to sit or stand near enough to member of counting team announcing votes to verify ballots are read correctly or tallied correctly and to inspect returns or other records prepared by election officers, but not authorizing direct review of ballots); *cf. Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) ("Article III standing is not to be placed in the hands of concerned bystanders who will use it simply as a vehicle for the vindication of value interests."). In reality, Rogers's complaint isn't that his poll watchers are prevented from performing their duties under Texas law. It is instead a veiled request to enforce his preference for human-readable ballots, which is the type of generalized grievance about the government's decision to use a different procedure that has been routinely rejected on standing grounds. *See Gill*, 585 U.S. at 72 (noting case was about group political interests, not individual legal rights, and concluding court was "not responsible for vindicating generalized partisan preferences"); *Raskin*, 2022 WL 19355739, at *5 (Plaintiff who did not assert specialized grievance beyond interest in integrity of election process, which is common to all members of public, lacked standing); *White v. Garcia*, No. 4:22-CV-00746-O-BP, 2022 WL 17968764, at *3 (N.D. Tex. Nov. 18, 2022), *report and recommendation adopted*, No. 4:22-CV-00746-O-BP, 2022 WL 17968757 (N.D. Tex. Dec. 27, 2022) (generalized claims applicable to all computerized voting systems that did not set plaintiff's claims apart from any other Tarrant County voter did not create particularized injury to establish Article III standing). Rogers thus lacks standing in either capacity he urges.

### C. Hale Cannot Sue Benge Because the Votes in His Congressional Race Were Counted and Certified Outside Potter County.

Hale, the Republican congressional nominee, cannot sue Benge because another county's officials counted the votes in his race. A candidate, the Supreme Court recently recognized, has standing to challenge "the rules that govern the counting of votes in his election." *Bost v. Illinois*

*State Bd. of Elections*, 607 U.S. 71, 76 (2026). The high court tied that interest to the candidate's own race, *id.*, and expressly declined to decide whether voters might have standing on a vote-dilution theory. *Id.* Since that recognized interest is specific to the candidate's own election, it cannot support a claim about the counting of votes in a race Benge did not administer. The Fifth Circuit draws the same line, limiting any candidate standing to the specific election the plaintiff contested and evaluating standing claim by claim. *Hotze*, 16 F.4th at 1125.

The amended complaint's own language defeats Hale's claim. The amended complaint alleges that Hale was the Republican nominee in Congressional District 7 (ECF Doc. 72, ¶ 26), and that the votes in his race "were counted, audited, and certified by members of the Defendant Class, including the general custodian of election records in Harris County." (ECF Doc. 72, ¶ 26.) Benge administers elections in Potter County, not Harris County, so her conduct did not govern the counting of votes in Hale's election. Standing requires an injury fairly traceable to the defendant and redressable by relief against her. *California v. Texas*, 593 U.S. 659, 668-69 (2021). To that end, a federal remedy operates on the defendant's own conduct, not on legal rules in the abstract. *Id.* at 672. An order against Benge concerning Potter County's audit would neither remedy nor reach what occurred in the counties that administered Hale's race, so Hale lacks standing to sue her.

### D. The Potter County Republican Party Alleges No Concrete Injury to Its Own Candidates or Resources.

The Party has no standing of its own. A political party does not acquire standing simply because it cares how elections are run. In *Texas Democratic Party v. Benkiser*, the Fifth Circuit found party standing where a rival's unlawful candidate substitution threatened the party's own candidate's chances of victory and forced concrete campaign expenditures—which represented a threatened loss of political power tied to a specific contest. 459 F.3d 582, 586-87 (5th Cir. 2006).

An interest in the overall integrity or composition of government, by contrast, is a collective political interest rather than an individual legal one and remains a nonjusticiable generalized grievance. *Gill*, 585 U.S. at 68, 70.

