**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| POTTER COUNTY REPUBLICAN PARTY, DANIEL ROGERS, and ALEXANDER HALE, individually and on behalf of all others similarly affected,<br><br>*Plaintiffs,*<br><br>v.<br><br>CHRISTY BENGE, in her official capacity as the POTTER COUNTY ELECTIONS ADMINISTRATOR and as proposed representative of a defendant class of similarly situated Texas county election officials,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 2:26-cv-00215-Z |

**PLAINTIFFS' RESPONSE AND BRIEF IN OPPOSITION TO**
**<u>DEFENDANT'S SECOND MOTION TO DISMISS</u>**

Plaintiffs Potter County Republican Party ("PCRP"), Daniel Rogers, and Alexander Hale file this response and brief in opposition to Defendant Christy Benge's Second Motion to Dismiss (ECF No. 81) and ask the Court to deny the motion for the reasons that follow.

# TABLE OF CONTENTS


INTRODUCTION ....................................................................................................1
BACKGROUND ....................................................................................................2
LEGAL STANDARD ..............................................................................................3
ARGUMENT ........................................................................................................4
I. Plaintiffs Have Article III Standing. ..................................................................4
A. *Bost* Forecloses the Argument That Plaintiffs Must Identify a Miscounted Ballot or a Changed Result. ..........................................................................4
1. Hale has standing as a candidate. ..............................................................4
2. PCRP has standing as the party whose nominees were on the ballot. .........6
3. Rogers has standing as county chairman and as a voter. .............................6
B. Benge's Authorities Involve Plaintiffs with Nothing at Stake but an Interest in Lawful Government. ..........................................................................8
C. The Injury Is Actual and Imminent. ...............................................................9
D. The Injuries Are Redressable by Relief Against Benge. ..................................10
II. The First Amended Complaint States Claims Under the Fourteenth Amendment. ...........11
A. Count I States an Equal Protection Claim Under *Bush v. Gore*. ...........................11
B. Neither Count I nor Count III Requires Proof of Discriminatory Intent. .............13
C. Count II Cannot Be Decided Against Plaintiffs on the Pleadings. ......................14
D. Count III Challenges the Design of the State's Verification Process, Not a Garden-Variety Error. ..........................................................................16
E. The Complaint Pleads Benge's Own Conduct. ...................................................17
III. Count IV Stands with Counts I Through III, and the Breadth of the Prayer Is Not a Ground for Dismissal. ..........................................................................17
CONCLUSION ......................................................................................................18
CERTIFICATE OF SERVICE ..................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) .......... 2, 15
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4
*Audler v. CBC Innovis Inc.*, 519 F.3d 239 (5th Cir. 2008) .......... 5
*Baker v. Carr*, 369 U.S. 186 (1962) .......... 3, 8, 9, 11
*Bost v. Illinois State Board of Elections*, 607 U.S. 71 (2026) .......... passim
*Burdick v. Takushi*, 504 U.S. 428 (1992) .......... 2, 15
*Bush v. Gore*, 531 U.S. 98 (2000) .......... passim
*California v. Texas*, 593 U.S. 659 (2021) .......... 10
*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .......... 10
*Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) .......... 10
*Davis v. FEC*, 554 U.S. 724 (2008) .......... 10
*Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024) .......... 9
*FEC v. Akins*, 524 U.S. 11 (1998) .......... 7, 8
*Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980) .......... passim
*Gill v. Whitford*, 585 U.S. 48 (2018) .......... 8, 9, 11
*Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) .......... 16
*Hotze v. Hudspeth*, 16 F.4th 1121 (5th Cir. 2021) .......... 1, 9
*Lance v. Coffman*, 549 U.S. 437 (2007) .......... 8
*Larson v. Valente*, 456 U.S. 228 (1982) .......... 7, 10
*Lewis v. Casey*, 518 U.S. 343 (1996) .......... 11
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 3
*Lutostanski v. Brown*, 88 F.4th 582 (5th Cir. 2023) .......... 9
*Purcell v. Gonzalez*, 549 U.S. 1 (2006) .......... 17
*Raskin v. Jenkins*, No. 23-10960, 2024 WL 3508051 (5th Cir. July 23, 2024) .......... 9
*Reynolds v. Sims*, 377 U.S. 533 (1964) .......... 11, 13, 14
*Richardson v. Texas Secretary of State*, 978 F.3d 220 (5th Cir. 2020) .......... 15
*Snowden v. Hughes*, 321 U.S. 1 (1944) .......... 14
*Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019) .......... 10
*Texas Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006) .......... 6

