**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| POTTER COUNTY REPUBLICAN PARTY, DANIEL ROGERS, and ALEXANDER HALE, individually and on behalf of all others similarly affected,<br><br>*Plaintiffs,*<br><br>v.<br><br>CHRISTY BENGE, in her official capacity as the POTTER COUNTY ELECTIONS ADMINISTRATOR and as proposed representative of a defendant class of similarly situated Texas county election officials,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 2:26-cv-00215-Z |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND**
**BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

I. RELIEF REQUESTED .....5
II. INTRODUCTION .....6
III. STATEMENT OF FACTS .....7
A. Texas's Two Checks on the Machine Count .....7
B. The 2026 Calendar Puts Certification Before Verification .....9
C. What the Election-Night Reconciliations Show .....10
D. Why the Paper Is the Only Check .....10
E. The Parties and This Suit .....12
IV. LEGAL STANDARD .....13
V. ARGUMENT .....14
A. Plaintiffs Have Standing .....14
B. Plaintiffs Are Likely to Succeed on the Merits .....15
1. Texas treats identical ballots differently by county (Count I). .....15
2. The regime burdens the right to have votes counted and serves no state interest (Count II). .....16
3. Certifying before verifying is fundamentally unfair (Count III). .....17
C. Plaintiffs Will Suffer Irreparable Harm Without an Injunction .....18
D. The Balance of Harms and the Public Interest Favor an Injunction .....18
E. The Relief Is Tailored, and No Bond Should Be Required .....20
VI. CONCLUSION AND PRAYER .....21
CERTIFICATE OF CONFERENCE .....22
CERTIFICATE OF SERVICE .....22

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) .......... 17

*Biden v. Nebraska*, 600 U.S. 477 (2023) .......... 14

*Bost v. Illinois State Board of Elections*, 607 U.S. 71 (2026) .......... 14, 15

*BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604 (5th Cir. 2021) .......... 18

*Burdick v. Takushi*, 504 U.S. 428 (1992) .......... 17

*Bush v. Gore*, 531 U.S. 98 (2000) .......... 7, 15, 16, 17, 20

*Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009) .......... 13

*Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579 (5th Cir. 2013) .......... 13

*Duncan v. Poythress*, 657 F.2d 691 (5th Cir. Unit B Sept. 1981) .......... 17

*Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024) .......... 15

*Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980) .......... 16, 18

*Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) .......... 17

*Hotze v. Hudspeth*, 16 F.4th 1121 (5th Cir. 2021) .......... 15

*Jackson Women's Health Organization v. Currier*, 760 F.3d 448 (5th Cir. 2014) .......... 19

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996) .......... 21

*La Union del Pueblo Entero v. Abbott*, 119 F.4th 404 (5th Cir. 2024) .......... 20

*Lutostanski v. Brown*, 88 F.4th 582 (5th Cir. 2023) .......... 15

*Martinez v. Mathews*, 544 F.2d 1233 (5th Cir. 1976) .......... 13

*Merrill v. Milligan*, 142 S. Ct. 879 (2022) .......... 20

*Nken v. Holder*, 556 U.S. 418 (2009) .......... 13, 18

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) .......... 19, 20

*Reynolds v. Sims*, 377 U.S. 533 (1964) .......... 15, 17

*Roudebush v. Hartke*, 405 U.S. 15 (1972) .......... 18

*Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545 (5th Cir. 1993) .......... 13

*Texas Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006) .......... 14

*United States v. Classic*, 313 U.S. 299 (1941) .......... 16

**Constitutional Provisions**

U.S. Const. art. I, § 5, cl. 1 .......... 18

**Statutes**

42 U.S.C. § 1983 .......... 13

52 U.S.C. § 20701 ........ 18

52 U.S.C. § 21081 ........ 17

Tex. Elec. Code § 1.0015 ........ 9, 17

Tex. Elec. Code § 1.006 ........ 9

Tex. Elec. Code § 31.032 ........ 14

Tex. Elec. Code § 33.003 ........ 14

Tex. Elec. Code § 67.003 ........ 7, 9

Tex. Elec. Code § 67.012 ........ 7, 9

Tex. Elec. Code § 67.016 ........ 9, 18

Tex. Elec. Code § 127.131 ........ 6, 7, 10, 11, 16

Tex. Elec. Code § 127.201 ........ 6, 8, 9, 10, 11, 14, 17, 18, 19, 20

Tex. Elec. Code § 127.302 ........ 8

Tex. Elec. Code § 213.033 ........ 21

**Rules**

Fed. R. Civ. P. 23 ........ 20, 21

Fed. R. Civ. P. 65 ........ 5, 6, 21

Fed. R. Evid. 201 ........ 13

N.D. Tex. L.R. 7.2 ........ 1

**Other Authorities**

Potter County Elections Administration, *Cumulative Results Report, General Election 11/3/2026* (Official Results, run Nov. 10, 2026) ........ 7, 9, 19

