IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| POTTER COUNTY REPUBLICAN PARTY, *et al., Individually and On Behalf of All Others Similarly Situated,*<br><br>Plaintiffs,<br><br>v.<br><br>CHRISTY BENGE, *in Her Official Capacity as the* POTTER COUNTY ELECTIONS ADMINISTRATOR *and as Proposed Representative of a Defendant Class of Similarly Situated Texas County Election Officials,*<br><br>Defendant. | 2:26-CV-215-Z |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Second Motion to Dismiss Plaintiffs' Amended Complaint, filed November 19, 2026. ECF No. 81. Plaintiffs responded on November 23, 2026. ECF No. 85. Having reviewed the Motion, briefing, and relevant law, the Motion (ECF No. 81) is **GRANTED**. The Amended Complaint is **DISMISSED without prejudice**.

**BACKGROUND**

On October 27, 2026, Plaintiffs filed their original Complaint with this Court seeking relief before the certification of the statewide federal election that occurred on November 3, 2026. ECF No. 1. Plaintiffs were the Potter County Republican Party ("PCRP"), a county organization of the Republican Party, and Daniel Rogers ("Rogers"), a registered voter in Potter County who is also PCRP's chairman. *Id.* at 6–8. Defendant Christy Benge ("Defendant") is the Potter County Elections Administrator who is sued in her official capacity and as the proposed representative of a defendant class. *Id.* at 8–9.

On November 9, 2026, Defendant filed her first Motion to Dismiss the Complaint. ECF No. 59. The Court ordered expedited briefing, requiring Plaintiffs to respond by November 14, 2026 and Defendant to reply by November 17, 2026. ECF No. 67. On November 14, the day Plaintiffs were ordered to respond to the Motion to Dismiss, Plaintiffs filed an Amended Complaint (ECF No. 72) along with a Response to the Motion to Dismiss (ECF No. 73). Defendant replied on November 16, 2026. ECF No. 77. At the request of both parties, the Court denied Defendant's Motion to Dismiss as moot. ECF No. 80.

In the Amended Complaint, PCRP and Rogers remain as Plaintiffs, and Alexander Hale is added as a Plaintiff. Hale was the Republican nominee for the United States Congress, Congressional District 7, in the November 3, 2026 general election. Plaintiffs explain that they do "not seek to prevent voting, postpone Election Day, invalidate lawfully cast ballots, or require wholesale replacement of voting equipment." ECF No. 72 at 4. Instead, Plaintiffs "seek an order requiring that, before final certification, all lawful paper ballots cast in the federal races in the November 3, 2026, general election be hand counted and reconciled to the machine-tabulated totals, and that the reported results be confirmed, or corrected to match the hand count where they differ; an order preserving the records of that election; and prospective relief governing the verification and certification of future federal elections." *Id.* Plaintiffs argue "the right to vote includes the right to have ballots counted accurately and without dilution of votes by all election officials." *Id.* at 21.

The statewide federal elections occurred on November 3, 2026. According to the Texas Secretary of State's website,

> For all district (including single-county districts), federal, and statewide races, the state canvass is the final canvass (TEX. ELEC. CODE § 67.010). The state canvass for the November 3, 2026 General Election must be held no earlier than the 18th day after election day (Saturday, November 21, 2026) and no later than the 33rd day after election day (Monday, December 7, 2026). Since the actual deadline (the 33rd day) falls on a Sunday, the deadline is moved to the next business day. (Secs. 1.006, 67.012).

Christina Adkins, Election Advisory No. 2026-28, Texas Secretary of State (Oct. 23, 2026), https://www.sos.texas.gov/elections/laws/advisory2026-28.shtml (last visited Nov. 23, 2026). Certification of the results occurs after completion of the state canvass taking place between November 21, 2026, and December 7, 2026. TEX. ELEC. CODE § 67.016.