None of the allegations of the amended complaint approach the *Benkiser* injury. The Party alleges only that the challenged practices "affect PCRP's electoral interests and the prospects of its nominees" and that it sues on behalf of its members.[1] (ECF Doc. 72, ¶ 19.) It identifies no specific Potter County race whose outcome changed, no threatened loss of a particular seat, and no concrete diversion of its own resources. (See ECF Doc. 72, ¶ 19.) Its association theory fails for the same reasons, since associational standing requires members who could sue in their own right. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017) (associational standing is derivative of standing of association's members, requiring that members have standing). But the Party's members, including Rogers, assert only the generalized grievance that already fails. "[E]ven constitutional injuries must be concrete and particularized—more, they must belong to the plaintiff, not the public at large." *Vapor Tech. Ass'n v. Graham*, 167 F.4th 302, 306 (5th Cir. 2026). No such Party member is alleged, and the injury asserted is a generalized grievance. The Party lacks standing.

### E. Any Threat of Future Injury in Potter County Is Speculative and Cannot Support the Prospective Relief Plaintiffs Seek.

Because Plaintiffs seek only prospective relief (ECF Doc. 72, ¶ 75), each must show a real and immediate threat of future injury in Potter County. None can. Injunctive and declaratory relief cannot remedy a past wrong; a plaintiff must demonstrate a continuing or threatened future injury. *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). Past exposure to unlawful conduct, without

[1] This assertion is unsupported by facts demonstrating or inferring its verity, so it is nothing more than a conclusory assertion that is not entitled to be taken as true. *See Iqbal*, 556 U.S. at 678.

continuing adverse effects, does not establish a present controversy over prospective relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). The threatened injury must be real and immediate rather than conjectural. *Id*. It also must be "certainly impending," because allegations of future injury do not suffice. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). General data is insufficient; plaintiff-specific allegations are needed before Plaintiffs' claims can properly be characterized as an attempt to remedy an imminent injury to Plaintiffs instead of a generalized grievance available to all Texans. *See Stringer*, 942 F.3d at 722.

The amended complaint makes no such showing as to Potter County. The only Potter County incident it describes is the 2022 ballot-definition error, in which the name of a candidate who had lost the primary was printed on thousands of ballot records for several days before being traced to the ballot definition and corrected. (ECF Doc. 72, ¶ 24.) Plaintiffs do not allege that the error recurred in 2024 or in the 2026 election, and the reconciliation discrepancies it offers as a pattern are pleaded as to Harris, Dallas, Randall, and Lubbock Counties, not Potter. (ECF Doc. 72, ¶¶ 37-38.) A single, corrected, years-old event with no pleaded recurrence is the paradigmatic past wrong that cannot support prospective relief. *Lyons*, 461 U.S. at 102. Any future injury to Plaintiffs in Potter County, then, is purely conjectural rather than certainly impending, and they lack standing to seek the only relief they request. *Clapper*, 568 U.S. at 409.

**F. A Single County Official Cannot Redress the Statewide Relief Plaintiffs Demand.**

Even if some Plaintiff had a cognizable injury, which they do not, the statewide relief they demand is not redressable against a single county official. Redressability requires that the requested relief operate on the defendant before the court, not on legal rules in the abstract. *California*, 593 U.S. at 659. A plaintiff has standing only for an injury traceable to the defendant's own conduct and redressable by relief against that defendant. *Id*. Likewise, standing "is not

dispensed in gross," so the remedy must be tailored to the plaintiff's own injury. *Gill*, 585 U.S. at 73. Systemwide relief thus requires a systemwide violation by the defendant, and the rule applies with equal force to class actions, because even named class plaintiffs must show that they personally were injured, not that others were. *Lewis v. Casey*, 518 U.S. 343, 357, 359 (1996).