*United States v. Classic*, 313 U.S. 299 (1941) .......... 14

*Welch v. McKenzie*, 765 F.2d 1311 (5th Cir. 1985) .......... 16

*Wyatt v. Dretke*, 165 F. App'x 335 (5th Cir. 2006) .......... 12

**Constitutional Provisions**

U.S. Const. amend. XIV .......... 11, 13, 16
U.S. Const. art. III .......... 4

**Statutes**

28 U.S.C. § 2201 .......... 17
52 U.S.C. § 21081 .......... 14
Tex. Elec. Code § 1.0015 .......... 12
Tex. Elec. Code § 127.201 .......... 1, 15
Tex. Elec. Code § 33.003 .......... 7
Tex. Elec. Code § 33.055 .......... 7
Tex. Elec. Code § 33.056 .......... 7
Tex. Elec. Code § 33.061 .......... 7
Tex. Elec. Code § 33.063 .......... 7

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 3
Fed. R. Civ. P. 12(b)(6) .......... 4
Fed. R. Civ. P. 15(a)(2) .......... 18
Fed. R. Civ. P. 21 .......... 6, 18
Fed. R. Civ. P. 23 .......... 5, 11
Fed. R. Civ. P. 54(c) .......... 11, 17

## Introduction

Texas requires a hand count of a sample of paper ballots after every election conducted on an electronic voting system, "to ensure the accuracy of the tabulation." First Am. Compl. (ECF No. 72) ("FAC") ¶ 12 (quoting Tex. Elec. Code § 127.201(a)). Texas does not require that a disagreement between the hand count and the machine count be resolved. Each county's custodian decides alone, under no standard, whether a documented discrepancy is investigated, enlarged into a broader count, or noted and certified. FAC ¶¶ 13, 15. In a statewide federal race, the same ballot therefore receives one level of protection in one county and a different level in the next.

That is the claim. Defendant Christy Benge's motion answers a different one. She says Plaintiffs identify "no Potter County ballot that was miscounted" and no race "whose outcome changed," and that their grievance is "shared by every Texas voter." Br. in Supp. of Second Mot. to Dismiss (ECF No. 83) ("Br.") 1, 15. But this year the Supreme Court held that "[c]andidates have a concrete and particularized interest in the rules that govern the counting of votes in their elections, regardless whether those rules harm their electoral prospects or increase the cost of their campaigns." *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 82 (2026). In doing so the Court quoted with approval the dissent in the Fifth Circuit decision Benge cites to confine candidate standing. *Bost*, 607 U.S. at 78 (quoting *Hotze v. Hudspeth*, 16 F.4th 1121, 1126 (5th Cir. 2021) (Oldham, J., dissenting)). The Plaintiffs here are a congressional candidate, the party whose nominees were on the Potter County ballot, and the party's elected chairman, who holds statutory duties in conducting the election and who voted in it. None is a bystander.

Benge's merits arguments fare no better. *Bush v. Gore* found an equal protection violation in the application of a general statewide command without "specific standards to ensure its equal application." 531 U.S. 98, 106 (2000). The intent requirement she draws from *Gamza v. Aguirre*

is one the Fifth Circuit "confined to cases where inadvertent errors occur in the administration of otherwise fair voting procedures." 619 F.2d 449, 454 n.6 (5th Cir. 1980). And her *Anderson*/*Burdick* argument asks the Court to weigh, on the pleadings, state interests and costs that appear nowhere in the complaint. The motion should be denied.

**Background**

The First Amended Complaint alleges the following. After every election conducted on an electronic voting system, each county's general custodian of election records directs a hand count of paper ballots from a sample of locations. FAC ¶¶ 12, 33. When the records show a discrepancy, the custodian "is authorized, but not required, to add polling locations or precincts to the audit"; when a discrepancy between the hand count and the machine results cannot be resolved, the Secretary of State's guidance "directs only that the custodian document the discrepancy and the efforts made to resolve it"; and "[n]othing in Texas law requires any further count, investigation, or correction before the results are certified." FAC ¶ 13. The November 3, 2026 general election was the first federal general election conducted under this procedure. FAC ¶ 13. Election-night reconciliations for that election showed differences between the number of voters and the number of ballots counted in counties across Texas. In Harris County the tabulation software counted 4,085 more ballots than the rosters show voters, net of rejected and pending ballots. FAC ¶ 37. Each county "decides for itself whether, when, and how to investigate and resolve these differences." FAC ¶ 38.

In Potter County, each in-person voter uses a device that prints a record bearing a QR code, and the scanner tabulates the code rather than the text the voter can read. FAC ¶ 20. In the 2022 general election, the records printed in Potter County for a Texas Supreme Court race bore, for days and on several thousand ballots, the name of a candidate who had lost the primary and was

not on the ballot. FAC ¶ 24. "No watcher could have detected the error from what the system allowed watchers to observe; it was discovered by a voter who read her own printed record." FAC ¶ 24. The Elections Administrator at the time told Rogers "that the printed name did not matter because it is not what is counted." FAC ¶ 24.