Potter County Elections Administration, *Notices: November 3, 2026 General Election* ........ 9

Texas Secretary of State, Election Advisory No. 2025-21, *Post-Election Hand Count Audit Changes (Senate Bill 827)* (Oct. 31, 2025) ........ 6, 8, 14, 19

Texas Secretary of State, Election Advisory No. 2026-28, *Canvass and Recount Deadlines for the November 3, 2026 General Election for Federal, State, and County Officers* (Oct. 23, 2026) ........ 7, 9

Texas Secretary of State, Election Advisory No. 2026-32, *Post-Election Hand Count Audit after the November 3, 2026 General Election* (Nov. 4, 2026) ........ 6, 8, 9, 18

To The Honorable Court,

Plaintiffs Potter County Republican Party ("PCRP"), Daniel Rogers, and Alexander Hale move under Federal Rule of Civil Procedure 65(a) for a preliminary injunction against Defendant Christy Benge and, on certification, the members of the Defendant Class. The motion is supported by the brief below and by the appendix filed with it.

## Relief Requested

Plaintiffs ask the Court to order the following, pending final judgment.

**Against Defendant Christy Benge, in her official capacity as Potter County Elections Administrator:**

1. **Preserve.** Preserve all paper ballots and printed vote records, ballot images, cast vote records, reconciliation forms, audit records, and chain-of-custody records from the November 3, 2026, general election in her custody or control.

2. **Count.** Hand counts the lawful paper ballots cast in Potter County in the races for United States Senator and United States Representative, District 13. The count will follow the hand-counting procedures Texas prescribes for its Post-Election Hand Count Audit, use counting teams drawn from nominees of both county chairs, and be open to watchers from both parties at every table. "Lawful paper ballots" has the meaning given in paragraph 18 of the First Amended Complaint ("FAC"), ECF No. 72.

3. **Reconcile and report.** Reconcile the hand count to the machine-tabulated totals for each race and each polling location and file the results with the Court before the state canvass, which must be held no later than December 7, 2026. Report any

difference to the Court within 24 hours of finding it, so the Court can order further relief before the canvass.

**Against each member of the Defendant Class, on certification:**

4. The same preservation, count, and reporting obligations in that member's county for the federal races on its ballot, under the same procedures.

Plaintiffs also ask the Court to certify the Defendant Class provisionally for purposes of preliminary relief, to waive security under Rule 65(c) or set a nominal bond, and to rule before the state canvass.

## Introduction

Texas checks its voting machines twice. On election night, each county compares the number of voters on its rosters with the number of ballots its software counted. Tex. Elec. Code § 127.131(f). After the election, each county hand counts the paper in a small sample of locations "To ensure the accuracy of the tabulation." *Id.* § 127.201(a).

Neither check has a consequence. When the election-night numbers do not match, the reconciliation statute does not say what a county must do. When the hand count and the machine count disagree, the Secretary of State asks only for an "[e]xplanation of discrepancies and efforts to resolve discrepancies, if any." Advisory 2025-21 at 9.[1] Whether a discrepancy leads to any further count is left to each county's general custodian of election records, who is permitted to add locations to the audit and is not required to. Tex. Elec. Code § 127.201(b-3).

[1]Tex. Sec'y of State, Election Advisory No. 2025-21, *Post-Election Hand Count Audit Changes (Senate Bill 827)* (Oct. 31, 2025) ("Advisory 2025-21"), https://content.govdelivery.com/attachments/TXSOS/2025/10/31/file_attachments/3444036/ADV2025-21%20Post-Election%20Hand%20Count%20Audit%20Changes.pdf.

The calendar compounds the problem. For this election the audit did not have to begin until after November 19 and need not be finished until December 3 or later. Advisory 2026-32 at 2–3.[2] The deadline for every county's canvass was November 17, and the Governor's canvass may be held any day from November 21 through December 7. Advisory 2026-28;[3] Tex. Elec. Code §§ 67.003(c), 67.012(a)(2). Texas law lets certification come first and verification later.

The election-night forms show why that matters. In Harris, Dallas, and Randall Counties the tabulation software counted 4,700 more ballots than the rosters show voters, net of rejected and pending ballots. In Lubbock County it counted 245 fewer. App. 64–68. What happens next depends on the county. That is the constitutional defect: identical ballots in the same federal race receive different protection depending on where they were cast. *Bush v. Gore*, 531 U.S. 98, 104–05 (2000).