In their Amended Complaint, Plaintiffs retain many of the arguments made in their original Complaint while also adding new arguments. First, Plaintiffs assert that a select number of voting machines in the State of Texas contain components manufactured by foreign adversaries and thereby pose significant security risks. ECF No. 72 at 3. According to the Complaint, "malicious actors could potentially compromise election infrastructure at any stage of the supply chain, even before the machines are assembled or deployed." *Id.* Plaintiffs point to various sources to support the security concerns including testimony before Members of Congress from representatives of voting system vendors, a 2024 Office of the Director of National Intelligence Annual Threat Assessment, and a National Intelligence Council Memorandum from October 2024. *Id.* at 3, 16–17. As a result of the alleged security risks, Plaintiffs claim their constitutional rights to vote, protected under the 14th Amendment, will be violated if Texas election officials canvass and certify results for statewide federal elections based on vote tabulations produced by the voting machines. *Id.* at 27–30.

Second, Plaintiffs argue that Texas's "decentralized election-administration structure" causes unequal treatment of votes across counties. After the election, "[e]ach county decides for itself whether, when, and how to investigate and resolve differences [between voters and counted ballots] before the local canvass"—which are reported during the "Preliminary Election Reconciliation." *Id.* at 14. Next, "[f]or elections using electronic voting systems, Texas requires the general custodian of election records to conduct a post-

election hand-count audit." *Id.* at 13. The purpose of this audit is "to ensure the accuracy of the tabulation of the electronic voting system results." *Id.* Yet, "[t]hat purpose is not served when a discrepancy the audit reveals is left unresolved, or when identical discrepancies are resolved in some counties and merely documented in others." *Id* at 14. Thus, Plaintiffs' core contention is "identical ballots receive different protection depending on the county in which they are cast" causing 14th Amendment Equal Protection and Due Process violations. *Id.* at 3, 27–30.

When an electronic voting system is used, Texas law "independently requires a post-election hand-count of paper records or ballots." *Id.* at 4 (citing TEX. ELEC. CODE § 127.201). This includes "randomly selected election-day and early-voting locations and selected mail ballot precincts, with statutory minimums based on 1% or 3 locations/precincts, whichever is greater." *Id.* at 13. But, according to Plaintiffs, this process is insufficient in the face of grave security concerns. *See id.* at 3. Some voting machines in Texas electronically tabulate voting and encode voter selections in barcodes or QR codes. *Id.* at 4–5. "When a voting system records or tabulates the legally operative vote of a citizen voter from a barcode or QR code that the voter cannot personally read, a post-election comparison against the voter-verifiable, human-readable paper record or ballot is an essential safeguard against software, configuration, scanning, or tabulation error and against tampering." *Id.* at 5.

In the Complaint, Plaintiffs "request[ed] that the Court enter preliminary injunction and final judgment in their favor against Defendant Benge and the Defendant Class[.]" *Id.* at 31. After the Court set expedited briefing for the preliminary injunction motion on November 19, 2026, Plaintiffs filed a motion for a preliminary injunction on November 23, 2026. ECF No. 86. Briefing for the motion is still ongoing.

Plaintiffs further request that the Court "[c]ertify the requested Defendant Class under Federal Rule of Civil Procedure 23(a) and 23(b)(2). Or in the alternative 23(b)(1)(A)." ECF No. 72 at 31. The Court has not ordered the certification of the class as of this Order.

Defendant filed a Motion to Dismiss the Amended Complaint on November 19, 2026. ECF No. 81. Plaintiffs responded on November 23, 2026. ECF No. 85.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may seek dismissal of an action for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). Federal courts have limited jurisdiction. They "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). Thus, a plaintiff "must make 'clear, distinct, and precise affirmative jurisdictional allegations'" in pleadings. *SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023) (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988)).