The mismatch here is fatal. Benge administers Potter County elections (ECF Doc. 72, ¶ 27), yet Plaintiffs ask the Court to order a hand count "in all precincts in Texas" and to confirm or correct the results of "all federal elections held on November 3, 2026, in Texas[.]" (ECF Doc. 72 at 32.) That relief could operate only against the general custodians of every other Texas county, none of whom is a party to this action. Indeed, their only connection to the case is membership in a proposed, but as yet uncertified, Rule 23 defendant class. (ECF Doc. 72, ¶ 59.) Meanwhile, a court cannot bind non-parties, so an order against Benge would not redress any statewide injury. *California*, 539 U.S. at 659. Plaintiffs' demand that class-wide relief operate uniformly against every class member only confirms that the relief cannot issue against the sole defendant they sued. (See ECF Doc. 72, ¶ 67.) That the suit is pleaded as a class action adds nothing to the standing inquiry, since the named Plaintiffs must establish their own redressable injury rather than rely on the proposed, but not yet certified, class. *See Lewis*, 518 U.S. at 357.

## II. The Amended Complaint Fails to State any Fourteenth Amendment Claim.

Should the Court reach the merits, the amended complaint states no viable Fourteenth Amendment claim. The equal protection theory in Count I rests on *Bush v. Gore*, which confined itself to a standardless statewide recount and expressly reserved the local-option question this case presents. Independently, Plaintiffs disclaim any discriminatory intent that Equal Protection Clause and substantive due process violations both require. They thus concede away a required element of Counts I and III. The right-to-vote theory in Count II is governed by *Anderson*/*Burdick*, under

which Texas's audit is a reasonable, nondiscriminatory procedure that no voter has a right to see replaced with a court-designed scheme. And the substantive due process theory in Count III challenges garden-variety election administration that falls short of the patent and fundamental unfairness required to sustain such a claim. Finally, the amended complaint pleads no plausible, non-conclusory facts tying Benge's conduct to any violation. Each theory fails as a matter of law.

### A. The Equal Protection Claim Fails Because *Bush v. Gore* Does Not Reach Reasonable County-to-County Variation under a Uniform Statute.

Count I's equal protection theory depends on *Bush v. Gore*, and that decision does not support it. (*See* ECF Doc. 72, ¶ 72.) The U.S. Supreme Court there confronted a statewide manual recount ordered by the Florida Supreme Court with no standard beyond the "intent of the voter," and located the equal protection defect in "the absence of specific standards to ensure [that command's] equal application." *Bush v. Gore*, 531 U.S. 98, 105-06 (2000). The Court then cabined its reasoning twice. It explained that "[t]he question before the Court is not whether local entities, in the exercise of their expertise, may develop different systems for implementing elections," but addressed only "a state court with the power to assure uniformity" ordering a recount "with minimal procedural safeguards." *Id*. at 109. It further declared that its "consideration is limited to the present circumstances, for the problem of equal protection in election processes generally presents many complexities." *Id*. Consequently, the Fifth Circuit has treated *Bush v. Gore* as confined to the facts of the 2000 presidential election. *Wyatt v. Dretke*, 165 F. App'x 335, 340 (5th Cir. 2006).

Those limits doom Plaintiffs' equal protection claim. *Bush* reserved the very question this case presents – whether local entities may administer elections differently – and declined to answer it. 531 U.S. at 109. Texas, moreover, supplies the uniform statutory command the absence of which drove *Bush*. Section 127.201 of the Election Code requires a post-election hand count audit

in every county that uses an electronic voting system. (ECF Doc. 72, ¶ 12.) *See* TEX. ELEC. CODE § 127.201. Plaintiffs do not contend that this audit requirement varies among counties; they challenge each custodian's discretion over how to follow up on a discrepancy the audit reveals. (ECF Doc. 72, ¶ 15.) That discretion represents ordinary county-to-county variation in administering a common statewide standard, which is the opposite of the standardless statewide recount *Bush* condemned, and it is the local-implementation question the court declined to reach. Count I fails to state an equal protection claim.