PCRP's nominees appeared on the November 3, 2026 ballot in Potter County, and PCRP will nominate candidates in future federal elections. FAC ¶ 19. Rogers is PCRP's elected chairman. He appoints the party's watchers, sits on the Potter County Election Commission and Election Board, voted in the November 2026 election, including for statewide federal office, and intends to vote in future federal elections. FAC ¶¶ 20–21. Hale was the Republican nominee for Congress in District 7; the votes in his race "were counted, audited, and certified by members of the Defendant Class, including the general custodian of election records in Harris County." FAC ¶ 26. Benge is the Potter County custodian. She configures the voting system, defines the ballots, conducts the audit, and "decides whether a discrepancy found in that audit leads to any additional count, investigation, or correction before results are certified." FAC ¶¶ 25, 27. PCRP and Rogers sued on October 27, 2026, a week before the election (ECF No. 1). Hale joined in the First Amended Complaint.

**Legal Standard**

Benge mounts a facial attack under Rule 12(b)(1). She offers no evidence and agrees the motion may be decided "based on the complaint alone." Br. 6. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Standing does not depend on the merits: "It would not be necessary to decide whether appellant's allegations of impairment of their votes . . . will, ultimately, entitle them to any relief, in order to hold that they have standing to seek it." *Baker v.*

*Carr*, 369 U.S. 186, 208 (1962). And "only one plaintiff needs standing for a suit to proceed." *Bost*, 607 U.S. at 76 n.3. Under Rule 12(b)(6), the question is whether the complaint's factual allegations, taken as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Argument

## I. Plaintiffs Have Article III Standing.

### A. *Bost* Forecloses the Argument That Plaintiffs Must Identify a Miscounted Ballot or a Changed Result.

Benge's lead argument is that Plaintiffs plead "a generalized grievance, not an injury in fact," because they identify no miscounted ballot and no race "whose outcome changed." Br. 1, 9, 15. *Bost* rejected that test. The respondents there argued, as Benge does, that candidates must show "some substantial risk that a rule will cause them to lose the election, prevent them from achieving a legally significant vote threshold, or damage their reputation or finances." 607 U.S. at 79. The Court held that this approach "finds no support in Article III's case or controversy requirement," *id.*, because "winning, and doing so as inexpensively and decisively as possible, are not a candidate's only interests in an election," *id.* at 77. Candidates "also have an interest in a fair process," and rules that undermine it "deprive the candidate of a fair process and an accurate result" whether they "help, hurt, or have no effect on a candidate's electoral prospects." *Id.* That harm "is in no sense 'common to all members of the public.'" *Id.* at 78. "Voters, to be sure, also have a 'general interest' in an accurate vote tally. But a candidate's interest differs in kind." *Id.*

#### 1. Hale has standing as a candidate.

Hale was a candidate for Congress in the November 3, 2026 general election, and that is the election whose count he challenges. FAC ¶ 26. Under *Bost*, he "has standing to challenge the rules that govern the counting of votes in his election." 607 U.S. at 83. That is so after the votes

are cast and whatever the margin; the dissent recognized that the Court's rule reaches a candidate who sues "after the election is over." *Id.* at 98 (Jackson, J., dissenting). The rule Hale challenges, under which a documented discrepancy between the paper records and the machine count may be certified unresolved at a custodian's discretion, is a rule that governs the counting of votes. And the county that counted his race reported such a discrepancy: Harris County's own reconciliation showed 4,085 more ballots counted than voters on the rosters, net of rejected and pending ballots. FAC ¶¶ 26, 37.

Benge does not dispute that Hale has that interest in his own race. She argues only that she did not administer it. Br. 13–14. Hale does not say she did. His claim runs against the Defendant Class, whose members counted, audited, and certified his race, and Benge is sued as the "proposed representative of a defendant class." FAC ¶¶ 26–28. Rule 23 provides that members of a class "may sue or be sued as representative parties on behalf of all members." Fed. R. Civ. P. 23(a). *Audler v. CBC Innovis Inc.*, on which Benge relies (Br. 6), does not hold otherwise. The Fifth Circuit there left open whether a plaintiff may proceed against a class of defendants "juridically related in a manner that suggests a single resolution of the dispute would be expeditious." 519 F.3d 239, 248 (5th Cir. 2008) (citation omitted). It dismissed the class defendants because the named plaintiff's own claims failed, which left no "prospect of class certification." *Id.* Here Plaintiffs' claims are sound, certification is sought, and the proposed class consists of officials who hold the same statutory office and administer the same statute with the same discretion. FAC ¶¶ 59–69.