Plaintiffs ask for a count, not a result. The paper exists, and it is in Defendants' custody. In Potter County the task is two races on 26,035 ballots. Potter County Results.[4] Counting them by hand, with both parties at the table, changes no vote and disenfranchises no one. If the paper matches the machines, the public will know it. If it does not, the Court and the canvassing authorities will know it while something can still be done.

---

[2] Tex. Sec'y of State, Election Advisory No. 2026-32, *Post-Election Hand Count Audit after the November 3, 2026 General Election* (Nov. 4, 2026) ("Advisory 2026-32"), https://content.govdelivery.com/attachments/TXSOS/2026/11/04/file_attachments/3846815/ADV2026-32%20Post-Election%20Hand%20Count%20Audit%20%28Counties%29.pdf.

[3] Tex. Sec'y of State, Election Advisory No. 2026-28, *Canvass and Recount Deadlines for the November 3, 2026 General Election for Federal, State, and County Officers* (Oct. 23, 2026) ("Advisory 2026-28"), https://www.sos.texas.gov/elections/laws/advisory2026-28.shtml.

[4] Potter Cnty. Elections Admin., *Cumulative Results Report, General Election 11/3/2026* (Official Results, run Nov. 10, 2026) ("Potter County Results"), https://www.pottercountytexasvotes.gov/_files/ugd/3d1a20_39ff5f0f24614ca4a5e87208e7002827.pdf.

## Statement Of Facts

### A. Texas's Two Checks on the Machine Count

**Reconciliation.** On election night the presiding judge of each county's central counting station must attest to a written reconciliation of votes and voters on a form the Secretary of State prescribes. Tex. Elec. Code § 127.131(f). The form subtracts rejected or pending ballots and counted ballots from total voters and reports the difference online J. App. 64–68. It has a box for notes. It does not require an explanation, and § 127.131(f) prescribes no next step when line J is not zero.

**Hand count audit.** After any election that uses electronic tabulation, the general custodian of election records must conduct a manual count "to ensure the accuracy of the tabulation." Tex. Elec. Code § 127.201(a). The count must cover at least one percent of election-day polling locations and one percent of early-voting locations, or three of each if that is greater, plus a like sample of mail-ballot precincts. *Id.* In a general election the Secretary selects the locations and designates no more than three offices. *Id.* § 127.201(b). Members of the early voting ballot board count at the custodian's direction. *Id.* § 127.201(b-1).

The statute and the Secretary's instructions leave five decisions to each custodian:

- **Whether to audit more.** The custodian "may select additional precincts and polling places to be counted." Tex. Elec. Code § 127.201(b-3). The Secretary allows up to three more of each type, chosen at random, by turnout, or both. Advisory 2025-21 at 4–5.
- **Whether to follow a discrepancy.** The custodian "may also select additional locations where there are documented discrepancies in the reconciliation paperwork." Advisory 2026-32 at 3. The guidance says she is authorized to do so. It does not say she must. Advisory 2025-21 at 6.

- **Which third race to audit.** For this election the Secretary designated United States Senator and Chief Justice of the Supreme Court and left the third race to each custodian. Advisory 2026-32 at 2. The statewide risk-limiting audit covers only selected statewide races. Tex. Elec. Code § 127.302(a). Whether a congressional race is hand-audited in a county is therefore that custodian's choice.
- **How many mail ballots to count.** Counting all mail ballots, and not only the sampled precincts, is optional and is decided by the custodian. Advisory 2025-21 at 6.
- **What to do when the counts disagree.** Section 127.201 is silent. The custodian reports the results to the Secretary within three days, with an explanation of any discrepancies and the efforts made to resolve them. Tex. Elec. Code § 127.201(e); Advisory 2025-21 at 8–9. Nothing in the statute or the advisories requires a further count, an investigation, or a correction.

The Legislature's stated intent is "that the application of this code and the conduct of elections be uniform and consistent throughout this state." Tex. Elec. Code § 1.0015.

### B. The 2026 Calendar Puts Certification Before Verification

| Date | Event | Authority |
|---|---|---|
| November 3–4 | Election-night reconciliation forms signed | App. 64–68 |
| November 17 | Deadline for each county's local canvass | Tex. Elec. Code § 67.003(c); Advisory 2026-28 |
| November 19 | Statewide risk-limiting audit scheduled to begin; the hand count audit need not begin until the first business day after the Secretary certifies that audit complete | Tex. Elec. Code § 127.201(b-2); Advisory 2026-32 at 2 |
| November 21 to December 7 | Window for the Governor's state canvass, at a time set by the Secretary | Tex. Elec. Code §§ 1.006, 67.012(a)(2); Advisory 2026-28 |

| Date | Event | Authority |
|---|---|---|
| December 3 or later | Deadline to complete the hand count audit | Tex. Elec. Code § 127.201(b-2); Advisory 2026-32 at 3 |

For federal races the state canvass is the final canvass. Advisory 2026-28. Certificates of election follow it. Tex. Elec. Code § 67.016. Nothing in § 127.201 requires the audit to be finished, or any discrepancy resolved, before either canvass.