A court must consider a jurisdictional challenge "before addressing any attack on the merits." *See In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court shoulder consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."). Under a 12(b)(1) motion, a court may dismiss for lack of subject-matter jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the records; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). The party claiming subject-matter jurisdiction bears the burden of proof to show it is there. *Mitchell v. Bailey*,

982 F.3d 937, 940 (5th Cir. 2020). The party bears the burden because courts "presume[] that a cause lies outside [their] limited jurisdiction." *Kokkonen*, 511 U.S. at 377. Jurisdiction cannot be satisfied "argumentatively or by mere inference." *Ill. Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983).

**ANALYSIS**

**I. Plaintiffs lack Article III standing.**

The Court lacks subject matter jurisdiction in this case because Plaintiffs do not have Article III standing. "Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). And, perhaps most importantly, "federal courts do not issue advisory opinions. As Madison explained in Philadelphia, federal courts instead decide matters 'of a Judiciary Nature.'" *Id.* (citing 2 Records of the Federal Convention of 1787, p. 430 (M. Farrand ed. 1966).

"To satisfy the standing requirement, a plaintiff must demonstrate: (1) an injury in fact; (2) traceable to the defendant's challenged conduct; (3) that is likely to be redressed by a favorable decision of the district court." *United States v. Garza*, 124 F. App'x 891, 892 (5th Cir. 2005). A party must have standing at the time a complaint is filed. *See Pluet v. Frasier*, 355 F.3d 381, 385 (5th Cir. 2004).

*A. To the extent national security claims remain following the Amended Complaint, the Court rejects those arguments for lack of injury in fact.*

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Plaintiffs

alleged injury that voting machines may be undermined by adversaries does not satisfy either prong of this test.

*First*, Plaintiffs' injury is speculative. A "threatened injury must be certainly impending to constitute an injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "'Allegations of *possible* future injury' are not sufficient." *Id.* Here, Plaintiffs' stated injury is *some* election machines that *might* be used in the state of Texas *may* be susceptible to *uncertain* attacks from *possible* third party actors, which *might* undermine the outcome of the election. *See generally* ECF No. 72 at 1–5. The argument is speculation layered on speculation. While Texas's electronic election infrastructure has been on the books for years, Plaintiffs fail to demonstrate that adversaries have ever affected a single ballot in all of Texas. Under such a theory, *none* of the Plaintiffs can seriously conclude their injury is "certainly impending" as required under *Clapper*. 568 U.S. at 409.

*Second*, Plaintiffs' injury is a generalized grievance. The injury in fact requirement of standing requires Plaintiffs to demonstrate an injury that is "concrete" and "particularized." *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025). In other words, the injury "must affect the plaintiff in a personal and individual way." *Parr v. Cougle*, 127 F.4th 967, 972 (5th Cir. 2025). When the injury "is suffered by 'all members of an entity equally,' it becomes a type of institutional injury'—rather than a personal or individualized one." *Id.* (citing *Raines v. Byrd*, 521 U.S. 811, 821 (1997)). Plaintiffs here do not raise a concrete, particularized voting injury. Plaintiffs' assertion regarding the national security threat to the election applies to *all* voters in the State of Texas. There is no explanation in the Complaint how Plaintiffs themselves faced injury in a "personal and individual way" as a result of the particular theory of harm. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

Accordingly, Plaintiffs do not have standing to challenge voting machines that have been affected by potentially hostile actors.

*B. Plaintiffs' allegation regarding statewide election administration also fails the injury in fact inquiry.*

1. **Plaintiffs allege a generalized grievance.**

Plaintiffs' other theory of injury is that loose statewide election administration rules permit ballots in different locations of Texas to count differently. Because each election custodian decides for their own county whether a documented discrepancy "leads to any further count, investigation, or correction," identical ballots "receive different protection depending on the county in which they are cast." ECF No. 72 at 3. Thus, "identical ballots cast in the same federal election receive different protection depending on the county in which they are cast." *Id.* at 3.