**B. The Equal Protection and Due Process Claims Fail Because Plaintiffs Disclaim the Intentional Discrimination the Constitution Requires.**

Counts I and III fail for the further, independent reason that Plaintiffs disclaim intentional discrimination. The unequal administration of a facially neutral election law does not violate the Fourteenth Amendment absent intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. 1, 7-8 (1944). The Fifth Circuit applied that rule in *Gamza v. Aguirre*, distinguishing "state laws and patterns of state action that systemically deny equality in voting" from "episodic events that, despite the non-discriminatory laws, may result in the dilution of an individual's vote." 619 F.2d 449, 453 (5th Cir. 1980). Isolated events that adversely affect individuals are not presumed to violate the Equal Protection Clause. *Id*. Where a county's maladministration resulted from human error rather than an intention to discriminate against the affected voters, the court held there was no denial of equal protection. *Id*. at 454.

That element is pleaded away. Plaintiffs allege that their "claims do not depend on proof that any official acted with intent to alter any result." (ECF Doc. 72, ¶ 16.) And they describe episodic, discretionary variation among counties applying the same statute, not any systemic purposeful denial of equal treatment. (*See* ECF Doc. 72, ¶ 15.) Counts I and III fail for want of the intentional discrimination the Fourteenth Amendment requires. *Snowden*, 321 U.S. at 7-8.

### C. The Right-to-Have-Votes-Counted Claim Fails Because Texas's Audit Is a Reasonable, Nondiscriminatory Procedure under *Anderson/Burdick*.

Count II's asserted "right to have votes counted" (ECF Doc. 72, ¶ 50) is governed by the *Anderson/Burdick* framework, and under that test Texas's audit is plainly constitutional. The framework weighs the character and magnitude of the burden on the voter against the precise interests the state offers to justify it. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 (1983)). In fashioning that balancing test, the Supreme Court rejected the assumption that any burden on voting triggers strict scrutiny. *Burdick*, 504 U.S. at 433. Since elections cannot be conducted without substantial regulation, reasonable and nondiscriminatory restrictions are justified by the state's important regulatory interests, and a facial challenge fails where the law has a broad legitimate application. *Id.*; *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 202 (2008). The Fifth Circuit has followed suit in *Richardson v. Texas Secretary of State*, 978 F.3d 220 (5th Cir. 2020). In *Richardson*, a motions panel granted a stay based on the Secretary's likelihood of prevailing on the merits concerning a Texas ballot-processing procedure, and held that reasonable, non-severe burdens carry no narrow-tailoring requirement. 978 F.3d at 240. No citizen, the court explained, has a Fourteenth Amendment right to be free of the usual burdens of voting, and rules that merely make voting more inconvenient are not constitutionally suspect. *Id.* at 237.

Measured against that standard, Count II states no claim. Texas already mandates the very post-election hand count audit Plaintiffs invoke. (ECF Doc. 72, ¶ 12.) *See* TEX. ELEC. CODE § 127.201. Their complaint is not that they are being denied the right to vote, or that their vote will not be counted, but that the audit carries no mandatory consequences when it reveals a discrepancy—which is a procedural preference for a follow-up rule. (*See* ECF Doc. 72, ¶ 78.) But the absence of mandatory follow-up procedures is a slight, nondiscriminatory burden, which the

state's weighty interests in orderly and timely certification readily outweigh, and no recognized constitutional right entitles Plaintiffs to the court-designed hand-count-and-reconcile regime they demand. (*See* ECF Doc. 72, at 31.) *See Richardson*, 978 F.3d at 240. It also is significant that Plaintiffs never address the time, effort, and expense their demanded statewide hand count would require. (*See* ECF Doc. 72, at 31.) That silence matters, because the *Anderson*/*Burdick* balance weighs the burden a voter asserts against the state's regulatory interests. *Burdick*, 504 U.S. at 428. In that context, Plaintiffs' abstract interest in tabulation integrity is minute when compared to the personnel costs and delay of certification their preferred regimen would impose. Count II fails.