The Court need not resolve that question now. Because "only one plaintiff needs standing for a suit to proceed," *Bost*, 607 U.S. at 76 n.3, and PCRP and Rogers have standing to seek the same declaratory and injunctive relief, Hale's presence does not affect the Court's jurisdiction. If the Court concludes that the custodian who counted Hale's race must be named, the remedy is

joinder, not dismissal. Fed. R. Civ. P. 21 (court "may at any time, on just terms, add or drop a party").

**2. PCRP has standing as the party whose nominees were on the ballot.**

PCRP stands where its candidates stand. In *Texas Democratic Party v. Benkiser*, the Fifth Circuit recognized a party's direct standing to protect its election prospects because "a political party's interest in a candidate's success is not merely an ideological interest," and its associational standing on behalf of its candidate because, "after the primary election, a candidate steps into the shoes of his party, and their interests are identical." 459 F.3d 582, 586–88 (5th Cir. 2006). PCRP's nominees appeared on the November 3, 2026 ballot in Potter County, its members include candidates, and it will nominate candidates in future federal elections whose votes "will be counted, audited, and certified under the practices challenged here." FAC ¶ 19. Under *Bost*, those candidates have a concrete and particularized interest in the rules that govern the count "regardless whether those rules harm their electoral prospects or increase the cost of their campaigns." 607 U.S. at 82. Protecting that interest is germane to PCRP's purpose, and declaratory and injunctive relief does not require any member's participation. *Benkiser*, 459 F.3d at 587–88.

Benge faults PCRP for identifying no "threatened loss of a particular seat" and no "concrete diversion of its own resources." Br. 15. Those are the showings *Bost* held unnecessary. 607 U.S. at 79–82. *Benkiser* found such showings sufficient. Nothing in it makes them necessary, and after *Bost* they are not. Nor is it true that no injured member is identified (Br. 15). The complaint identifies PCRP's nominees on the November 2026 ballot and its chairman.

**3. Rogers has standing as county chairman and as a voter.**

*As chairman.* Texas law gives a county chairman a role in conducting the election that the public does not share. Rogers appoints the watchers who are entitled by statute to observe the

processing and tabulation of ballots, and he sits on the commission that appoints the Elections Administrator. FAC ¶¶ 21–22 (citing Tex. Elec. Code §§ 33.003(a), 33.055, 33.056(a), 33.061(a)). Under the system Benge administers that entitlement cannot be exercised, because "the count is the machine's reading of codes that no watcher can read." FAC ¶ 23. The denial of access that a statute guarantees is a concrete injury. *Cf. FEC v. Akins*, 524 U.S. 11, 21 (1998) (plaintiff suffers injury in fact when he "fails to obtain information which must be publicly disclosed pursuant to a statute"). It is not hypothetical here: in 2022 several thousand Potter County ballot records bore the wrong candidate's name for days, and no watcher could have known. FAC ¶ 24. The injury is traceable to Benge, who "configures [the voting system], defines the ballots, conducts the audit and may expand it, and sets the procedures for observation." FAC ¶ 25. And it is redressed by relief sought against her alone: a hand count of the human-readable records, before final certification, "observed by watchers from both parties." FAC ¶ 25; ECF No. 72 at 31.

Benge answers that Rogers has not sued under Texas Election Code § 33.063, that his watchers were not "excluded," and that a hand count would not let them read the codes during tabulation. Br. 12–13. None of this defeats standing. She cites no authority that a plaintiff must pursue a state remedy before a federal court may recognize his injury. Rogers's complaint is not that an official ejected a watcher. It is that the count occurs where no watcher can see it. This is no "bare procedural" right (Br. 12): the right to observe protects the party's interest in an accurate count for its nominees, and 2022 shows what is lost without it. And redress need not be complete. A plaintiff "need not show that a favorable decision will relieve his every injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). A count of the human-readable records that watchers can see, completed before the result is final, restores the observation the statute promises. Nor does

Rogers seek to enforce a "preference" about equipment (Br. 13). Plaintiffs do not ask to replace it. FAC ¶ 8.

*As a voter.* Rogers voted in the November 2026 election, including in a statewide federal race, and intends to vote in future federal elections in Potter County. FAC ¶ 20. He alleges that his ballot "receives less protection than an identical ballot cast in a county whose custodian expands the audit or resolves the discrepancy before certification," and that Benge "decides whether Potter County's audit is expanded." FAC ¶ 20. That is the injury recognized in *Baker*: a classification that "disfavors the voters in the counties in which they reside, placing them in a position of constitutionally unjustifiable inequality vis-a-vis voters in irrationally favored counties." 369 U.S. at 207–08. The right to vote is "individual and personal in nature," and "voters who allege facts showing disadvantage to themselves as individuals have standing to sue." *Gill v. Whitford*, 585 U.S. 48, 65–66 (2018) (citations omitted).