The federal government recommends the opposite order. The Cybersecurity and Infrastructure Security Agency ("CISA") advises election officials to "[c]onduct post-election manual audits of paper ballots to verify that voting systems function properly and to identify errors before certifying the final results." App. 50.

Potter County has completed both steps. Its elections website posts its official canvass results, an official reconciliation, and a certification of its hand count audit results. Potter County Notices.[5] By design that audit is a sample: a minimum of three election-day locations, three early-voting locations, and three mail-ballot precincts, and no more than three races. Tex. Elec. Code § 127.201(a)–(b); Advisory 2026-32 at 1–2. Potter County reported 26,035 ballots cast at 20 polling places. Potter County Results.

[5] Potter Cnty. Elections Admin., *Notices: November 3, 2026 General Election* ("Potter County Notices"), https://www.pottercountytexasvotes.gov (last visited Nov. 23, 2026) (listing "Official Canvass Results," "Official Reconciliation Totals," and "Summary & Certification of Post-Election Hand Count Audit Results").

## C. What the Election-Night Reconciliations Show

The forms posted for the November 3, 2026 election report these figures. App. 64–68; *see* App. 6–7 (Ramsland Decl. ¶¶ 9–12).

| **County** | **Total voters (C)** | **Rejected or pending (F)** | **Ballots counted by software (I)** | **Difference (J = C − F − I)** | **Note on the form** |
|---|---|---|---|---|---|
| Harris | 1,393,495 | 5,300 | 1,392,280 | −4,085 (−0.294%) | "Election Day's ePollbooks may not sync," among other notes |
| Dallas | 794,205 | 3,092 | 791,657 | −544 (−0.07%) | None |
| Randall | 53,681 | 102 | 53,650 | −71 (−0.1325%) | None |
| Lubbock | 106,732 | 1,669 | 104,818 | +245 (0.23%) | About 350 absentee ballots not yet processed |

A negative difference means the software counted more ballots than the rosters show voters, net of rejected and pending ballots. In three counties that excess totals 4,700 ballots. The Randall County form bears a handwritten election date of "11/3/24," but it is signed and dated November 3, 2026, and is posted under the county's 2026 general election heading. App. 66.

These are election-night figures, and each form says the numbers may change. Section 127.131(f) requires a second reconciliation after the central counting station meets for the last time. Whatever the later forms show, neither § 127.131(f) nor § 127.201 told any of these counties what to do about the difference.

## D. Why the Paper Is the Only Check

Potter County uses the Hart InterCivic Verity 2.7 system, with 176 Verity Duo ballot marking devices and 36 Verity Scan scanners. App. 34. According to Plaintiffs' declarant, the Verity Duo prints the voter's selections in text and also prints a QR code, and the Verity Scan reads the ballot by optical character recognition. App. 7 (Ramsland Decl. ¶ 14). The QR code is

believed to be encrypted and to carry a checksum on the text and the ballot style; when the scanner fails to recognize part of the text, its software makes the smallest correction that produces the expected checksum. App. 7–8 (Ramsland Decl. ¶ 14). The voter cannot read the QR code. App. 8. In counties that use ES&S equipment, such as Dallas County, the ballot marking device prints barcodes and the scanner tabulates the barcodes, not the text. App. 8, 17.

Errors reach the printed record and stay there until a person reads the paper. In the November 2022 general election, the records printed by Potter County's devices in the race for Justice, Supreme Court, Place 9 bore the name of a candidate who had lost the primary and was not on the ballot. Several thousand ballots were cast before a voter who read her own record caught the error, which was traced to the ballot definition. FAC ¶ 24. For systems that count barcodes, the Secretary of Homeland Security has reported a further risk: DHS "has identified some systems that are configured to disassociate programming of the printed text and the barcode, so the resulting paper record may not be a reliable record for a manual audit." App. 60.

Scanners also misread and mishandle paper. Tarrant County runs the same Verity 2.7 software as Potter County. App. 34, 39. A member of its Testing Board swears that in public testing for this election, a batch of test mail ballots scanned into the system produced "unintended overvotes and votes that conflicted with expected results." The scan image showed a line through the selection boxes that was not on the paper. The image was deleted at the direction of the board's presiding judge, and the batch was rescanned. App. 69–70. The testers caught the misread because they knew what the count should have been. In a real election the only equivalent is the paper.