But this too is a generalized grievance. The alleged injury is one that *every* voter in Texas faces. An injury must be "concrete and particularized." *Spokeo*, 578 U.S. at 339. Plaintiffs must "be able to answer a basic question: 'What is it to you?'" *Bost v. Illinois State Board of Elections*, 607 U.S. 71, 76 (2026) (citing Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)). The crux of Plaintiffs' argument is that not all ballots are counted the same because custodians may treat "identical discrepancies" differently. ECF No. 72 at 6. But Plaintiffs fail to demonstrate how they were affected in a "personal and individual way." *Spokeo*, 578 at 339. The injury is "common to all citizens or litigants in Texas, and as such, [Plaintiffs'] lack standing." *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 219 (5th Cir. 2001). When Plaintiffs raise "only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large," they fail to

establish an Article III case or controversy. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). The Fifth Circuit has repeatedly affirmed this requirement in similar election cases. *See, e.g.*, *Lutostanski v. Brown*, 88 F.4th 582, 586 (5th Cir. 2023) (finding that a challenge by voters to a county's electronic voting was "precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past."); *Hotze v. Hudspeth*, 16 F.4th 1121, 1124 (5th Cir. 2021) (finding that the "contention that drive-thru voting hurt the 'integrity' of the election process" "is far too generalized to warrant standing."); *NAACP v. Tindell*, 95 F.4th 212, 217 (5th Cir. 2024) (an injury from voters in Jackson, Mississippi regarding a local law "is not particularized" because "the purported loss of benefits is one that 'will affect all Jackson residents.'").

With respect to Alexander Hale, "a candidate [for office] has a personal stake in the rules that govern the counting of votes in his election." *Bost*, 607 U.S. at 76. But here, Defendant Benge is administering *Potter* County, which is not a county in the congressional district Hale ran in. Thus, Hale has no personal stake in the injury and asserts an interest that is held identically by every voter in Texas. Such an "abstract interest in policies adopted by [a] legislature" is "a nonjusticiable 'general interest common to all members of the public.'" *Gill v. Whitford*, 585 U.S. 48, 68 (2018). Plaintiffs assert "[Hale's] claim runs against the Defendant Class, whose members counted, audited, and certified his race, and Benge is sued as the 'proposed representative of a defendant class.'" ECF No 85 at 9 (citing ECF No. 72 at 11–12). But, the Fifth Circuit has made clear "if it is the class representative who presents a standing problem, then that standing must be addressed first, prior to deciding class certification. After all, if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) (emphasis omitted).

As for PCRP, Plaintiffs argue it has "associational standing." ECF No. 85 at 10. This argument fails as well. Associational standing requires PCRP to "allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977); *see also Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 497 (5th Cir. 2024) ("To invoke associational standing . . . [Plaintiffs'] must identify at least one member that has suffered or will suffer harm."). But PCRP has not established that it has members who have standing to bring a claim individually. First, members of PCRP who "fall simply in the general group of voters" lack standing since they allege a generalized grievance. *Hotze*, 16 F.4th at 1125. Second, Plaintiffs do not plead that any of their candidates in the 2026 federal elections were *members* of PCRP, a standard that may have satisfied the requirements of *Bost*. 607 U.S. at 76. The Amended Complaint asserts PCRP had "nominees" that appeared in the November 3, 2026 election. But PRCRP has *not* alleged that any of its "nominees" are *members*, which would be required to establish associational standing. The Amended Complaint also asserts PCRP may have candidates in *future* elections who may face harm. ECF No. 72 at 8. But *Bost* requires that a candidate must establish standing in "their own elections." 607 U.S. at 78. Bare allegations of harm in a potential election do not meet that requirement.

True, an "organization can establish standing in its own name if it 'meets the same standing test that applies to individuals.'" *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). And a political party has standing when there is harm to "its election prospects" since "a political party's interest in a candidate's success is not merely an ideological interest." *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006). But PCRP has failed to demonstrate that the challenged process for counting ballots

diminishes PCRP's electoral prospects because it does not show that its candidates in particular are disadvantaged from the practice. Thus, PCRP, like all the other Plaintiffs in this case, asserts a generalized grievance and lacks standing.