**D. The Substantive Due Process Claim Fails Because County Discretion over Audit Follow-Up Is Garden-Variety Administration.**

Count III's substantive due process theory fails because county discretion over audit follow-up represents garden-variety election administration, not any fundamental unfairness. The Fifth Circuit sets a demanding threshold in this regard: a due process election violation may arise only where the process reaches patent and fundamental unfairness, well beyond an ordinary dispute over the counting and marking of ballots. *Welch v. McKenzie*, 765 F.2d 1311, 1317 (5th Cir. 1985). The court distinguishes garden-variety election disputes, which are not constitutional deprivations, from suits implicating the very integrity of the electoral process. *Id*. Underlying that demarcation is the federalism principle that Section 1983 "did not authorize federal courts to be state election monitors," for if every state irregularity were a federal violation, federal courts would adjudicate every state election dispute. *Gamza*, 619 F.2d at 453-54. Following that reasoning, a Southern District of Texas court dismissed the very kind of claim pleaded here, holding that counting errors and defects in the formatting and printing of ballots are garden-variety irregularities, not constitutional violations, even when they affect an outcome. *Broyles v. Texas*, 618 F.Supp.2d 661, 694 (S.D. Tex. 2009).

Plaintiffs' own authority, *Griffin v. Burns*, proves the point. (*See* ECF Doc. 72, ¶ 82.) *Welch* explained that *Griffin* found a due process violation only in the extraordinary circumstance of a state court voiding all absentee ballots after they had been cast, which was a retroactive change to clear pre-election rules. 765 F.2d at 1317. By contrast, *Gamza* "reflects the more typical result," refusing to intervene even though miscounted votes had thrown an election to the wrong candidate. *Id*. This case is closer to *Gamza* than *Griffin*. Plaintiffs challenge the ordinary operation of a pre-existing statutory audit scheme – each custodian's discretion over whether to pursue a discrepancy further – with no retroactive rule change, no disenfranchisement, and, by Count III's own terms, no intent. (ECF Doc. 72, ¶¶ 12, 15, 84.) The sole Potter County incident they plead, the 2022 misprint traced to the ballot definition and corrected, is at worst a classic garden-variety irregularity that *Welch* and *Broyles* treat as non-cognizable. (ECF Doc. 72, ¶ 24.) *See Welch*, 765 F.2d at 1317; *Broyles*, 618 F.Supp.2d at 694. Count III fails to state a claim.

### E. The Amended Complaint Pleads No Plausible Constitutional Violation by Benge.

Even if some Fourteenth Amendment theory was cognizable, the amended complaint pleads no plausible violation by Benge. A complaint must plead factual content allowing the reasonable inference that the defendant is liable; threadbare recitals of a cause of action's elements, supported by conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678. Factual allegations must raise the right to relief above the speculative level and nudge the claim from conceivable to plausible. *Twombly*, 550 U.S. at 570. Because Section 1983 imposes no respondeat superior liability, a plaintiff must plead that each official defendant, through her own conduct, violated the Constitution. *Iqbal*, 556 U.S. at 676.

The amended complaint falls well short of that standard as to Benge. Its Potter County allegations reduce to the 2022 misprint, which the complaint does not allege changed any result

and which involved Benge's predecessor. (*See* ECF Doc. 72, ¶ 24.) The reconciliation discrepancies it relies upon are pleaded as to other counties, administered by other officials. (ECF Doc. 72, ¶¶ 37-37.) As to Benge's own conduct in the 2026 election, the amended complaint pleads no discrepancy, no irregularity, and, by its own terms, no intent. (*See* ECF Doc. 72, ¶ 16.) What remains is the conclusory assertion that discretion over audit follow-up is unconstitutional, untethered to any plausible facts about what Benge actually did, and that does not state a claim against Benge. *Iqbal*, 556 U.S. at 676.

## III. The Declaratory Judgment Count and the Demand for a Statewide Hand Count Independently Fail.

Two remaining features of the amended complaint fail for independent reasons. Count IV seeks only a declaratory judgment, a remedy that supplies no cause of action of its own and cannot survive the dismissal of the constitutional counts it duplicates. Separately, the statewide hand-count regime Plaintiffs ask the Court to design and administer would draw a federal court into the continuing management of Texas election administration, a role federalism and the limits of the judicial power counsel strongly against.

### A. Count IV States No Independent Claim and Fails with the Other Counts.

Count IV adds no independent claim and falls with the constitutional counts. The Declaratory Judgment Act creates no substantive rights. The Supreme Court treats its operation as procedural only, leaving substantive rights unchanged and not enlarging federal jurisdiction. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014). The Fifth Circuit is in accord, holding the Declaratory Judgment Act "remedial only." *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170-71 (5th Cir. 1990). The Act does not allow a litigant to use a declaratory judgment action as a vehicle to create a cause of action that otherwise does not exist. *Id.* at 172. A declaratory judgment count

therefore rises or falls with the substantive claims it duplicates. *Id*. at 171. Count IV incorporates the same allegations and seeks a declaration that the Fourteenth Amendment requires uniform audit standards and a pre-certification hand count—the identical relief pursued through Counts I through III. (ECF Doc. 72, ¶¶ 86-88.) Because those counts fail and are jurisdictionally barred, no live controversy remains for the Court to declare and Count IV must be dismissed with them.

**B. The Requested Court-Run Statewide Hand-Count Regime Exceeds the Federal Judicial Role.**

The extraordinary remedy Plaintiffs request is itself a reason for restraint. Federalism sharply limits a federal court's role in state election administration. The Fifth Circuit has held that Section 1983 "did not authorize federal courts to be state election monitors," warning that treating every state election irregularity as a federal violation would make federal courts "adjudicate every state election dispute" and displace the states' own election contest procedures. *Gamza*, 619 F.2d at 453-54. Comity, the court has emphasized, is "particularly important in the context of state elections," and "[f]ederal judges are wise to hesitate before entering the judicial thicket of state election laws." *Noble v. White*, 996 F.2d 797, 799-800 (5th Cir. 1993). The Supreme Court's *Purcell* principle likewise counsels equitable restraint before a federal court reorders a state's election machinery. *See Purcell v. Gonzales*, 549 U.S. 1, 4-5 (2006).

The relief Plaintiffs seek is the archetype of what those principles disfavor. They ask the Court to fashion uniform statewide hand-count and reconciliation procedures for every Texas county (ECF Doc. 72, at 31), to require a manual hand count of the paper ballots in every Texas precinct (ECF Doc. 72, at 32), and to have the reported results for every federal race in the state confirmed or corrected to match that count. (ECF Doc. 72, ¶ 17.) That is not adjudication of a discrete constitutional violation. It portends an open-ended judicial assumption of the details of Texas elections. Because Plaintiffs never address the time, effort, and expense such a statewide

regime would demand, they give the Court no basis to conclude it could be administered at all. At a minimum, these concerns reinforce the grounds already stated and counsel firmly against the relief the amended complaint seeks.

## CONCLUSION

For the foregoing reasons, Defendant Christy Benge respectfully requests that the Court dismiss the First Amended Class Action Complaint in its entirety for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and 12(h)(3) and, in the alternative, for failure to state a claim under Rule 12(b)(6), together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

Potter County Attorney's Office
500 South Fillmore, Room 301
Amarillo, Texas 79101
Telephone: (806) 379-2255
FAX: (806) 379-2215

By:_________________________________

Scott Brumley
Potter County Attorney
Texas Bar No. 00783738
Email: scottbrumley@co.potter.tx.us

*Attorney for Defendant Christy Benge*

## CERTIFICATE OF SERVICE

On __________________, I filed the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas. I hereby certify that I have served the document on all counsel of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2), specifically, through the Court's CM/ECF system.

_________________________________

Scott Brumley
*Attorney for Defendant Christy Benge*