Benge responds that Rogers does not allege his ballot is treated differently from other Potter County ballots. Br. 11–12. That is the wrong comparison. The electorate in a statewide race is the State's, and the *Baker* plaintiffs shared their injury with every voter in their counties. An injury does not become generalized because many suffer it: "where a harm is concrete, though widely shared, the Court has found 'injury in fact,'" as "where large numbers of voters suffer interference with voting rights conferred by law." *Akins*, 524 U.S. at 24.

### B. Benge's Authorities Involve Plaintiffs with Nothing at Stake but an Interest in Lawful Government.

The decisions Benge collects (Br. 9–13) share a feature absent here. *Lance v. Coffman* involved four voters whose "only injury" was "that the law—specifically the Elections Clause—has not been followed," an injury the Court called "quite different from the sorts of injuries alleged by plaintiffs in voting rights cases where we have found standing," citing *Baker*. 549 U.S. 437,

442 (2007) (per curiam). *Lutostanski v. Brown* was a pro se suit by voters who claimed that a county's use of an uncertified system "illegalized" their votes; they did "not allege that Travis County's voting system somehow invalidated their votes while counting more than 600,000 others." 88 F.4th 582, 586 (5th Cir. 2023). *Lutostanski* itself cited *Baker* and *Gill* as examples of voter injuries that do confer standing. 88 F.4th at 586. Benge's district-court cases (Br. 10–13) are challenges to the use of electronic voting equipment as such. Affirming one of them, the Fifth Circuit said it had "addressed a substantially similar pro se challenge to electronic voting systems in *Lutostanski*." *Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024) (ECF No. 6 at App. 9). It held another "controlled by" *Lutostanski*. *Raskin v. Jenkins*, No. 23-10960, 2024 WL 3508051 (5th Cir. July 23, 2024) (per curiam) (ECF No. 6 at App. 24–25) (affirming lack of standing but vacating the dismissal and ordering remand to state court). None decided the standing of a candidate, a party with nominees on the ballot, or an official with statutory election duties, and none involved an allegation that the plaintiff's ballot was treated differently from anyone else's.

*Hotze* is of the same kind, with one difference. The Fifth Circuit held that a claim that drive-thru voting "hurt the 'integrity' of the election process" was too generalized, treated the candidates' standing argument as forfeited, and called the question whether candidates have standing "far from clear." 16 F.4th at 1124–25 & n.2. *Bost* has since made it clear, in the words of the *Hotze* dissent. 607 U.S. at 78.

### C. The Injury Is Actual and Imminent.

Benge next argues that the only Potter County "incident" is the 2022 misprint and that any future injury is "conjectural." Br. 15–16. That misidentifies the injury. Plaintiffs do not sue over a risk that 2022 will recur. They challenge the rule under which the November 3, 2026 election was

counted, audited, and certified, and under which every future federal election will be. FAC ¶¶ 13, 52, 54. That rule applied to Rogers's ballot, to PCRP's nominees, and to Hale's race by operation of law. No chain of contingencies stands between Plaintiffs and its application. That distinguishes *Clapper v. Amnesty International USA*, 568 U.S. 398, 414 (2013), which involved a "speculative chain of possibilities," and *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983), where the plaintiff could show no "real and immediate threat" of being choked again.

Benge's own authority confirms that "the injury required for standing need not be actualized," that a threatened injury suffices when it is "real, immediate, and direct," and that the inquiry looks to the plaintiff's stake "when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008). PCRP and Rogers sued a week before the election. Looking forward, Rogers "intends to vote in future federal elections in Potter County," PCRP "will nominate candidates in future federal elections," and "the system and procedures have not changed." FAC ¶¶ 19, 20, 25. Those are the plaintiff-specific allegations Benge says *Stringer v. Whitley*, 942 F.3d 715, 722 (5th Cir. 2019), requires. Br. 16.

### D. The Injuries Are Redressable by Relief Against Benge.

Benge's last standing argument is that the relief Plaintiffs seek is "not redressable against a single county official." Br. 16. It fails for three reasons.

First, Plaintiffs seek relief that Benge can provide by herself. The prayer asks the Court to order her to hand count the Potter County paper records in the federal races and reconcile them to the machine totals, to preserve the election records in her custody, and to apply uniform standards to discrepancies in future federal elections. ECF No. 72 at 31–32; FAC ¶ 25. Each order would operate on Benge's own conduct, which is all she says *California v. Texas*, 593 U.S. 659, 672

(2021), requires. Br. 14. And each would relieve a discrete injury, which is all redressability requires. *Larson*, 456 U.S. at 243 n.15.

Second, the statewide relief is sought against a class under Rule 23(b)(2), not against Benge alone. FAC ¶¶ 59–69. Whether that class should be certified, and how far relief should run, are questions for Rule 23 and for the remedy stage. They are not grounds to dismiss the claims of plaintiffs who have standing against the defendant before the Court. A complaint is not dismissed because its prayer asks for more than the Court may ultimately award; a final judgment grants "the relief to which each party is entitled." Fed. R. Civ. P. 54(c).

Third, Benge's reliance on *Gill* and *Lewis v. Casey* (Br. 16–17) confuses injury with remedy. *Lewis* holds that a remedy must be "limited to the inadequacy that produced the injury in fact that the plaintiff has established," 518 U.S. 343, 357 (1996), a rule about the scope of relief after proof, not about pleading. And *Gill* explains that in *Baker* and *Reynolds v. Sims*, 377 U.S. 533 (1964), the injury was individual even though "the only way to vindicate an individual plaintiff's right to an equally weighted vote was through a wholesale 'restructuring of the geographical distribution of seats in a state legislature.'" 585 U.S. at 66–67 (citation omitted). So here. When the injury is unequal treatment among counties in a single statewide election, a uniform standard is the remedy that fits the injury. It is not evidence that the injury is generalized.

## II. The First Amended Complaint States Claims Under the Fourteenth Amendment.

### A. Count I States an Equal Protection Claim Under *Bush v. Gore*.

The Equal Protection Clause governs how votes are counted, not only who may cast them. "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104–05. In *Bush*, the State's "basic command for the count of legally cast votes" was to consider the "intent

of the voter," which was "unobjectionable as an abstract proposition and a starting principle." *Id.* at 105–06. "The problem inheres in the absence of specific standards to ensure its equal application," so that "the standards for accepting or rejecting contested ballots might vary not only from county to county but indeed within a single county." *Id.* at 106. The Court held that "The formulation of uniform rules . . . is practicable and, we conclude, necessary." *Id.*

The complaint alleges the same defect. Texas's command is that a hand count "ensure the accuracy of the tabulation." FAC ¶ 12. What happens when the hand count and the tabulation disagree is left, without any standard, to each custodian, so that "identical discrepancies are expanded and resolved in some counties and merely documented in others." FAC ¶ 73. In a statewide federal race those ballots are counted together.

Benge offers three responses. First, she invokes the statement in *Bush* that the Court was not deciding "whether local entities, in the exercise of their expertise, may develop different systems for implementing elections." Br. 18 (quoting 531 U.S. at 109). The complaint challenges no county's choice of system. It challenges the absence of any standard for the step that determines whether a ballot's count is verified, which is the ballot-level, standardless disparity *Bush* addressed. *Bush* contrasted local systems with "a situation where a state court with the power to assure uniformity has ordered a statewide recount with minimal procedural safeguards." 531 U.S. at 109. The State of Texas has that power. It mandated the audit statewide, declared that the conduct of elections must "be uniform and consistent throughout this state," FAC ¶ 73 (quoting Tex. Elec. Code § 1.0015), and then left the audit's only consequential step to unguided discretion.

Second, she says Texas "supplies the uniform statutory command the absence of which drove *Bush*." Br. 18. Florida had a uniform command too. What was missing were the standards beneath it, and they are missing here.

Third, she says *Bush* is "confined to the facts of the 2000 presidential election." Br. 18. Her authority is *Wyatt v. Dretke*, an unpublished ruling on a habeas petitioner's request for a certificate of appealability, which itself described *Bush* as "holding Equal Protection Clause requires uniform and specific standards for vote counting." 165 F. App'x 335, 337 (5th Cir. 2006) (per curiam). *Bush* did not invent that rule. It applied *Reynolds* and an earlier decision finding a constitutional violation when a State "accorded arbitrary and disparate treatment to voters in its different counties." 531 U.S. at 105, 107. Seven Justices agreed "that there are constitutional problems with the recount ordered by the Florida Supreme Court that demand a remedy." *Bush*, 531 U.S. at 111. Whether the disparity pleaded here is arbitrary is a question for evidence, not for a motion to dismiss.

**B. Neither Count I nor Count III Requires Proof of Discriminatory Intent.**

Benge argues that Counts I and III fail because Plaintiffs "disclaim intentional discrimination." Br. 19. The complaint states that Plaintiffs' claims "do not depend on proof that any official acted with intent to alter any result." FAC ¶ 16. That disclaims fraud. It does not concede that the disparity is an accident. The discretion Plaintiffs challenge is conferred deliberately and exercised deliberately in every election.

*Gamza* draws the line Benge ignores. The Fifth Circuit distinguished "state laws and patterns of state action that systematically deny equality in voting" from "episodic events that, despite non-discriminatory laws, may result in the dilution of an individual's vote," and required intent for the second category. 619 F.2d at 453. *Gamza* involved a one-time miscount in a school-board runoff that resulted from "entirely innocent human error." *Id.* at 451–52. The court limited its holding accordingly:

> Our holding today is confined to cases where inadvertent errors occur in the administration of otherwise fair voting procedures. Under such circumstances, no claim that votes were unconstitutionally diluted can be made out under the equal protection clause in the absence of evidence of discriminatory intent. We intimate no opinion concerning the circumstances in which election laws may operate so unfairly as to constitute a denial of equal protection or due process, even without a showing of discriminatory intent.

*Gamza*, 619 F.2d at 454 n.6. *Snowden v. Hughes* is to the same effect. It concerned the "unlawful administration by state officers" of a statute fair on its face, "resulting in its unequal application to those who are entitled to be treated alike." 321 U.S. 1, 8 (1944). Plaintiffs do not allege that anyone misapplied Texas law. They allege that the regime, applied as written, treats voters unequally. *Bush* rested on "arbitrary and disparate treatment," 531 U.S. at 104–05, not on any finding of discriminatory purpose.

### C. Count II Cannot Be Decided Against Plaintiffs on the Pleadings.

Count II alleges a burden on the right to have one's vote counted as cast. The right is settled. *Reynolds*, 377 U.S. at 554–55; *United States v. Classic*, 313 U.S. 299, 315 (1941). The burden is pleaded. A voter whose ballot is tabulated from a code he cannot read has one independent check on the count, and that check "carries no mandatory consequence when it reveals a discrepancy." FAC ¶ 78. When the State's own records document a disagreement between paper and machine, "nothing requires that the discrepancy be resolved before certification, so the voter's ballot may not be counted as cast." FAC ¶ 78. The complaint pleads, as a measure of that burden, the federal requirement that a voting system "permit the voter to verify (in a private and independent manner) the votes selected by the voter on the ballot before the ballot is cast and counted." FAC ¶ 50 (quoting 52 U.S.C. § 21081(a)(1)(A)(i)). And it pleads that the federal government's election-security agency recommends "post-election manual audits of paper ballots to verify that voting systems function properly and to identify errors before certifying the final results." FAC ¶ 46.

Benge calls this a "slight, nondiscriminatory burden" outweighed by "the state's weighty interests in orderly and timely certification" and by "the personnel costs and delay" of a hand count. Br. 20–21. Each part of that sentence is a factual assertion outside the complaint. *Anderson* requires a court to "identify and evaluate the precise interests put forward by the State," to "determine the legitimacy and strength of each of those interests," and to "consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "The results of this evaluation will not be automatic." *Id.* at 789–90. The State is not a party and has put forward nothing. The complaint alleges that the State "has no legitimate interest in permitting documented discrepancies to remain unresolved," that the relief "uses ballots, records, personnel, and procedures already required by" § 127.201, and that verification before certification "can be designed to preserve statutory deadlines." FAC ¶¶ 55, 79. Those allegations control at this stage. Benge's complaint that Plaintiffs "never address the time, effort, and expense" of a hand count (Br. 21) inverts the burden. Justification is the State's to offer, and the complaint addresses the point in any event.

Nor is the burden "nondiscriminatory" as *Burdick v. Takushi* uses the term. 504 U.S. 428, 434 (1992). A safeguard that operates in one county and not in the next is not evenhanded. *Richardson v. Texas Secretary of State*, 978 F.3d 220 (5th Cir. 2020), does not help Benge. It is a motions panel's decision to stay an injunction, entered on a summary-judgment record after the district court had denied a motion to dismiss, and it concerned signature verification of mail-in ballots. *Id.* at 224–27. It does not hold that a complaint like this one fails to state a claim. And the State's interest in timely certification, whatever its weight, is not dispositive: "A desire for speed is not a general excuse for ignoring equal protection guarantees." *Bush*, 531 U.S. at 108.

### D. Count III Challenges the Design of the State's Verification Process, Not a Garden-Variety Error.

Under the Due Process Clause, the Fifth Circuit "distinguished "garden variety" election disputes, which do not rise to the level of constitutional deprivation, from suits "implicat[ing] the very integrity of the electoral process," which are constitutionally cognizable." *Welch v. McKenzie*, 765 F.2d 1311, 1317 (5th Cir. 1985) (citation omitted). Benge places this case in the first category by describing it as a dispute over "the counting and marking of ballots." Br. 21. It is not. Her cases involved mistakes in a single election: a miscount in three precincts in *Gamza*, 619 F.2d at 450–51, and in *Welch*, decided after a bench trial, absentee-ballot violations the district court found to be "isolated and singular incidences," 765 F.2d at 1312, 1316. Plaintiffs challenge no mistake. They challenge the standing design of the State's verification process.

*Welch* quotes *Griffin v. Burns*, which describes this kind of claim. Federal courts are not to "count and validate ballots and enter into the details of the administration of the election," but they act when "confronted with an officially-sponsored election procedure which, in its basic aspect, [is] flawed." 570 F.2d 1065, 1078 (1st Cir. 1978). "[D]ue process is implicated where the entire election process including as part thereof the state's administrative and judicial corrective process fails on its face to afford fundamental fairness." *Id.* That can be so "even if derived from apparently neutral action." *Id.* at 1077. The audit is Texas's corrective process for tabulation error. A corrective process that documents a discrepancy and requires nothing to be done about it fails on its face. FAC ¶¶ 13, 83. Whether that failure amounts to "patent and fundamental unfairness," *Welch*, 765 F.2d at 1317, turns on facts the complaint pleads and discovery will test: how often discrepancies arise, how large they are, and what custodians do with them. The question cannot be decided against Plaintiffs on the pleadings.

### E. The Complaint Pleads Benge's Own Conduct.

Finally, Benge says the complaint pleads nothing that she did. Br. 22–23. This is an official-capacity suit for prospective relief, and the complaint pleads what the official does. Benge "conducts the post-election hand count audit" in Potter County and "decides whether a discrepancy found in that audit leads to any additional count, investigation, or correction before results are certified." FAC ¶ 27. She configures the voting system and sets the procedures for observation. FAC ¶ 25. That is her own conduct, not a predecessor's. Her objection that the complaint pleads no 2026 discrepancy in Potter County overlooks her own chronology: the First Amended Complaint was filed on November 14, and Potter County's audit was scheduled for November 16. Br. 4. The claim does not depend on what that audit found. It depends on the rule under which she conducts it.

## III. Count IV Stands with Counts I Through III, and the Breadth of the Prayer Is Not a Ground for Dismissal.

Benge agrees that a declaratory-judgment count "rises or falls with the substantive claims it duplicates." Br. 24. Because Counts I through III stand, so does Count IV. 28 U.S.C. § 2201.

Her remaining argument is that the relief requested lies "beyond the proper federal judicial role." Br. 8, 24. That is an argument about remedy, and the remedy is not before the Court. If Plaintiffs prove a violation, the Court will decide what relief fits it and may grant less than the prayer requests. Fed. R. Civ. P. 54(c). Three points nonetheless bear mention.

First, the *Purcell* principle cuts the other way. As *Bost* summarizes it, federal courts "should ordinarily not alter the election rules on the eve of an election," because late changes can "result in voter confusion and consequent incentive to remain away from the polls." 607 U.S. at 80 (citations omitted); *see Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam). No voter can

be confused or deterred by the verification of ballots already cast, and there is no better time than now to settle the rules for the next federal election.

Second, the federalism concern in *Gamza* is about state and local offices. The court emphasized that the "power to control the disposition of contests over elections to . . . state and local offices" belongs to the States, and noted that when voting cases involve elections to Congress, constitutional protection of the individual vote may also derive from Art. I, § 2 of the Constitution. 619 F.2d at 453 n.4, 454 (citation omitted). This case concerns federal elections only, and Plaintiffs "do not seek to invalidate any provision of the Texas Election Code." FAC ¶ 8. The same answers the comity decisions Benge cites. Br. 24.

Third, the relief is less novel than Benge suggests. A hand count of paper ballots is the State's own audit method. FAC ¶ 12. The custodian already has statutory authority to enlarge it. FAC ¶ 13. The complaint pleads that a full count before certification is "a practicable safeguard" that "uses paper ballots and records the election has already generated and the same counting procedures the State uses in its post-election hand count audit." FAC ¶ 74. Plaintiffs ask that the method be applied under one standard and not county by county.

**Conclusion**

The Court should deny Defendant's Second Motion to Dismiss. If the Court finds any claim or party insufficiently pleaded, Plaintiffs request leave to amend under Rule 15(a)(2), including to join additional members of the Defendant Class as named defendants under Rule 21.

Dated: November 23, 2026

Respectfully submitted,

*/s/ Jared R. Woodfill*
Jared R. Woodfill
State Bar No. 00788715
Adam M. Helleck
State Bar No. 24038953
WOODFILL LAW FIRM, PC
5850 San Felipe, 5th Floor
Houston, Texas 77057
Telephone: (832) 255-3751
Woodfillservice@gmail.com

*/s/ Daniel Bates*
Daniel Bates
State Bar No. 01899900
DECKER JONES, PC
801 Cherry Street, Suite 2000, Unit 46
Fort Worth, Texas 76102
Telephone: (817) 336-2400
dbates@deckerjones.com

ATTORNEYS FOR PLAINTIFFS
POTTER COUNTY REPUBLICAN
PARTY, DANIEL ROGERS, AND
ALEXANDER HALE

**CERTIFICATE OF SERVICE**

I certify that on November 23, 2026, I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Northern District of Texas using the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

*/s/ Jared R. Woodfill*
Jared R. Woodfill