On November 3, a poll watcher at Tarrant County's central counting station saw a ballot-scanning device display a completion message although none of the ballots had been processed; they were processed on a second run. App. 80. During early voting, another poll watcher found

about 900 fewer ballots in a polling place's scanners than the location had voter check-ins. The lead clerk told her that a scanner had malfunctioned and been replaced with about 900 ballots on it. App. 75 (Lehman Aff. ¶ 4). The explanation may be right. Neither § 127.131(f) nor § 127.201 required anyone to check it against the paper.

The roster side of the reconciliation is no firmer. Harris County's form attributes part of its difference to electronic pollbooks that "may not sync." App. 68. In Tarrant County on November 3, a poll watcher saw an electronic pollbook showing 36,481 fewer countywide voter records than the other devices at the same polling place, and a second watcher reported a 6,943-record gap at another location, until the devices later updated. App. 75–76 (Lehman Aff. ¶¶ 7–8). An election judge there swears that voters who said they had voted for years were not on the rolls and that he processed nearly 20 provisional ballots for them. App. 83. In the March 2026 primary in Dallas County, a poll clerk states under oath that pollbooks showed voters as having already voted who said they had not, and that three devices gave three different answers about where one voter should vote. App. 85. When the roster number and the machine number disagree, neither proves itself. The paper does.

Federal election-security guidance treats the paper the same way. CISA warns that election software, "like all complex software, contains vulnerabilities," and recommends paper ballots "that can be easily reviewed" and manual audits completed before certification. App. 50. It identifies "unauthorized changes to . . . ballot definitions, tabulation configurations, or results-reporting processes" as an insider threat and observers at the count as a safeguard. App. 51–52. The Secretary of Homeland Security has stated that voting machines with components made by foreign adversaries "introduce significant security risks," that representatives of Hart InterCivic and two other vendors have acknowledged using parts made in China, and that full federal grant funding

now depends on post-election manual counts of paper ballots "to ensure that any errors or manipulation is detected." App. 58–59.

**E. The Parties and This Suit**

PCRP is the Republican Party's county organization in Potter County, and its nominees were on the November 3 ballot there. FAC ¶ 19. Rogers has chaired PCRP since July 2018 and is a Potter County voter who voted in this election. FAC ¶ 20. Hale was the Republican nominee for United States Representative in Congressional District 7, and his race was counted by members of the Defendant Class, including Harris County's general custodian. FAC ¶¶ 26, 57. Defendant Benge is the general custodian of election records for Potter County. She conducts the audit and decides whether to expand it. FAC ¶ 27.

Plaintiffs sued on October 27, 2026, a week before Election Day. ECF No. 1. Defendant moved to dismiss the original complaint. ECF Nos. 59, 63. Plaintiffs filed the First Amended Complaint on November 14, 2026. ECF No. 72. It asserts equal protection, right-to-vote, and substantive due process claims under 42 U.S.C. § 1983 and seeks declaratory relief. FAC ¶¶ 70–88.

## Legal Standard

A preliminary injunction issues when the movant shows (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury, (3) that the threatened injury outweighs any harm to the opposing party, and (4) that the injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The movant must present a prima facie case but need not show an entitlement to summary judgment. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The Court may

rely on evidence that would not be admissible at trial, including hearsay. *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993). The government publications in the appendix are also subject to judicial notice. Fed. R. Evid. 201(b).

To the extent the hand count is mandatory relief, the facts and law must clearly favor the movant. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). They do. The facts come from Texas statutes, the Secretary of State's published instructions, and forms signed by county election officials.

## Argument & Authorities

### A. Plaintiffs Have Standing

One plaintiff with standing is enough for each form of relief. *Biden v. Nebraska*, 600 U.S. 477, 489 (2023).

**Hale.** A candidate has a "concrete and particularized interest in the rules that govern the counting of votes" in his election, whether or not those rules affect the outcome. *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 82 (2026). The interest extends to the integrity of the election itself. *Id.* Hale was a candidate for Congress on November 3, and members of the Defendant Class counted his race. FAC ¶¶ 26, 57. The rules that decide whether a discrepancy in that count is ever resolved, and whether his race is hand-audited at all, govern the counting of votes in his election. Harris County, where his race was counted, reported the largest election-night difference in the record. App. 68.

**PCRP.** A political party has standing in its own right to challenge election practices that threaten its nominees' electoral prospects. *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006). PCRP's nominees were on the Potter County ballot. FAC ¶ 19. Defendant Benge decides whether a discrepancy in the count of their votes leads to anything more, and *Bost*

teaches that the interest in an accurate count does not depend on predicting the outcome. 607 U.S. at 82.

**Rogers.** As county chair, Rogers holds statutory roles that no member of the general public shares. He may attend the hand count audit and appoint a watcher to it. Tex. Elec. Code § 127.201(d); Advisory 2025-21 at 7–8. He appoints his party's watchers and sits on the commission that appoints the Elections Administrator. Tex. Elec. Code §§ 31.032, 33.003(a); FAC ¶ 21. The relief requested puts his party's counters and watchers at the table.

These injuries trace to the custodians, and an order to count redresses them. Each custodian holds the ballots, conducts the audit, and decides whether to expand it. Tex. Elec. Code § 127.201(a), (b-1), (b-3). PCRP and Rogers have standing to seek relief against Defendant Benge. Hale has standing to seek it against the class members who counted his race. Defendant's first motion to dismiss argued that the injury was traceable to hackers and vendors and could not be redressed by one county official. ECF No. 63 at PageID 491–93. That argument addressed a complaint that has been replaced. The injury pleaded now is the custodian's own standardless discretion, and the relief sought from Defendant Benge is a count of ballots in her own custody.

This case is not *Lutostanski v. Brown*, 88 F.4th 582, 585–86 (5th Cir. 2023), or *Hotze v. Hudspeth*, 16 F.4th 1121, 1124 (5th Cir. 2021). Those plaintiffs sued only as voters and asserted a grievance shared by every other voter. *Bost* holds that a candidate's interest is different in kind. 607 U.S. at 78. The unpublished decision the DSCC and DCCC put before the Court turned on the absence of any allegation that the plaintiffs' votes were treated differently from other votes. *Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449 (5th Cir. Apr. 3, 2024) (ECF No. 6 at App. 9). Differential treatment by county is the claim here. Rogers also sues as a Potter County voter on that basis, FAC ¶ 20; App. 8 (Ramsland Decl. ¶ 15), but the Court need not reach it.

**B. Plaintiffs Are Likely to Succeed on the Merits**

***1. Texas treats identical ballots differently by county (Count I).***

Having granted the right to vote on equal terms, a State may not, "by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104–05. The right to vote includes the right to have the vote counted. *Reynolds v. Sims*, 377 U.S. 533, 554–55 (1964). In *Bush* the defect was "the absence of specific standards to ensure [the] equal application" of a statewide rule, which let the treatment of a ballot vary from county to county. 531 U.S. at 106. Uniform rules were "practicable and, we conclude, necessary." *Id.*

Texas has one statute for verifying the machine count in a federal election, and it applies in every county. At each of the five points described above, the statute leaves the choice to the county custodian and supplies no standard. Under it, one custodian may add a location with a documented reconciliation discrepancy to the hand count, and the custodian in the next county may record the same discrepancy and stop. One may hand-audit the congressional race, and the next may not. No statute or published procedure tells either which to choose. That is the absence of standards *Bush* condemned, in the same setting: counting the votes in a federal race.

The record shows the difference on its face. Harris County's presiding judge offered a partial explanation for a 4,085-ballot difference. Dallas and Randall Counties offered none. App. 64, 66, 68. Nothing in § 127.131(f) or on the form required either response. Defendant's first motion to dismiss argued that the original complaint identified no voters treated differently from any others. ECF No. 63 at PageID 497. The FAC does: voters in counties whose custodians follow a discrepancy, and voters in counties whose custodians do not.

*Bush* did not question a state's freedom to let localities use different voting systems. 531 U.S. at 109. Neither does this case. Plaintiffs challenge a single statewide procedure that Texas

created "to ensure the accuracy of the tabulation" and then left without standards at the point where accuracy is tested. The NAACP Texas State Conference and its co-movants read *Bush* the same way. They told this Court they have a strong interest in ensuring that "each of their members, and all Texas voters, are subject to the same ballot counting procedures, regardless of the Texas county in which they reside." ECF No. 26 at PageID 163.

Nor is this a claim about an isolated mistake. The Fifth Circuit distinguishes state laws and patterns of state action that "systematically deny equality in voting" from episodic errors in a single election. *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980). Plaintiffs challenge the former. Their claim does not depend on proof that any machine miscounted or that any official acted with intent. FAC ¶¶ 16, 49. It rests on a regime, applied in every federal election, that makes equal treatment turn on each custodian's unguided choice.

**2. The regime burdens the right to have votes counted and serves no state interest (Count II).**

The right to vote includes the right of qualified voters "to cast their ballots and have them counted at Congressional elections." *United States v. Classic*, 313 U.S. 299, 315 (1941). Courts weigh the "character and magnitude" of the burden on that right against the "precise interests" the State offers to justify it. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

The burden is real. Every ballot is counted by software the voter cannot see. In Potter County that software reads the printed text by optical character recognition and, according to Plaintiffs' declarant, corrects what it fails to recognize to match a checksum carried in a QR code the voter cannot read. App. 7–8 (Ramsland Decl. ¶ 14). In counties that use ES&S equipment it reads a barcode instead of the text. App. 8. Federal law requires a voting system to "permit the voter to verify (in a private and independent manner) the votes selected by the voter on the ballot

before the ballot is cast and counted." 52 U.S.C. § 21081(a)(1)(A)(i). Plaintiffs cite that requirement as a measure of the burden, not as a separate claim. FAC ¶ 50. The paper record is the voter's only assurance, and it assures nothing unless someone compares it to the machine total and acts on the result. Texas compares a sample that can be as small as one percent of locations, allows the comparison to finish after certification, and requires only a report when the counts do not match. When the State's own forms show more ballots counted than voters, lawful votes are exposed to dilution. *Reynolds*, 377 U.S. at 555. When they show fewer, a voter whose ballot was not counted has no way to know.

The State has no interest that justifies this. Its interests are accuracy, uniformity, and finality, and leaving a documented discrepancy unresolved serve none of them. The Legislature has said that elections must be conducted uniformly to "ensure that all legally cast ballots are counted." Tex. Elec. Code § 1.0015. Speed is no answer. "A desire for speed is not a general excuse for ignoring equal protection guarantees." *Bush*, 531 U.S. at 108. And the remedy uses ballots, personnel, and procedures that § 127.201 already requires.

**3. Certifying before verifying is fundamentally unfair (Count III).**

Due process is violated when the flaw lies in an "officially sponsored election procedure which, in its basic aspect, [is] flawed," and not in an ordinary irregularity. *Duncan v. Poythress*, 657 F.2d 691, 703 (5th Cir. Unit B Sept. 1981) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077–78 (1st Cir. 1978)). The flaw here is in the procedure. Texas certifies a federal election while its own verification is unfinished and while discrepancies its own records document remain unresolved, because nothing in § 127.201 or the Secretary's instructions requires anyone to resolve them. Plaintiffs do not assert a procedural due process claim. FAC ¶ 84.

### C. Plaintiffs Will Suffer Irreparable Harm Without an Injunction

The loss of a constitutional right, even briefly, is irreparable injury. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). Here the loss would be permanent, for three reasons.

*First*, certification ends the Court's ability to give complete relief. After the state canvass the Governor issues certificates of election, Tex. Elec. Code § 67.016, and each House of Congress becomes "the Judge of the Elections, Returns and Qualifications of its own Members." U.S. Const. art. I, § 5, cl. 1. A count completed before that point is part of the State's own election process. *See Roudebush v. Hartke*, 405 U.S. 15, 25–26 (1972). A count ordered after it may come too late to matter.

*Second*, the State's audit will not fill the gap. It samples as little as one percent of locations, need not be finished before the canvass, need not include a congressional race, and requires only a report when it finds a discrepancy.

*Third*, the evidence is perishable. After the audit, election materials are re-secured and returned to storage. Advisory 2026-32 at 3. Federal law requires that they be kept for only 22 months. 52 U.S.C. § 20701. Digital records are easier to lose. In Tarrant County's testing for this election, the scan image of a misread ballot was deleted on the order of the testing board's presiding judge. App. 69. And in the Fifth Circuit's leading miscount case, the ballots from all but three precincts were destroyed while the dispute was pending. *See Gamza*, 619 F.2d at 450–51. A preservation order costs Defendants nothing they do not already owe.

No damages are sought, and none could repair a certification that was never verified.

### D. The Balance of Harms and the Public Interest Favor an Injunction

These factors merge. *Nken*, 556 U.S. at 435.

The burden on Defendants is modest. They must count two races by hand, using the ballot board and the counting procedures the Election Code already prescribes, and keep records they must already keep. Tex. Elec. Code § 127.201(b-1); Advisory 2025-21 at 8. In Potter County that is two races on 26,035 ballots. Potter County Results. A member of the team that organized a proposed hand-counted primary in Dallas County this year calculates that 500 counters, half from each party, can count 800,000 ballots in a single race in eight hours. App. 7 (Ramsland Decl. ¶ 13). That is 200 ballots per counter per hour. At that rate the two federal races in Potter County are about 260 counter-hours of work. Texas already contemplates that custodians may count more than the minimum, Tex. Elec. Code § 127.201(b-3), and the Secretary's own guidance recognizes that in smaller counties its optional procedure may result in a hand count of all ballots cast for the selected offices. Advisory 2025-21 at 6.

The NAACP Texas State Conference and its co-movants predict that a hand count would be burdensome and unreliable. ECF No. 26 at PageID 153–54, 163–64. But a hand count is the method Texas itself chose to test its machines. Tex. Elec. Code § 127.201(a). It cannot be both the State's standard of accuracy and too unreliable to use.

The public interest lies in a count the public can trust. Preventing a constitutional violation is always in the public interest. *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014). Confidence in the integrity of elections "is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam). CISA says the same: "The American people's confidence that their vote will be counted as cast is essential." App. 47. A hand count serves that interest whatever it shows.

*Purcell* does not counsel otherwise. It warns against court orders that change election rules close to an election, because such orders can confuse voters and keep them from the polls. 549 U.S. at 4–5. This election is over. No voter can be confused. No rule for casting or qualifying a ballot changes, and no ballot is treated differently. The order adds a verification step using paper ballots that Texas law already requires counties to produce, keep, and sample. Plaintiffs raised the issue a week before Election Day. ECF No. 1.

Even where *Purcell* applies, it yields when the merits are entirely clearcut in the plaintiff's favor, the plaintiff would suffer irreparable harm, the plaintiff did not unduly delay, and the change is feasible without significant cost, confusion, or hardship. *La Union del Pueblo Entero v. Abbott*, 119 F.4th 404, 409 (5th Cir. 2024). Each condition is met. The merits turn on the text of § 127.201 and the Secretary's own instructions. The harm is irreparable for the reasons in Part V.C. Plaintiffs sued before the election. And the count asked of Defendant Benge is two races on 26,035 ballots.

Laches fails for the same reasons. Plaintiffs sued before the election, amended within ten days after the election-night forms were signed, and seek only to count ballots that already exist. A count of existing ballots prejudices no one who relied on the timing of this suit.

**E. The Relief Is Tailored, and No Bond Should Be Required**

The requested order is limited to the two federal races, to ballots already cast, and to counting procedures Texas already uses. It invalidates no ballot and no provision of the Election Code. FAC ¶ 8.

A complete count of those races is the remedy that fits the violation. A count triggered only by a reported discrepancy would leave the trigger with the custodian whose unguided discretion is the problem. A larger sample still could not verify the locations it does not reach. A hand count of every lawful paper ballot in the federal races is the one standard that does not depend on any

custodian's choice. FAC ¶ 18. When a court orders a remedy in this setting, it must ensure "the rudimentary requirements of equal treatment and fundamental fairness." *Bush*, 531 U.S. at 109. The proposed order does so by applying one procedure everywhere it runs.

Relief against Defendant Benge requires no class ruling, because she is a named party. The same order should reach every custodian. Each conducts the same audit under the same statute with the same discretion, which is the basis for certification under Rule 23(b)(2). FAC ¶¶ 59–69. A certification order is to be entered at an early practicable time and may be altered before final judgment. Fed. R. Civ. P. 23(c)(1)(A), (C). Plaintiffs ask the Court to certify the Defendant Class provisionally for purposes of preliminary relief and to direct notice of the order to each class member. An injunction binds the parties and those acting in concert with them who receive actual notice. Fed. R. Civ. P. 65(d)(2).

If the count shows a difference, Texas law already has a model for the next step. When a recount changes the vote totals, the canvassing authority conducts a new canvass. *See* Tex. Elec. Code § 213.033(a). Plaintiffs will seek appropriate further relief on a record that shows what the paper says.

Rule 65(c) leaves the amount of security to the Court, which may require none. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). None is warranted here. Plaintiffs assert constitutional claims, seek no damages, and ask Defendants to count and keep ballots already in their custody. Plaintiffs will post a bond if the Court requires one. FAC ¶ 58.

**Conclusion And Prayer**

Plaintiffs ask the Court to grant this motion, enter the preliminary injunction described in Part I, and grant all other relief to which Plaintiffs are entitled.

Dated: November 23, 2026.

Respectfully submitted,

*/s/ Jared R. Woodfill*
Jared R. Woodfill
State Bar No. 00788715
Adam M. Helleck
State Bar No. 24038953
WOODFILL LAW FIRM, PC
5850 San Felipe, 5th Floor
Houston, Texas 77057
Telephone: (832) 255-3751
Woodfillservice@gmail.com

/s/ Daniel Bates
Daniel Bates
State Bar No. 01899900
DECKER JONES, PC
801 Cherry Street, Suite 2000, Unit 46
Fort Worth, Texas 76102
Telephone: (817) 336-2400
dbates@deckerjones.com

ATTORNEYS FOR PLAINTIFFS POTTER COUNTY REPUBLICAN PARTY, DANIEL ROGERS, AND ALEXANDER HALE

**CERTIFICATE OF SERVICE**

I certify that on November 23, 2026, I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Northern District of Texas using the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

*/s/ Jared R. Woodfill*
Jared R. Woodfill