2. **<u>Plaintiffs' arguments are speculative and thus not concrete.</u>**

"Article III requires more than theoretical possibilities." *In re Gee*, 941 F.3d 153, 164 (5th Cir. 2019). A concrete injury is one that is "'real' and not 'abstract.'" *Spokeo*, 578 U.S. at 340. "[F]ederal courts do not adjudicate hypothetical or abstract disputes." *TransUnion LLC*, 594 U.S. at 423. Rather, "[a] federal court may resolve only 'a real controversy with real impact on real persons.'" *Id.* at 424 (quoting *Am. Legion v. Am. Humanist Ass'n.*, 588 U.S. 29, 87 (2019) (Gorsuch, J., concurring in the judgment)).

Plaintiffs here allege only a theoretical, abstract injury. Their assertion is that Potter County *might* encounter "discrepancies," which the election custodian *might* resolve differently from other counties. But the Amended Complaint alleges no facts suggesting that discrepancies were likely to arise in the 2026 election or that the election custodian would resolve any such discrepancies in a way that would provide different ballots unequal weight. Furthermore, the Court is perplexed by the entire argument: different procedures for investigating possible discrepancies do not mean ballots carry different levels of weight across the state. The only way the argument could hold up logically is if Plaintiffs established that an election custodian *failed to detect* or *actually discovered* an error yet failed to sufficiently correct it. But Plaintiffs here do not do that. Instead, they merely assert the simple and unsurprising proposition that there could be variation in the canvassing process. But variation is inherent in any election administrative process. *See Bush v. Gore*, 531 U.S. 98, 109 (2000) (recognizing that ". . . local entities, in the exercise of their expertise, may develop different systems for implementing elections."); *see also Ctr. for Biological Diversity*

*v. U.S. Dep't of Transp.*, 180 F.4th 796, 803 (5th Cir. 2026) ("A bare procedural violation does not establish standing.").

Moreover, because Plaintiffs only seek prospective relief, they are required to establish that the injury alleged is "certainly impending." *Clapper*, 568 U.S. at 401. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). However, Plaintiffs do not demonstrate that injury from the way the election is administered is certainly impending in Potter County, a requirement since the election administration official they sue is Christy Benge of Potter County.

Plaintiffs point to "differences between voters and counted ballots" in "Harris County, –4,085 (–0.294%); Dallas County, –544 (–0.07%); Randall County, –71 (–0.1325%); and Lubbock County, +245 (0.23%)." ECF No. 72 at 14. But these counties have little bearing on the case at issue since Plaintiffs must establish harm specifically in Potter County before the defendant class is certified. *See Flecha*, 946 F.3d at 769. Plaintiffs refer to an isolated incident in the 2022 election, when the name of a candidate who had lost a primary was printed on thousands of ballots for several days before being corrected. But this event occurred years ago and has no connection to the 2026 election. It does not show Plaintiffs face *certainly impending* injury in Potter County in this election.

CONCLUSION

Election integrity is of utmost importance to this Court. And undoubtedly, "election security is national security." ECF No 72 at 1. But these concepts, no matter how important, cannot be a Trojan horse for circumventing Article III's most basic limitation on judicial power. Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases

or controversies." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 37 (1976). "[T]he law of [Article] III standing is built on a single basic idea—the separation of powers." *Raines*, 521 U.S. at 820. It is thus the duty of this Court—and all federal courts—never to overexert its judicial power in places where it does not belong. Accordingly, for the reasons above, Defendant's Motion to Dismiss (ECF No. 81) is **GRANTED**. All other pending motions (ECF Nos. 4, 25, 86) are **DISMISSED as moot**. The case is **DISMISSED without prejudice**.

**SO ORDERED.**

November 24, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE